JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
2338 Manning Avenue
Los Angeles, California 90064
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>        Debtor. | Case No.: 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No.:<br><br>**COMPLAINT FOR AVOIDANCE AND RECOVERY OF VOIDABLE TRANSFER** |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>        Plaintiff,<br><br>    v.<br><br>KEURIG DR. PEPPER, INC., f/k/a GREEN MOUNTAIN COFFEE ROASTERS, INC., a Delaware corporation,<br><br>        Defendant. | |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate

2    ("Estate") of Eagan Avenatti, LLP ("EA").  As the Trustee was not appointed until after EA filed

3    bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal

4    knowledge of the facts alleged below and therefore alleges those facts based upon the following:

5    EA's bank records, information in the public record concerning EA, Michael J. Avenatti

6    ("Avenatti") and his other related entities, information in the public record concerning defendants,

7    information obtained from other proceedings in which EA, Avenatti or his other related entities

8    were involved and information obtained from former clients of EA.

9    <u>**JURISDICTION AND VENUE**</u>

10    1.   In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana

11    Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy

12    Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the

13    claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7

14    case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB

15    ("EA Bankruptcy Case").  The outcome of this adversary proceeding will have a significant effect

16    on the Estate because it asserts claims for the return of property or the recovery of the value of

17    assets fraudulently transferred by EA at the direction of its managing partner and affects the

18    amount of money available for distribution to creditors of the Estate.  The claims for relief in this

19    Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H).  Regardless of whether

20    this is a core proceeding, consent is given to the entry of final orders and judgment by the

21    Bankruptcy Court.  Defendant is notified that Fed. R. Bankr. P. 7012(b) requires defendant to state

22    whether it does or does not consent to the entry of final orders and judgment by the Bankruptcy

23    Court.

24    2.   Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409

25    because the EA Bankruptcy Case is pending in this district and division.  This Court also has

26    personal jurisdiction over defendant.

27    <u>**PARTIES**</u>

28    3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.  Defendant Keurig Dr. Pepper, Inc. f/k/a Green Mountain Coffee Roasters Inc. ("Green Mountain" or "defendant") is a beverage/appliance manufacturing corporation incorporated and existing under the laws of the state of Delaware with a principal place of business in Burlington, Massachusetts.

## GENERAL ALLEGATIONS

5.  EA was a California based litigation law firm formed in August 2007.  At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

6.  In 2011, Avenatti assumed control over the management of EA.  From at least January 1, 2012, and at all relevant times thereafter, Avenatti was the managing partner of EA and owned at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A").  As EA's managing partner, Avenatti at all relevant times was an individual who controlled EA's business and had full access to its business and financial records (including its banking records).

7.  Avenatti formerly was an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as *Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.* (involving defective surgical gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy Daniels") and the alleged victims of R&B artist R. Kelly.

8.  EA received substantial revenue from its operations but also incurred substantial liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, Stoll, Nussbaum & Polakov APC ("Stoll").  Stoll alleged that, in the case where EA and Stoll had been co-counsel, EA had received the entire settlement payment of $39 million from the defendants and had paid itself, another law firm, and the clients, but had wrongfully retained $5,465,314 to which Stoll claimed entitlement under a written client engagement agreement and an attorney fee-sharing agreement.  At all times between June 2011 and the Petition Date, Stoll was seeking payment from

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EA of the $5,465,314 in fees and costs allegedly owed under those agreements, plus punitive damages, interest, etc.

9.      In 2012, EA began to default on its tax obligations.  For example, EA failed to file its partnership tax returns for 2011 and 2012 with the Internal Revenue Service ("IRS") until March and October of 2014, respectively.  EA simply never filed partnership tax returns with the IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

10.     At the same time that EA was defaulting on its tax obligations and allegedly in possession of more than $5 million in stolen money, Avenatti caused EA to disburse a substantial amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii) Porsche GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB Autosport, LLC and other entities which owned, maintained and operated Porsche and Mercedes race cars for Avenatti's personal use in the United States and Europe;[1] (iii) a Ferrari for Avenatti's personal use (at approximately $4,000 a month); (iv) Avenatti's acquisition of an indirect ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman Marcus and other luxury retail stores (court records document American Express charges between $60,000 and $70,000 a month); (vi) an ocean front residence in Laguna Beach, California purchased for $7.2 million in 2011 and sold for $12.6 million in 2015; (vii) lavish trips to Mexico, Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to purchase a home on Lido Isle in Newport Beach, California for $15.75 million (which purchase never closed); and (ix) making substantial improvements to both the Laguna Beach house and the Lido Isle house.

11.     Given that EA was expending exorbitant amounts, directly or indirectly, to support

---

[1] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is unsurprising that EA ended up in financial difficulties. Those difficulties manifested both in nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

12. On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL. EA subsequently failed to pay substantial additional amounts to JFL under the same agreement, leading to JFL eventually obtaining a $10 million judgment for amounts EA failed to pay JFL from 2014 through 2016.

13. At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti was seeking a loan for EA from The Peoples Bank, a bank located in Mississippi. Avenatti stated that the loan was primarily for "working capital" for EA. Avenatti submitted fraudulent documents to the bank in order to obtain the loan, including a balance sheet that overstated EA's bank account balance by approximately $450,000, and a fake partnership tax return that overstated EA's 2012 income by approximately $8 million. Even with the rosier picture of EA's finances painted by the false documents, the bank required collateral pledges and a personal guaranty to make a short-term loan of $2.75 million to EA. The first Peoples Bank loan was issued on March 14, 2014 and had a maturity date of June 15, 2014.

14. The first Peoples Bank loan was repaid from the proceeds of a settlement achieved by EA on behalf of a client in May 2014. Just six months later, in November 2014, Avenatti was again seeking a substantial loan from The Peoples Bank for EA's "case costs and working capital." Avenatti requested a $2.5 million line of credit, and again submitted fraudulent documents to the bank in support of the request, including a balance sheet that overstated EA's bank account balance by approximately $700,000. However, again, even with the falsely optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan, and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of credit requested by Avenatti.

15. The second Peoples Bank loan was issued on December 12, 2014. The loan was secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a

specific case.  EA received those fees in or around February 2015 but did not pay any portion of the fees towards the Peoples Bank loan.  Nor did EA repay the loan by its maturity date of December 12, 2015.  It was only after the bank repeatedly demanded payment from Avenatti and threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan, approximately four months later.

16.      As set forth above, by the beginning of 2015, EA had already defaulted on multiple tax obligations, was subject to a more than $5 million claim asserted by Stoll, was failing to pay substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its operating costs.  EA's inability to keep its "head above water" financially resulted in ever more desperate measures in 2015.  In the first quarter of 2015, EA stopped paying payroll taxes to the IRS.  Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll taxes – including approximately $1.3 million in trust fund taxes that EA had withheld from employees' checks but never sent to the IRS.  EA also stopped paying taxes to the California Employment Development Department ("EDD") in the first quarter of 2015.  At the same time, EA stopped paying multiple trade creditors (e.g., providers of professional services associated with EA's law practice).

17.      By September 13, 2015, EA was generally not paying its debts as they became due. Several of the creditors who were not being paid have held unsecured claims against EA continuously from at least September 13, 2015, through the Petition Date, including but not limited to the IRS; the FTB; the EDD; and Baker, Keener & Nahra, LLP.  These creditors hold claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502.

18.      The avoidable transfers that are alleged in this Complaint could not reasonably have been discovered by these creditors or EA's other creditors until less than one year before the Petition Date.  The transfers at issue are payments of money between private parties, so there is no public record of those transfers from which a creditor could have learned of their existence. Instead, a creditor would have to acquire access to EA's bank statements and other financial records to learn of the transfers at issue and their fraudulent nature.  Given Avenatti's willingness to falsify EA financial documents (as described above in connection with The Peoples Bank loans

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and as described below in connection with the first EA bankruptcy case) and his extreme resistance to producing accurate EA financial documents (as described below in connection with the JFL arbitration and the receivership proceeding), the creditors holding unsecured claims had no reasonable ability to obtain the accurate financial records of EA and other information relating to its clients recoveries necessary to discover the transfers at issue and their fraudulent nature.

19.    In 2016, JFL filed an arbitration claim against EA for amounts owed under the agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents for the period from 2013 onwards.  JFL had been informally seeking those documents from Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA was ordered by the arbitration panel to produce financial records that EA produced any such records to JFL.  Even then, EA refused to provide complete documentation (for example, although redaction was not permitted, EA redacted numerous entries on the bank statements that it provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the arbitration panel to impose heavy sanctions on EA.

20.    In February 2017, the arbitration panel ordered Avenatti and two other individuals knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The order made clear that the panel would consider the imposition of severe sanctions (including $10,000 sanctions against each individual personally) if Avenatti and the other individuals failed to comply with the order.  Rather than appearing to give testimony regarding EA's finances, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle District of Florida on March 1, 2017, to stay the arbitration proceedings.

21.    Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10, 2017, and the case was subsequently transferred to the Honorable Catherine E. Bauer in the Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy").

22.    EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors

1  – without including any amounts owed to Stoll or JFL, or the millions of dollars that Avenatti had

2  stolen from EA clients.

3       23.    The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

4  settlement approved by the bankruptcy court.  That structured settlement required EA, following

5  the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL,

6  and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial

7  payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one

8  of its clients a settlement payment of approximately $8 million.  Rather than paying the entire

9  amount to the client, as it was obligated to do, Avenatti caused EA to transfer $2,828,423 of the

10  client funds to the law firm representing Avenatti in the 2017 Bankruptcy.  The law firm then

11  distributed these funds to (i) the IRS, as the initial payment towards its claim against EA, (ii) EA's

12  counsel in the 2017 Bankruptcy, and (iii) counsel for the Official Committee of Unsecured

13  Creditors in the 2017 Bankruptcy.

14       24.    EA did not make any of the other payments owed under the settlement, except for a

15  payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

16  bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

17  on May 22, 2018.

18       25.    JFL's judgment against EA was registered before the United States District Court

19  for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

20  A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

21       26.    As part of the district court proceeding, JFL moved for the appointment of an

22  independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

23  as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

24  entered a Receivership and Restraining Order against EA and Avenatti.

25       27.    Throughout the Receivership, Avenatti attempted to impede the Receiver in

26  recovering EA financial documents, first stating that he would turn over such documents, and then

27  later stating that he did not know where they were.  In or about April of 2019, it was discovered

28  that Avenatti had caused EA's computer servers containing EA's books and records and other

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  financial data to be moved to an off-site storage facility but refused to disclose this information to

2  the Receiver for months.  Eventually, when the Receiver located those servers, they were turned

3  over to the U.S. Government in connection with criminal charges against Avenatti.  Once the

4  Receiver (and then later the Trustee) recovered the servers and forensic copies of the data

5  contained therein, it was not possible to access the data due to the significant cost in doing so, and

6  the fact that EA had only nominal available funds (the remainder had been "removed" by

7  Avenatti).

8      28.    On March 22, 2019, the United States Attorney for the Central District of

9  California filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v.*

10  *Avenatti*, United States District Court for the Central District of California, SACR19-00061-JVS

11  ("California Criminal Case").[2]  The complaint in the California Criminal Case charged Avenatti

12  with wire fraud for wrongfully diverting to his personal use millions of dollars belonging to EA's

13  clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS,

14  including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks,

15  causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank

16  fraud and other crimes.  On April 4, 2019, the Grand Jury in the California Criminal Case indicted

17  Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated

18  identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former

19  clients. The California Criminal Case is still pending.

20      29.    On September 13, 2019 (the "Petition Date"), Brian Weiss, as the Receiver for EA,

21  filed a voluntary petition for relief for EA under Chapter 7 of Title 11 initiating this bankruptcy

22  case.

23  ***Transfers made by EA to Green Mountain***

24      30.    On May 24, 2014, Avenatti caused EA to transfer $500,000 to a Foster Pepper,

25

26  [2]  This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases
pending against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found

27  Avenatti guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted
extortion (18 U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*,

28  No. 1:19-CR-373-PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over
$20 million.

1   PLLC (now known as Foster Garvey, PC) IOLTA account.  Foster Pepper held all funds in that

2   IOLTA account solely as a conduit.  On July 24 ,2014, Avenatti instructed Foster Pepper to wire

3   transfer $514,125 from that IOLTA account to Green Mountain.  Of that $514,125 transfer,

4   $153,890.38 were EA funds (the "EA Transfer").  The EA Transfer was not made for the benefit

5   of EA of its Creditors – it was made for the benefit of Global Baristas, a coffee company owned in

6   part and controlled by Avenatti, and in fact did not provide any value to EA from the perspective

7   of its creditors.  A true and correct copy of documents showing the May 24, 2014, $500,000

8   transfer from EA to Foster Pepper, and then the July 24, 2014, $514,125 transfer to Green

9   Mountain is attached as Exhibit 1.

**FIRST CLAIM FOR RELIEF**

**(Against Defendant, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

**Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.09(a), (c))**

13   31.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this

14   Complaint.

15   32.    During the seven-year period immediately preceding the Petition Date, Avenatti

16   directed and caused EA to make a transfer of its property, including money, to or for the benefit of

17   defendant.  That transfer is referred to herein as the "7-Year Transfer."

18   33.    The 7-Year Transfer was made by EA with the actual intent to hinder, delay, or

19   defraud its creditors.  Specifically, Avenatti caused EA to make this transfer to or for the benefit of

20   defendant to fund Avenatti's operation of Global Baristas and not to sustain or promote the

21   business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and

22   the transfers reduced the amount of funds available to pay these creditors and knew or consciously

23   or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on

24   multiple obligations.  Among other things, EA (i) had not filed federal tax returns since 2013; (ii)

25   had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not

26   paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its

27   employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the

28   more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted

2    for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the

3    independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and

4    (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB,

5    and the EDD, including more than a million dollars in trust fund taxes EA collected from its

6    employees but failed to remit to the IRS.  During the seven-year period, EA also defaulted on

7    numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

8    withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

9    small portion of its accrued debts.

10        34.    EA did not receive reasonably equivalent value in exchange for the 7-Year

11    Transfers.  Specifically, defendant knew or consciously or recklessly chose to ignore facts known

12    to it that strongly suggested that the value, if any, that defendant provided in exchange for that

13    payment was not for the benefit of and did not benefit EA or its creditors, and that such value, if

14    any, conferred no or less than reasonably equivalent value upon EA or its creditors.

15        35.    At all relevant times, the 7-Year Transfers were voidable under California Civil

16    Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

17    against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

18    without limitation, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had

19    wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

20        36.    For the reasons described above, the voidable transfers alleged in this claim for

21    relief could not reasonably have been discovered by these creditors sooner than one year prior to

22    the Petition Date.

### SECOND CLAM FOR RELIEF

**(Against Defendant, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

**Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07)**

26        37.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this

27    Complaint.

28        38.    During the eight-year period immediately preceding the Petition Date, Avenatti

11

directed and caused EA to make a transfer of its property, including money, to or for the benefit of

defendant.  That transfer is referred to as the "8-Year Transfer."

39.    The 8-Year Transfer was made by EA with the actual intent to hinder, delay, or

defraud its creditors.  Specifically, Avenatti caused EA to make this transfer to or for the benefit of

defendant to fund Avenatti's operation of Global Baristas opulent lifestyle and not to sustain or

promote the business of EA, even though Avenatti knew that EA was subject to substantial

creditor claims and the transfers reduced the amount of funds available to pay these creditors and

knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that

EA was in default on multiple obligations.  Among other things, EA (i) had not filed federal tax

returns since 2013; (ii) had not paid its annual limited partnership fee to the FTB for 2011 or 2013

onwards; (iii) was not paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund

taxes withheld from its employees' checks; (v) was not paying taxes owed to the EDD; (vi) was

refusing to pay Stoll the more than $5 million owed to it that Avenatti had wrongful diverted for

his personal use; (vii) was not paying millions of dollars owed to its clients whose funds Avenatti

had wrongfully diverted for his personal use; (viii) was not paying the millions of dollars it owed

to JFL under the independent contractor agreement with JFL; (ix) was not filing state and federal

tax returns; and (x) was not paying the money it owed to multiple taxing authorities, including the

IRS, the FTB, and the EDD, including more than a million dollars in trust fund taxes EA collected

from its employees but failed to remit to the IRS.  During the eight-year period, EA also defaulted

on numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

small portion of its accrued debts.

40.    EA did not receive reasonably equivalent value in exchange for the 8-Year

Transfer.  Specifically, defendant knew or consciously or recklessly chose to ignore facts known

to it that strongly suggested that the value, if any, that defendant provided in exchange for that

payment was not for the benefit of and did not benefit EA or its creditors, and that such value, if

any, conferred no or less than reasonably equivalent value upon EA or its creditors.

41.    At all relevant times, the 8-Year Transfer was voidable under California Civil Code

1  §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against EA

2  that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any funds

3  the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim.

4  Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil

5  Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable

6  to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore,

7  under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and

8  recover the 8-Year Transfer on behalf of the IRS and other creditors of the Estate.

9  ### THIRD CLAIM FOR RELIEF

10 **(Against Defendant, To Recover and Preserve Avoided Transfers**

11 **under 11 U.S.C. § 550(a)(1) and § 551)**

12  42.     The Trustee incorporates by reference and realleges paragraphs 1-30, 32-36, and

13 38-41 of this Complaint.

14  43.     To the extent that defendant is an initial transferee of the transfer referred to in this

15 Complaint and such transfer is avoided, defendant is strictly liable for their return and the Trustee

16 is entitled to recover judgment in such amounts.

17  44.     Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

18 benefit of the Estate.

19  **WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against defendant

20 as follows:

21  1.     On the First Claim for Relief, for a judgment against defendant that avoids the 7-

22 Year Transfer,

23  2.     On the Second Claim for Relief, for a judgment against defendant that avoids the 8-

24 Year Transfer,

25  3.     On the Third Claim for Relief, for a judgment against defendant that awards

26 damages in an amount equal to the value of the transfer avoided under the First and Second

27 Claims for Relief and/or that preserves the avoided transfer for the benefit of the Estate,

28  4.     For pre- and post-judgment interest at the applicable legal rate on all damages and

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  sums awarded to the Trustee; and,

2       5.  For such other relief as the Court deems just and proper.

3

4  Dated: September 8, 2021                    LANDAU LAW LLP

5                                              By ___/s/ John P. Reitman_____

6                                                      John P. Reitman
                                               Special Litigation Attorneys for
7                                              Plaintiff Richard A. Marshack,
                                               Chapter 7 Trustee for Eagan Avenatti, LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

C|B **CALIFORNIA BANK** & TRUST
T R U S T
P.O. Box 489, Lawndale, CA 90260-0489

**Statement of Accounts**
Page 1 of 10
This Statement: May 30, 2014
Last Statement: April 30, 2014

Account :        8461

**DIRECT INQUIRIES TO:**
Customer Service  1 (800) 400-6080

0043701                4151-06-0200-CBT-PG0023-00059

EAGAN AVENATTI LLP
OPERATING ACCOUNT
450 NEWPORT CENTER DR FL 2
NEWPORT BEACH CA  92660-7610

Irvine Branch
1900 Main St.  Suite 100
Irvine, CA 92614-0000
(949) 223-7500

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Business Advantage Checking | 8461 | $1,504,540.54 | |

## BUSINESS ADVANTAGE CHECKING          8461                                            105    59

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 248,776.31 | 24,122,672.86 | 21,597,403.29 | 1,269,505.34 | 1,504,540.54 |

### 13  DEPOSITS/CREDITS

| Date | Amount | Description |
|---|---|---|
| 05/05 | 28,593.41 | REMOTE DEPOSIT 5353099495 |
| 05/06 | 6,000.00 | WIRE/IN-2014050600000237;ORG RBC ROYAL BANK (CAYMAN) LIMITED  1301900212 |
| 05/16 | 5,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000003236  2305300856 |
| 05/19 | 400.00 | REMOTE DEPOSIT 5353090137 |
| 05/19 | 35,000.00 | WIRE/IN-201405190003071;ORG GLOBAL BARISTAS US LLC  1302300960 |
| 05/19 | 100,000.00 | WIRE/IN-201405190002017;ORG MR EDWARD M RICCI;REF 005545201  1302300706 |
| 05/20 | 10,000.00 | ONLINE XFER FROM DDA AVENATTI & A ID: 000000181  2305500938 |
| 05/22 | 10,000.00 | WIRE/IN-2014052200003006;ORG GLOBAL BARISTAS US LLC  1301800838 |
| 05/23 | 3,376,119.45 | WIRE/IN-201405230001414;ORG SCOTT V SERVICE CORP INTL ET AL  1302000544 |
| 05/27 | 16,699,850.00 | WIRE/IN-2014052700006227;ORG SCOTT V SERVICE CORP INTL ET AL  1301901964 |
| 05/28 | 1,350,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000006893  2304600528 |
| 05/29 | 2,500,000.00 | ONLINE XFER FROM DDA ***2699 ID: 000009461  2304301486 |
| 05/29 | 1,710.00 | REMOTE DEPOSIT 5353060247 |

### 67  CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 05/01 | 2,719.75 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014121006252269  1104049327 |
| 05/01 | 16,906.00 | Anthem BC RA-1205023 000000496582909REF # 014121006299765  1104051263 |
| 05/02 | 6,000.00 | WIRE/OUT-201405020004170;BNF ROYAL BANK OF CANADA, GRAND CA  1302001384 |
| 05/02 | 40.00 | WIRE FEE-OUTGOING FOREIGN |
| 05/02 | 2,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000005626  2307105973 |
| 05/02 | 19.95 | Intuit Acct Fee INTUITP REF # 014122007204536  1106554118 |
| 05/06 | 12.00 | WIRE FEE-INCOMING INT CURR |
| 05/06 | 6,000.00 | WIRE/OUT-2014050600003039;BNF CAMPBELLS;OBI BY ORDER OF GB A  1301900897 |
| 05/06 | 40.00 | WIRE FEE-OUTGOING FOREIGN |
| 05/06 | 10,000.00 | BANKCARD CENTER PAYMENT 47985911011 8744REF # 014126009017184  1104101389 |
| 05/07 | 1,500.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000001292  2304200249 |
| 05/08 | 2,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004669  2304700347 |
| 05/08 | 10,000.00 | BANKCARD CENTER PAYMENT 47985911011 8744REF # 014128000316811  1104001340 |
| 05/09 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004708  2304803915 |
| 05/12 | 252.10 | PAYCHEX EIB INVOICE X5506270002572 9REF # 014129000819333  1106206284 |
| 05/12 | 5,000.00 | BANKCARD CENTER PAYMENT 47985911011 8744REF # 014132001550761  1106202349 |
| 05/13 | 17,500.00 | WIRE/OUT-2014051300002531;BNF FIRST CLEARING LLC;OBI FOR FUR  1302000758 |
| 05/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/13 | 50,000.00 | WIRE/OUT-2014051300003487;BNF LISA STORIE-AVENATTI MICHAEL J  1302001015 |

Fair Housing LENDER    MEMBER FDIC

0043701-0000001-0117609

EXHIBIT 1
1

Page 2 of 10

## An Easy Approach To Balancing Your Account

**To reconcile your checkbook balance to your statement balance:** Mark off each entry in your check register that has been charged to your account during the statement period. List the checks you have written, but are not yet charged to your account in the "Checks Outstanding" column below. Then, follow the instructions in lines 1 through 10.

| CHECKS OUTSTANDING | |
|---|---|
| Check Number | Check Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL: | |

_Transfer to Line 9._

| CHECKBOOK BALANCE | |
|---|---|
| 1.  LIST your checkbook balance. | |
| 2.  ADD any deposits or other credits listed on the front of this statement which you have not recorded in your checkbook (such as payroll credits or other direct electronic deposits). | |
| 3.  SUBTOTAL: | |
| 4.  SUBTRACT any charges listed on the front of this statement which you have not recorded (such as service charges, automatic transfers, electronic transactions, etc). | |
| 5.  ADJUSTED CHECKBOOK BALANCE: | |

_This balance should agree with line 10, below._

| STATEMENT BALANCE | |
|---|---|
| 6.  LIST your current statement balance as shown on the front of this statement. | |
| 7.  ADD deposits made, but not shown on this statement. | |
| 8.  SUBTOTAL: | |
| 9.  SUBTRACT total from "Checks Outstanding." | |
| 10. ADJUSTED STATEMENT BALANCE: | |

_This balance should agree with line 5, above._

**PROMPTLY EXAMINE YOUR STATEMENT AND REPORT ANY PROBLEM**
You must promptly examine your account statements and report any discoverable errors, unauthorized signatures, alterations, missing endorsements, or unauthorized transfers. Failure to do so may result in your loss of certain rights or remedies. For example, you must identify the discoverable alteration or forgery of a check within 30 days of us sending you, or making available to you, the statement reflecting that check, and you must immediately report to us what you find. Businesses should check their account transactions daily, for which various online services are available. For additional information, please see your deposit account agreement and application service agreement(s) for details. See also the consumer disclosures below.

**CONSUMER ACCOUNTS: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS OR MONEY RESERVE TRANSACTIONS**
If you think your statement is wrong, or if you need more information about a transfer on this statement or on a receipt, please telephone or write us. Please use the telephone number or address listed on the front of this statement to contact us as you can. **We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared. The provisions in this paragraph do not apply to business or other non-personal accounts. The owners of those accounts must settle all unauthorized transactions or errors within 24 hours of receipt of the item posting in order to be returned.**

1.  Tell us your name and account number.
2.  Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3.  Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**FOR MONEY RESERVE ACCOUNTS:**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR PERSONAL CREDIT LINE**
_(This is a Summary of Your Billing Rights)._
If you think your statement is wrong, or you need more information about a transaction on your statement, write us at the address on the front of this statement as soon as possible. **We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.**

You can telephone us but doing so will not preserve your rights. In your letter, give us the following information.

1.  Your name and account number.
2.  The dollar amount of the suspected error.
3.  Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question. You must notify us in writing. You can telephone us, but doing so will not preserve your rights. Contact us at California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

**Balance Subject to Interest Rate:** We use the method called "average daily balance", (including current transactions) to calculate the daily balance. If you have any further questions about the method and how resulting interest charges are determined, please feel free to contact us at 1-800-400-6080.

**We may report information about your Money Reserve account to credit bureaus.** Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Please notify us if we report any inaccurate information about your account(s) to a credit bureau.** Your written notice describing the specific inaccuracy should be sent to us at the following address: California Bank & Trust, PO Box 25787, Salt Lake City, UT 84125-0787.

_Thank you for banking with California Bank & Trust._

**Become an Online Banking Customer for 24-hour account access.**

•Review account balances  •Review posted transactions  • Pay bills • Transfer funds
**Sign up today at www.calbanktrust.com or call 888-217-1265.**

EXHIBIT 1
2

0043701-0000001-0117609



Page 3 of 10
May 30, 2014
EAGAN AVENATTI LLP
8461

P.O. Box 489, Lawndale, CA 90260-0489

Continued ...

| Date | Amount | Description |
|------|--------|-------------|
| 05/13 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/14 | 5,000.00 | BANKCARD CENTER PAYMENT 479859110118744REF # 014134002770749 1104701373 |
| 05/15 | 5,893.16 | WIRE/OUT-2014051500003381;BNF MARIAM BICKNELL 1302000882 |
| 05/15 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/15 | 2,761.45 | WIRE/OUT-2014051500003466;BNF MARITZA NOWOWIEJSKI 1302000900 |
| 05/15 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/16 | 2,734.56 | JOHN HANCOCK ACH DEBIT 0077281 REF # 014136003864720 1104632916 |
| 05/16 | 34.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701001472 |
| 05/19 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/19 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/19 | 26,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000000091 2307404545 |
| 05/19 | 5,000.00 | BANKCARD CENTER PAYMENT 479859110118744REF # 014139004715839 1107002153 |
| 05/19 | 170.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701201465 |
| 05/20 | 40,000.00 | WIRE/OUT-2014052000002922;BNF GLOBAL BARISTAS US LLC 1302400864 |
| 05/20 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/21 | 5,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000006792 2304300241 |
| 05/22 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/22 | 3,200.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000003376 2304701679 |
| 05/22 | 68.00 | INSUFFICIENT FUNDS FEE-ITEM PD 1701201538 |
| 05/23 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/23 | 100,000.00 | WIRE/OUT-2014052300004117;BNF HENRY STOTSENBERGER 1302001177 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 500,000.00 | WIRE/OUT-2014052300004221;BNF FOSTER PEPPER PLLC 1302001201 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 100,000.00 | WIRE/OUT-2014052300004176;BNF GLOBAL BARISTAS US LLC 1302001189 |
| 05/23 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/23 | 2,000,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000001911 2307500713 |
| 05/27 | 12.00 | WIRE FEE-INCOMING DOMESTIC |
| 05/27 | 11,500.00 | WIRE/OUT-2014052700003795;BNF SUZY QUINN 1301901278 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | 400,000.00 | WIRE/OUT-2014052700007230;BNF GLOBAL BARISTAS US LLC 1301902216 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | 750,000.00 | WIRE/OUT-2014052700007722;BNF UBS FINANCIAL SERVICES;OBI FFC 1301902329 |
| 05/27 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/27 | 16,043,740.32 | ONLINE XFER TO DDA ***2699 ID: 000001269 2304807087 |
| 05/27 | 71,279.96 | BANKCARD CENTER PAYMENT 479859110118744REF # 014147007818399 1104902644 |
| 05/28 | 200,000.00 | ONLINE XFER TO DDA AVENATTI & A ID: 000004726 2304600537 |
| 05/28 | 900,000.00 | WIRE/XFER-2014052800003352 1301900861 |
| 05/28 | 80,961.64 | IRS USATAXPYMT 270454862809955REF # 014148008275764 1104334759 |
| 05/28 | 136,255.98 | IRS USATAXPYMT 270454860262222REF # 014148008275763 1104334758 |
| 05/29 | 19,219.65 | EMPLOYMENT DEVEL EDD EF 117864704 REF # 014149009118060 1103525178 |
| 05/29 | 25,016.66 | EMPLOYMENT DEVEL EDD EF 410638592 REF # 014149009118059 1103525177 |
| 05/29 | 18,885.09 | BANKCARD CENTER PAYMENT 479859110118744REF # 014149009418742 1103501455 |
| 05/30 | 6,447.68 | WIRE/OUT-2014053000007141;BNF MARIAM BICKNELL 1301901989 |
| 05/30 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/30 | 2,770.34 | WIRE/OUT-2014053000007112;BNF MARITZA NOWOWIEJSKI 1301901981 |
| 05/30 | 30.00 | WIRE FEE-OUTGOING DOMESTIC |
| 05/30 | 25.00 | REMOTE DEPOSIT SERVICE - 1 |

### 56 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 9596 | 05/12 | 17,177.01 | 9647* | 05/30 | 94,326.77 | 9699 | 05/29 | 50,708.00 |
| 9597 | 05/19 | 20,000.00 | 9662* | 05/30 | 10,000.00 | 9700 | 05/30 | 233,953.36 |
| 9598 | 05/21 | 8,700.00 | 9665* | 05/30 | 1,950.00 | 51509* | 05/02 | 3,865.98 |
| 9600* | 05/05 | 7,650.00 | 9667* | 05/28 | 77,783.98 | 51511* | 05/01 | 5,120.34 |
| 9601 | 05/05 | 14,583.33 | 9670* | 05/30 | 13,825.60 | 51512 | 05/01 | 1,162.69 |
| 9605* | 05/29 | 84.00 | 9671 | 05/30 | 39,097.68 | 51513 | 05/06 | 5,648.27 |
| 9606 | 05/29 | 84.00 | 9673* | 05/29 | 123,360.49 | 51515* | 05/01 | 1,441.99 |
| 9607 | 05/21 | 3,632.86 | 9677* | 05/29 | 4,046.60 | 51516 | 05/01 | 2,941.43 |
| 9608 | 05/20 | 2,000.00 | 9678 | 05/30 | 987.35 | 51518* | 05/01 | 4,700.55 |
| 9609 | 05/16 | 5,000.00 | 9680* | 05/27 | 2,040.21 | 51519 | 05/01 | 7,569.42 |
| 9611* | 05/16 | 1,281.93 | 9681 | 05/30 | 294.25 | 51520 | 05/02 | 5,693.14 |
| 9614* | 05/08 | 1,715.64 | 9682 | 05/29 | 6,353.73 | 51521 | 05/05 | 852.34 |
| 9623* | 05/28 | 6,185.29 | 9688* | 05/28 | 54.00 | 51522 | 05/05 | 175.00 |
| 9640* | 05/15 | 54,652.95 | 9694* | 05/28 | 350,000.00 | 51523 | 05/19 | 3,865.99 |
| 9643* | 05/30 | 291.76 | 9698* | 05/29 | 32,718.12 | 51525* | 05/16 | 5,120.34 |



EQUAL HOUSING LENDER       MEMBER FDIC

0043701-0000002-0117610

EXHIBIT 1
3

05/23/2014 2:04:20 PM -0400 FAXCOM                    PAGE 2    OF 2

# CREDIT CONFIRMATION

| | | | |
|---|---|---|---|
| **Transaction Reference Number:** | 2014052300006514 | **Value Date:** | 14/05/23 |
| **Account Number:** | ▮▮▮▮▮ | | |
| **Account name:** | FOSTER PEPPER PLLC<br>ATTN ACCOUNTING DEPT<br>1111 THIRD AVE SUITE 3400<br>SEATTLE WA 98101-3264 | | |
| **Reference Number:** | 0523L4B74B1C00016505231317FT03/0523D1B74<br>P9C0004650523131 7FT03 | | |
| **Transaction Posting Time:** | 2014/05/23 13:17:55 | | |

*moved to Trust*
*Per Ber*
*5/23/14*

| | | | |
|---|---|---|---|
| **Amount:** | 500,000.00 | **Currency:** | US DOLLAR |

| | |
|---|---|
| **Debit Party Information:** | ▮▮▮▮▮<br>CALIFORNIA BANK AND TRUST<br>SAN DIEGO, CA |
| **Sender's reference:** | 2014052300004221 |
| **Originating Party Information:** | EAGAN AVENATTI LLP<br>OPERATING ACCOUNT<br>450 NEWPORT CENTER DR FL 2<br>NEWPORT BEACH CA 92660-7610 |
| **Credit Party Information:** | ▮▮▮▮▮<br>FOSTER PEPPER PLLC<br>ATTN ACCOUNTING DEPT<br>1111 THIRD AVE SUITE 3400<br>SEATTLE WA 98101-3264 |
| **Beneficiary Party Information:** | ▮▮▮▮▮<br>FOSTER PEPPER PLLC<br>1111 W THIRD AVE SEATTLE WA |

*J. Culley*
*207/342 – 1*
*Global Barristers*
*LLC*
*1*

FG-EA0000330

EXHIBIT 1
4

### 🏦 FOSTER PEPPER PLLC

## REQUEST TO PLACE FUNDS IN TRUST

CLIENT NAME                                      Date  5/23/14

**Global Baristas, LLC**                         CLIENT/MATTER #  207342-1

DEPOSIT AMOUNT        $  500,000.00

FUNDS TO BE DEPOSITED ARE:

☐  To be Placed in an Interest Bearing Account (SSN# or Federal I.D. # _____ )

☒  A Wire Transfer from  **California Bank and Trust**     Bank in  **San Diego, CA** _____  City

☐  Cashier's Check(s) Attached

☐  Personal or Corporate Check(s) Attached

☐  Cash

The length of deposit is anticipated to be _____ days.

Client designated use  _Settlement funds_

Are these funds for payment of future legal fees:   ☐ Yes   ☐ No

Name:  **Jane Pearson**                          Signed: _____
        Print Name                                        Billing Attorney

Revised 11/04

Request to Place Funds in Trust.dot

FG-EA0000329

EXHIBIT 1
5

**Jesslyn Phounsavan**

| | |
|---|---|
| **From:** | Jack Cullen |
| **Sent:** | Friday, May 23, 2014 1:42 PM |
| **To:** | Jesslyn Phounsavan |
| **Subject:** | Re: Trust form for Global Baristas |

Settlement funds

Jack Cullen || Foster Pepper PLLC || 1111 3rd Ave.  Suite 3400 || Seattle, WA 98101 || Direct Dial 206.447.4689 ||
Direct Fax 206.749.2001 || Cell 206.234.4689 || Skype JackCullen47|| www.foster.com

If you received this email in error please reply to me and delete this copy immediately.  It may contain attorney-client
privileged and/or confidential information and should not be reproduced or distributed in any way. Thank you.

> On May 23, 2014, at 1:41 PM, "Jesslyn Phounsavan" <PhouJ@foster.com> wrote:
>
> May I please have the description on how funds will be use?  I need to input this information in our system.
>
> Thank you!
> Jesslyn
>
> -----Original Message-----
> From: Jack Cullen
> Sent: Friday, May 23, 2014 12:31 PM
> To: Jesslyn Phounsavan
> Subject: Re: Trust form for Global Baristas
>
> Or Alston.
>
> Jack Cullen || Foster Pepper PLLC || 1111 3rd Ave.  Suite 3400 || Seattle, WA 98101 || Direct Dial 206.447.4689 ||
Direct Fax 206.749.2001 || Cell 206.234.4689 || Skype JackCullen47|| www.foster.com
>
> If you received this email in error please reply to me and delete this copy immediately.  It may contain attorney-client
privileged and/or confidential information and should not be reproduced or distributed in any way. Thank you.
>
>> On May 23, 2014, at 12:30 PM, "Jesslyn Phounsavan" <PhouJ@foster.com> wrote:
>>
>> Can I ask Jane Pearson to sign?
>>
>> -----Original Message-----
>> From: Jack Cullen
>> Sent: Friday, May 23, 2014 12:29 PM
>> To: Jesslyn Phounsavan
>> Subject: Re: Trust form for Global Baristas
>>
>> Sorry. Not in the office today. Can you get someone else to sign?
>>
>> Jack Cullen || Foster Pepper PLLC || 1111 3rd Ave.  Suite 3400 || Seattle, WA 98101 || Direct Dial 206.447.4689 ||
Direct Fax 206.749.2001 || Cell 206.234.4689 || Skype JackCullen47|| www.foster.com

1

FG-EA0000332

EXHIBIT 1
6

**Cassandra Sampson**

| | |
|---|---|
| **From:** | Jack Cullen |
| **Sent:** | Monday, June 23, 2014 4:08 PM |
| **To:** | Cassandra Sampson |
| **Subject:** | Fwd: Global Baristas Invoices - June 2014 |

Here you go.

Jack Cullen || Foster Pepper PLLC || 1111 3rd Ave. Suite 3400 || Seattle, WA 98101 || Direct Dial 206.447.4689 || Direct Fax 206.749.2001 || Cell 206.234.4689 || Skype JackCullen47|| www.foster.com

If you received this email in error please reply to me and delete this copy immediately. It may contain attorney-client privileged and/or confidential information and should not be reproduced or distributed in any way. Thank you.

Begin forwarded message:

> **From:** "Michael J. Avenatti" <mavenatti@eaganavenatti.com>
> **Date:** June 23, 2014 at 3:05:47 PM PDT
> **To:** 'Jack Cullen' <jc@foster.com>
> **Cc:** Tod McDonald <TMcDonald@globalbaristas.com>
> **Subject: RE: Global Baristas Invoices - June 2014**
>
> Jack:
>
> Please issue a payment for $346,109.62 from the balance in the trust account to your firm to cover the entirety of the balance due on Matter No. 1.
>
> As for Matter No. 2 (Asia Rights Litigation), as we discussed earlier, I have not had a chance to review the invoices yet but will try and do so this week. Thank you as always.
>
> Michael
>
> Michael J. Avenatti, Esq.
> Eagan Avenatti, LLP
> 450 Newport Center Drive, Second Floor
> Newport Beach, CA 92660
> Tel: (949) 706-7000
> Fax: (949) 706-7050
> Cell: (949) 887-4118
> mavenatti@eaganavenatti.com
> The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.
>
> **From:** Jack Cullen [mailto:jc@foster.com]
> **Sent:** Monday, June 23, 2014 10:55 AM

1

FG-EA0000293

EXHIBIT 1
7

07/21/2014 3:01:36 PM -0400 FAXCOM                    PAGE 2    OF 2

# CREDIT CONFIRMATION

| | | | |
|---|---|---|---|
| Transaction Reference Number: | 2014072100006489 | Value Date: | 14/07/21 |
| Account Number: | ██████████ | | |
| Account name: | FOSTER PEPPER PLLC<br>ATTN ACCOUNTING DEPT<br>1111 THIRD AVE SUITE 3400<br>SEATTLE WA 98101-3264 | | |

*moved
to IOLA
Trust*

| | |
|---|---|
| Reference Number: | 07211,1LFBL4C0001710721143 9FT03/0721D1B74 P9C000546072114439FT03 |
| Transaction Posting Time: | 2014/07/21 14:39:50 |

| | | | |
|---|---|---|---|
| Amount: | 360,235.00 | Currency: | US DOLLAR |

Debit Party Information:

    HOMESTREET BANK
    SEATTLE, WA

Sender's reference:    20142020054000

Originating Party Information:

    GLOBAL BARISTAS US LLC
    2003 WESTERN AVE # 300
    SEATTLE WA 98121-3128

Credit Party Information:

    FOSTER PEPPER PLLC
    ATTN ACCOUNTING DEPT
    1111 THIRD AVE SUITE 3400
    SEATTLE WA 98101-3264

Beneficiary Party Information:

    FOSTER PEPPER LLC
    111 THIRD AVE STE 3400
    SEATTLE WA 87101

Originator to Beneficiary Information:    ATTN: JACK CULLEN
    RE: GLOBAL BARISTAS

FG-EA0000336

EXHIBIT 1
8

# Ⓕ FOSTER PEPPER PLLC

## REQUEST TO PLACE FUNDS IN TRUST

CLIENT NAME                                     Date  7/21/14

**Global Baristas, LLC**                        CLIENT/MATTER #  207342/1

DEPOSIT AMOUNT          $  360,235.00

FUNDS TO BE DEPOSITED ARE:

☐ To be Placed in an Interest Bearing Account (SSN# or Federal I.D. # _____ )

☒ A Wire Transfer from  **HomeStreet** _____  Bank in  **Seattle, WA** _____ City

☐ Cashier's Check(s) Attached

☐ Personal or Corporate Check(s) Attached

☐ Cash

The length of deposit is anticipated to be  <30  days.

Client designated use  _Settlement_

Are these funds for payment of future legal fees:    ☐ Yes    ☒ No

Name:  **Jack Cullen** _____                Signed: _____
          Print Name                                        Billing Attorney

Revised 11/04

Request to Place Funds in Trust.dot

FG-EA0000335

EXHIBIT 1
9



## QuickCheck

File   Edit   Help

| | | |
|---|---|---|
| Request Num | 207874 | Outstanding    Key Bank IOLTA Checking |
| | | (Released) |
| Doc Type | Wire | Jul 24 2014 |
| Payee Type | MISC | Green Mountain Coffee Roasters, Inc.    More    514,125.00   USD |
| | | Five hundred fourteen thousand one hundred twenty-five and    U S Dollars |
| Bank | 0198TR | Mail To |
| Date To Print | Jul 24 2014 | Ref   207342-1    Memo |

| | | | |
|---|---|---|---|
| Requested By | 5121 | Language | English |
| Payment Type | | Image Files | |

### Detail

| Check Amount | 514,125.00 | Add | Modify/View | Remove |
|---|---|---|---|---|

**Name Detail**

| | | |
|---|---|---|
| ○ G/L | 0.00 | |
| ○ Disb | 0.00 | |
| ● Trust | 514,125.00 | |
| ○ Client Cred | 0.00 | |
| ○ Matter Cred | 0.00 | |
| Unallocated Balance | 0.00 | |

| TrustNum | Client.Matter | Name | Desc | Amount |
|---|---|---|---|---|
| 1 | 207342.1 | Global Ba... | TC Global... | 514,125.00 |

Release/Unrelease   Post   Print        Delete   Clear   Close

```
*207874*
```

FG-EA0000296

EXHIBIT 1
10

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP | Keurig Dr. Pepper, Inc., f/k/a Green Mountain Coffee Roasters, Inc., a Delaware corportion |

| ATTORNEYS (Firm Name, Address, and Telephone No.) John P. Reitman, Monica Rieder, Landau Law LLP,2338 Manning Ave., Los Angeles, CA 90064 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only) ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor    ☐ Other ☑ Trustee | PARTY (Check One Box Only) ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor    ☑ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of voidable transfers; 11 U.S.C. 544, 550, 551; Cal. Civ. Code 3439.04, 3439.05, 3439.07, 3439.09

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  153,890.38 |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Eagan Avenatti, LLP | BANKRUPTCY CASE NO.<br>8:19-bk-13560-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ John P. Reitman | | |
| DATE<br><br>9/8/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John P. Reitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

eil-8

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN P. REITMAN (State Bar No. 80579) <br> jreitman@landaufirm.com <br> MONICA RIEDER (State Bar No. 263250) <br> mrieder@landaufirm.com <br> LANDAU LAW LLP <br> 2338 Manning Avenue <br> Los Angeles, California 90064 <br> Telephone: (310) 557-0050 <br> Facsimile: (310) 557-0056 <br><br> *Attorney for Plaintiff*  Richard A. Marshack, Ch. 7 Trustee | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re: <br> EAGAN AVENATTI, LLP, <br><br><br><br><br> Debtor(s). | CASE NO.: 8:19-bk-13560-SC <br><br> CHAPTER: 7 <br><br> ADVERSARY NO.: |
|---|---|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP, <br><br><br><br> Plaintiff(s) <br><br> Versus <br><br> KEURIG DR. PEPPER, INC., f/k/a GREEN MOUNTAIN COFFEE ROASTERS, INC., a Delaware corporation, <br><br><br> Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING** <br> **[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____ <br> **Time:** _____ <br> **Courtroom:** _____ | **Address:** <br> ☐ 255 East Temple Street, Los Angeles, CA 90012 <br> ☐ 3420 Twelfth Street, Riverside, CA 92501 <br> ☒ 411 West Fourth Street, Santa Ana, CA 92701 <br> ☐ 1415 State Street, Santa Barbara, CA 93101 <br> ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: **_____**

By: **_____**
                    Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____   _____   _____
*Date*                                         *Printed Name*                                      *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.