JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
2338 Manning Ave.
Los Angeles, California 90064
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No.: 8:19-bk-13560-SC |
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | Adv. No.: |
| | **COMPLAINT FOR AVOIDANCE AND RECOVERY OF VOIDABLE TRANSFERS** |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP, | |
| Plaintiff, | |
| v. | |
| MICHAEL Q. EAGAN; THE LAW OFFICES OF MICHAEL Q. EAGAN, | |
| Defendants. | |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA").  As the Trustee was not appointed until after EA filed bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal knowledge of the facts alleged below and therefore alleges those facts based upon the following: EA's bank records, information in the public record concerning EA, Michael J. Avenatti ("Avenatti") and his other related entities, information in the public record concerning defendants, information obtained from other proceedings in which EA, Avenatti or his other related entities were involved and information obtained from former clients of EA.

## JURISDICTION AND VENUE

1.  In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB ("EA Bankruptcy Case").  The outcome of this adversary proceeding will have a significant effect on the Estate because it asserts claims for the return of property or the recovery of the value of assets fraudulently transferred by EA at the direction of its managing partner and affects the amount of money available for distribution to creditors of the Estate.  The claims for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H).  Regardless of whether this is a core proceeding, consent is given to the entry of final orders and judgment by the Bankruptcy Court. Defendants are notified that Fed. R. Bankr. P. 7012(b) requires defendants to state whether defendants do or do not consent to the entry of final orders and judgment by the Bankruptcy Court.

2.  Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the EA Bankruptcy Case is pending in this district and division.  This Court also has personal jurisdiction over defendants.

/ / /

/ / /

/ / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PARTIES**

3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

4.   Defendant Michael Q. Eagan ("Eagan") is an individual with a residence address in Riverside County, California.

5.   Defendant the Law Offices of Michael Q. Eagan, LLP ("LOMQE"; and together with Eagan the "Eagan Parties" or "defendants") is a legal entity with a registered address with the California State Bar in San Francisco, California and operates as a law firm for Eagan.

**GENERAL ALLEGATIONS**

6.   EA was a California based litigation law firm formed in August 2007.  At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

7.   Eagan and Avenatti (along with O'Malley) were the sole founding partners in EA, then known as Eagan O'Malley & Avenatti, LLP ("EOA").  Pursuant to the EOA partnership agreement, Eagan contributed only nominal cash as capital for the firm.  Moreover, he was not expected to, nor required to, have any day-to-day role in the management or operations of the firm.  Instead, Eagan's stated role was to provide high level legal skills, advice, and business generation on behalf of the firm.  The EOA partnership agreement further provided that to provide strong incentives for the origination of business by its founding partners, Eagan would be entitled to 25% of the legal fees paid to the firm (after the payment of any referral fees to outside counsel) for any business brought to the firm by him during his tenure with the firm and Avenatti would be entitled to 15% of the legal fees paid to the firm (after the payment of any referral fees to outside counsel) for any business brought to the firm.  Those terms were predicated on Eagan's background, contacts and highly regarded legal reputation which Avenatti and O'Malley believed might draw potential clients to the firm.

8.   In December 2010, O'Malley left EOA.  In July 2011, O'Malley commenced litigation against his former partners alleging, among other things, breach of the EOA partnership agreement and breach of fiduciary duty.  That dispute was settled in August 2015.

/ / /

9.      In January 2011, Avenatti purportedly assumed control over the management of EOA and the name of the firm was changed to EA.  From at least January 1, 2012, and at all relevant times thereafter, Avenatti held himself out as the managing partner of EA and owner at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A"). As EA's managing partner, Avenatti at all relevant times was an individual who controlled EA's business and had full access to its business and financial records (including its banking records).

10.      Avenatti has claimed that Eagan ceased his limited role at EA by not later than February 16, 2012.  Notwithstanding that claim, however, Avenatti and Eagan continued to communicate with each other regarding EA's business and financial affairs; those communications included Avenatti causing EA to periodically send Eagan accounts payable, accounts receivable, and general ledger reports from 2012 through at least August 2014.  During that same time, Eagan also communicated with other attorneys who worked at EA regarding its business and litigation matters and other professionals who performed services for EA and received communications from third-party attorneys who with EA jointly represented the same clients in certain litigation matters.

11.      As a result of the information he received, as set forth above, Eagan knew or should have known by not later than August 2012, that EA and Avenatti had potentially serious financial issues relating to tax liabilities and the claim that EA had refused to pay a more than $5 million contingency fee owed its co-counsel in a settled case, Stoll, Nussbaum & Polakov APC (the "Stoll Firm").  Moreover, in February 2014, Eagan learned from Wilson & Ratledge, PLLC that Avenatti had caused EA to refuse to pay it a significant contingency fee earned from their joint representation of a client in another case and had asserted that Eagan was still a 25% owner of EA. That same month, Eagan learned that EA was delaying the payment of a multi-million-dollar bonus owed to one of its attorneys, Jason Frank, through his loan out company Jason Frank Law ("JFL"). Nevertheless, Eagan continued to permit Avenatti to practice law under the name "Eagan Avenatti" until the firm was placed into receivership in February 2019.

12.      Prior to EA's receivership and the subsequent commencement of California State Bar administrative proceedings and federal criminal proceedings against him, Avenatti was an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as

4

*Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.* (involving defective surgical gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy Daniels") and the alleged victims of R&B artist R. Kelly.

13.    EA received substantial revenue from its operations but also incurred substantial liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, the Stoll Firm.  The Stoll Firm alleged that, in the case where it and EA had been co-counsel, EA had received the entire settlement payment of $39 million from the defendants and had paid itself, another law firm, and the clients, but had wrongfully retained $5,465,314 to which the Stoll Firm claimed entitlement under a written client engagement agreement and an attorney fee-sharing agreement.  At all times between June 2011 and the Petition Date (defined below), the Stoll Firm was seeking payment from EA of the $5,465,314 in fees and costs allegedly owed under those agreements, plus punitive damages, interest, etc. That claim was allowed by a Bankruptcy Court order entered November 2, 2020.  Main Case Doc 235.

14.    In 2012, EA began to default on its tax obligations.  For example, EA failed to file its partnership tax returns for 2011 and 2012 with the Internal Revenue Service (the "IRS") until March and October of 2014, respectively.  EA simply never filed partnership tax returns with the IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

15.    At the same time that EA was defaulting on its tax obligations and allegedly in possession of more than $5 million in stolen money, Avenatti caused EA to disburse a substantial amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii) Porsche GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB Autosport, LLC and other entities which owned, maintained and operated Porsche and Mercedes race cars for

Avenatti's personal use in the United States and Europe;[1] (iii) a Ferrari for Avenatti's personal use (at approximately $4,000 a month); (iv) Avenatti's acquisition of an indirect ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman Marcus and other luxury retail stores (court records document American Express charges between $60,000 and $70,000 a month); (vi) an ocean front residence in Laguna Beach, California purchased for $7.2 million in 2011 and sold for $12.6 million in 2015; (vii) lavish trips to Mexico, Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to purchase a home on Lido Isle in Newport Beach, California for $15.75 million (which purchase never closed); and (ix) making substantial improvements to both the Laguna Beach house and the Lido Isle house.

16.    Given that EA was expending exorbitant amounts, directly or indirectly, to support Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is unsurprising that EA ended up in financial difficulties. Those difficulties manifested both in nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

17.    On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL. EA subsequently failed to pay substantial additional amounts to JFL under the same agreement, leading to JFL eventually obtaining a $10 million judgment for amounts EA failed to pay JFL from 2014 through 2016.

18.    At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti was seeking a loan for EA from The Peoples Bank ("Peoples Bank"), a bank located in Mississippi. Avenatti stated that the loan was primarily for "working capital" for EA. Avenatti submitted fraudulent documents to the bank to obtain the loan, including a balance sheet that overstated EA's bank account balance by approximately $450,000, and a fake partnership tax return that overstated EA's 2012 income by approximately $8 million. Even with the rosier picture of EA's finances painted by the false documents, the bank required collateral pledges and a personal guaranty to make a short-term loan of $2.75 million to EA. The first Peoples Bank loan was issued on March

---

[1] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

14, 2014 and had a maturity date of June 15, 2014.

19.     The first Peoples Bank loan was repaid from the proceeds of a settlement achieved by EA on behalf of a client in May 2014.  Just six months later, in November 2014, Avenatti was again seeking a substantial loan from Peoples Bank for EA's "case costs and working capital."  Avenatti requested a $2.5 million line of credit, and again submitted fraudulent documents to the bank in support of the request, including a balance sheet that overstated EA's bank account balance by approximately $700,000.  However, again, even with the falsely optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan, and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of credit requested by Avenatti.

20.     The second Peoples Bank loan was issued on December 12, 2014.  The loan was secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a specific case.  EA received those fees in or around February 2015 but did not pay any portion of the fees towards the Peoples Bank loan.  Nor did EA repay the loan by its maturity date of December 12, 2015.  It was only after the bank repeatedly demanded payment from Avenatti and threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan, approximately four months later.

21.     As set forth above, by the beginning of 2015, EA had already defaulted on multiple tax obligations, was subject to a more than $5 million claim asserted by the Stoll Firm, was failing to pay substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its operating costs.  EA's inability to keep its "head above water" financially resulted in ever more desperate measures in 2015.  In the first quarter of 2015, EA stopped paying payroll taxes to the IRS.  Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll taxes – including approximately $1.3 million in trust fund taxes that EA had withheld from employees' checks but never sent to the IRS.  EA also stopped paying taxes to the California Employment Development Department (the "EDD") in the first quarter of 2015.  At the same time, EA stopped paying multiple trade creditors (e.g., providers of professional services associated with EA's law practice).

/ / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

22.    By September 13, 2015, EA was generally not paying its debts as they became due. Several of the creditors who were not being paid have held unsecured claims against EA continuously from at least September 13, 2015, through the Petition Date, including but not limited to the Stoll Firm, JFL, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP.  These creditors hold claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502.

23.    The avoidable transfers that are alleged in this Complaint could not reasonably have been discovered by these creditors or EA's other creditors until less than one year before the Petition Date.  The transfers at issue are payments of money between private parties, so there is no public record of those transfers from which a creditor could have learned of their existence. Instead, a creditor would have to acquire access to EA's bank statements and other financial records to learn of the transfers at issue and their fraudulent nature.  Given Avenatti's willingness to falsify EA financial documents (as described above in connection with the Peoples Bank loans and as described below in connection with the first EA bankruptcy case) and his extreme resistance to producing accurate EA financial documents (as described below in connection with the JFL arbitration and the receivership proceeding), the creditors holding unsecured claims had no reasonable ability to obtain the accurate financial records of EA and other information relating to its clients recoveries necessary to discover the transfers at issue and their fraudulent nature.

24.    In 2016, JFL filed an arbitration claim against EA for amounts owed under the agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents for the period from 2013 onwards.  JFL had been informally seeking those documents from Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA was ordered by the arbitration panel to produce financial records that EA produced any such records to JFL. Even then, EA refused to provide complete documentation (for example, although redaction was not permitted, EA redacted numerous entries on the bank statements that it provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the arbitration panel to impose heavy sanctions on EA.

/ / /

25.     In February 2017, the arbitration panel ordered Avenatti and two other individuals knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The order made clear that the panel would consider the imposition of severe sanctions (including $10,000 in sanctions against each individual personally) if Avenatti and the other individuals failed to comply with the order.  Rather than appearing to give testimony regarding EA's finances, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle District of Florida on March 1, 2017, to stay the arbitration proceedings.

26.     On March 10, 2017, Avenatti consented in the involuntary bankruptcy case to EA being placed into Chapter 11 bankruptcy, and the case was subsequently transferred to the Honorable Catherine E. Bauer in the Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy").

27.     EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors – without including any amounts owed to the Stoll Firm or JFL, or the millions of dollars that Avenatti had stolen from EA clients.

28.     The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured settlement approved by the bankruptcy court.  That structured settlement required EA, following the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL, and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one of its clients a settlement payment of approximately $8 million.  Rather than paying the entire amount to the client, as it was obligated to do, Avenatti caused EA to transfer $2,828,423 of the client funds to the law firm representing Avenatti in the 2017 Bankruptcy.  The law firm then distributed these funds to (i) the IRS, as the initial payment towards its claim against EA, (ii) EA's counsel in the 2017 Bankruptcy, and (iii) counsel for the Official Committee of Unsecured Creditors in the 2017 Bankruptcy.

29.     EA did not make any of the other payments owed under the settlement, except for a payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

9

1    bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

2    on May 22, 2018.

3        30.    JFL's judgment against EA was registered before the United States District Court

4    for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

5    A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

6        31.    As part of the district court proceeding, JFL moved for the appointment of an

7    independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

8    as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

9    entered a Receivership and Restraining Order against EA and Avenatti.

10        32.    Throughout the Receivership, Avenatti attempted to impede the Receiver in

11    recovering EA financial documents, first stating that he would turn over such documents, and then

12    later stating that he did not know where they were.  In or about April of 2019, it was discovered

13    that Avenatti had caused EA's computer servers containing EA's books and records and other

14    financial data to be moved to an off-site storage facility but refused to disclose this information to

15    the Receiver for months.  Eventually, when the Receiver located those servers, they were turned

16    over to the U.S. Government in connection with criminal charges against Avenatti.  Once the

17    Receiver (and then later the Trustee) recovered the servers and forensic copies of the data

18    contained therein, it was not possible to access the data due to the significant cost in doing so, and

19    the fact that EA had only nominal available funds (the remainder had been "removed" by

20    Avenatti).

21        33.    On March 22, 2019, the United States Attorney for the Central District of California

22    filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v. Avenatti*,

23    United States District Court for the Central District of California, SACR19-00061-JVS ("California

24    Criminal Case").[2]  The complaint in the California Criminal Case charged Avenatti with wire fraud

25

---

26    [2]  This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases pending
against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found Avenatti

27    guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted extortion (18
U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*, No. 1:19-CR-373-

28    PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over $20 million.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for wrongfully diverting to his personal use millions of dollars belonging to EA's clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS, including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks, causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank fraud and other crimes. On April 4, 2019, the Grand Jury in the California Criminal Case indicted Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former clients. The California Criminal Case is still pending.

34.    On September 13, 2019 (the "Petition Date"), Brian Weiss, as the Receiver for EA, filed a voluntary petition for relief for EA under Chapter 7 of Title 11 initiating this bankruptcy case.

35.    On September 13, 2019, Brian Weiss, as the Receiver for EA, filed a voluntary petition under Chapter 7 of Title 11 initiating this bankruptcy case.

### *Transfers made by EA to the Eagan Parties*

36.    Between June 28, 2013, and November 9, 2016, Avenatti caused EA to transfer $1,257,619.34 to Eagan and $31,823.55 to LOMQE ("EA Transfers"). These transfers were made at a time when the Eagan Parties purportedly no longer had any connection with and performed no work for EA. As a result, EA (and its creditors) received no value in exchange for the EA Transfers to the Eagan Parties. A spreadsheet cataloging the EA Transfers is attached as **Exhibit 1**.

## FIRST CLAIM FOR RELIEF

### (Against Defendants, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.09(a), (c))

37.    The Trustee incorporates by reference and realleges paragraphs 1-36 of this Complaint.

38.    During the seven-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendants (in each instance, the transfers made to LOMQE also were made for the benefit of Eagan), as listed in **Exhibit 1**. Those transfers are referred to herein as the "7-Year Transfers."

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

39.     The 7-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations.  Specifically, at all times during the seven-year period, the Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to it; EA owed money to the FTB; and EA was late in filing IRS returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS.  As described above, during the seven-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

40.     Defendants did not take any of the 7-Year Transfers in good faith/EA did not receive reasonably equivalent value in exchange for the 7-Year Transfers.  Specifically, defendants knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments were not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

41.     At all relevant times, the 7-Year Transfers were avoidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include, without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP.

42.     For the reasons described above, the avoidable transfers alleged in this claim for relief could not reasonably have been discovered by these creditors sooner than one year prior to the Petition Date.

## **SECOND CLAIM FOR RELIEF**

**(Against Defendants, To Avoid 4-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

**Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07)**

43.    The Trustee incorporates by reference and realleges paragraphs 1-36 of this Complaint.

44.    During the four-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendants (in each instance, the transfers made to LOMQE also were made for the benefit of Eagan), as listed in **Exhibit 1**. Those transfers are referred to as the "4-Year Transfers."

45.    The 4-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors. Specifically, Avenatti caused EA to make these transfers to or for the benefit of the defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations. Specifically, at all times during the four-year period, the Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft of money owed to it; EA owed substantial amounts of money to JFL under the independent contractor agreement with JFL; EA was failing to file state and federal tax returns; and EA owed money to multiple taxing authorities, including the IRS, the FTB, and the EDD. As described above, during the four-year period, EA defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

46.    Defendants did not take any of the 4-Year Transfers in good faith/EA did not receive reasonably equivalent value in exchange for the 4-Year Transfers. Specifically, defendants knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those payments was not

Landau Law LLP
Attorneys at Law
Los Angeles, California

1  for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no

2  or less than reasonably equivalent value upon EA or its creditors.

3      47.    At all relevant times, the 4-Year Transfers were voidable under California Civil

4  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

5  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

6  without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra,

7  LLP.

8                    **THIRD CLAIM FOR RELIEF**

9  **(Against Defendants, To Avoid 4-Year Transfers Made While EA Was Insolvent under**

10          **11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.05 and 3439.07)**

11      48.    The Trustee incorporates by reference and realleges paragraphs 1-36 and 44 of this

12  Complaint.

13      49.    At all times between September 13, 2015, and the Petition Date, EA was insolvent

14  as it was not paying its debts as they became due in the ordinary course of business.  Among other

15  things, EA had not filed federal tax returns since 2013; had not paid its annual limited partnership

16  fee to the FTB for 2011 or 2013 onwards; was not paying payroll taxes to the IRS; was wrongfully

17  retaining trust fund taxes withheld from its employees' checks; was not paying taxes owed to the

18  EDD; was not paying the multimillion dollar claims asserted by the Stoll Firm and JFL; was not

19  paying other unsecured creditors, including but not limited to Baker, Keener & Nahra, LLP; and

20  was more than four months late in repaying the loan from The Peoples Bank that matured on

21  December 12, 2015.

22      50.    EA received less than reasonably equivalent value in exchange for the 4-Year

23  Transfers, because any goods or services provided in exchange for the 4-Year Transfers solely or

24  primarily benefited Avenatti or his other entities rather than EA.

25      51.    At all relevant times, the 4-Year Transfers were voidable under California Civil

26  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

27  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

28  without limitation, JFL, the Stoll Firm, the IRS, the FTB, the EDD, and Baker, Keener & Nahra,

Landau Law LLP
ATTORNEYS AT LAW
Los Angeles, California

1  LLP.

2  **FOUTH CLAIM FOR RELIEF**

3  **(Against Defendants, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

4  **Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

5      52.    The Trustee incorporates by reference and realleges paragraphs 1-36 of this

6  Complaint.

7      53.    During the eight-year period immediately preceding the Petition Date, Avenatti

8  directed and caused EA to make transfers of its property, including money, to or for the benefit of

9  defendants (in each instance, the transfers made to LOMQE also were made for the benefit of

10  Eagan), as listed in **Exhibit 1**.  Those transfers are referred to as the "8-Year Transfers."

11      54.    The 8-Year Transfers were made by EA with the actual intent to hinder, delay, or

12  defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit

13  of defendants to fund Avenatti's opulent lifestyle and not to sustain or promote the business of

14  EA, even though Avenatti knew that EA was subject to substantial creditor claims and the

15  transfers reduced the amount of funds available to pay these creditors and knew or consciously or

16  recklessly chose to ignore facts known to him that strongly suggested that EA was in default on

17  multiple obligations.  Specifically, at all times between January 1, 2012, and the Petition Date, the

18  Stoll Firm was asserting a claim of more than $5 million against EA based on EA's alleged theft

19  of money owed to the Stoll Firm; EA owed money to the FTB; and EA was late in filing IRS

20  returns, not filing IRS returns, and/or failing to pay its tax obligations to the IRS.  As described

21  above, during that eight-year period, EA defaulted on numerous other obligations, accrued

22  millions of dollars of unsecured debt, wrongfully withheld more than a million dollars in trust

23  fund taxes EA collected from its employees but failed to remit to the IRS, and ultimately

24  misappropriated millions of dollars of client funds to pay a small portion of its accrued debts.

25      55.    Defendants did not take any of the 8-Year Transfers for a reasonably equivalent

26  value and/or did not take such transfers in good faith.  Specifically, defendants knew or

27  consciously or recklessly chose to ignore facts known to them that strongly suggested that the

28  value, if any, that defendants provided in exchange for those payments was not for the benefit of

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  and did not benefit EA or its creditors, and that such value, if any, conferred no or less than

2  reasonably equivalent value upon EA or its creditors.

3         56.     At all relevant times, the 8-Year Transfers were voidable under California Civil

4  Code §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against

5  EA that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any

6  funds the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim.

7  Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil

8  Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable

9  to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore,

10  under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and

11  recover the 8-Year Transfers on behalf of the IRS and other creditors of the Estate.

12                          **FIFTH CLAIM FOR RELIEF**

13             **(Against Defendants, To Recover and Preserve Avoided Transfers**

14                **under 11 U.S.C. § 550(a)(1), (a)(2), and § 551)**

15         57.     The Trustee incorporates by reference and realleges paragraphs 1-36, 38-42, 44-46,

16  49-51, and 53-56 of this Complaint.

17         58.     To the extent that defendants are initial transferees of the transfers referred to in

18  this Complaint or a person for whose benefit those transfers were made, and such transfers are

19  avoided, defendants are strictly liable for their return and the Trustee is entitled to recover

20  judgments in such amounts.

21         59.     Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

22  benefit of the Estate.

23         **WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against

24  defendants as follows:

25         1.      On the First Claim for Relief, for a judgment against defendants that avoids the 7-

26  Year Transfers;

27         2.      On the Second Claim for Relief, for a judgment against defendants that avoids the

28  4-Year Transfers;

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.      On the Third Claim for Relief, for a judgment against defendants that avoids the 4-Year Transfers;

4.      On the Fourth Claim for Relief, for a judgment against defendants that avoids the 8-Year Transfers;

5.      On the Fifth Claim for Relief, for a judgment against defendants that awards damages in an amount equal to the value of the transfers avoided under the First through Fourth Claims for Relief and/or that preserves the avoided transfers for the benefit of the Estate;

6.      For pre- and post-judgment interest at the applicable legal rate on all damages and sums awarded to the Trustee; and

7.      For such other relief as the Court deems just and proper.


Dated: September 8, 2021                    LANDAU LAW LLP

                                            By ___/s/ John P. Reitman_____
                                                John P. Reitman
                                            Special Litigation Attorneys for
                                            Plaintiff Richard A. Marshack,
                                            Chapter 7 Trustee for Eagan Avenatti, LLP

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

EXHIBIT 1

**EA Transfers To Michael Q. Eagan**

| Date | Amount | Transaction Kind | Check # | Account Name |
|---|---|---|---|---|
| 3/31/2015 | $1,250,000.00 | Check | 15123 | EA CBT 2851 |
| 5/6/2015 | $1,841.97 | Check | 15172 | EA CBT 2851 |
| 6/3/2015 | $1,716.35 | Check | 15099 | EA CBT 2851 |
| 10/29/2015 | $4,061.02 | Check | 15321 | EA CBT 2851 |

**Total Transfers from
EA to Michael Q.
Eagan:**      **$1,257,619.34**

**EA Transfers to Law Offices of Michael Q. Eagan**

| Date | Amount | Transaction Kind | Check # | Description | Account Name |
|------|--------|------------------|---------|-------------|--------------|
| 6/28/2013 | $2,442.57 | Check | 9036 | 9036  | Law Offices of Michael Q Eagan | EA CBT 8461 Operating |
| 11/20/2013 | $3,436.73 | Check | 9246 | 9246  | Law Offices Of Michael Q Eagan | EA CBT 8461 Operating |
| 12/9/2013 | $3,769.45 | Check | 9324 | 9324  | Law Offices Of Michael Q Eagan | EA CBT 8461 Operating |
| 3/24/2014 | $2,247.98 | Check | 9478 | 9478  | Law Offices of Michael Q. Eagan | EA CBT 8461 Operating |
| 7/7/2014 | $984.67 | Check | 9738 | 9738*  | Law Offices of Michael Q. Eagan | EA CBT 8461 Operating |
| 1/5/2015 | $3,116.25 | Check | 10031 | 10031  | Law Offices Of Michael Q Eagen | EA CBT 8461 Operating |
| 2/13/2015 | $2,331.74 | Check | 15083 | 15083  | Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 10/29/2015 | $1,717.45 | Check | 15334 | 15334*  | Law Offices of Micheal Q. Eagan | EA CBT 2851 |
| 11/9/2015 | $2,209.09 | Check | 15374 | 15374  | Law Offices of Micheal Q. Eagan | EA CBT 2851 |
| 3/1/2016 | $1,924.86 | Check | 15561 | 15561*  | Law Offices Of Michael Q Eagan | EA CBT 2851 |
| 3/29/2016 | $1,262.71 | Check | 15578 | 15578  | Law Offices Of Michael Q Eagan | EA CBT 2851 |
| 6/16/2016 | $1,615.90 | Check | 15704 | 15704*  | Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 6/29/2016 | $946.13 | Check | 15724 | 15724*  | Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 9/22/2016 | $1,980.98 | Check | 15792 | 15792  | Law Offices of Michael Q. Eagan | EA CBT 2851 |
| 11/9/2016 | $1,837.04 | Check | 15847 | 15847  | Law Offices of Michael Q. Eagan | EA CBT 2851 |

**Total Transferred from**
**EA to Law Offices of**
**Michael Q. Eagan**          **$31,823.55**

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP | DEFENDANTS<br><br>Michael Q. Eagan; The Law Offices of Michael Q. Eagan |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>John P. Reitman, Monica Rieder,<br>Landau Law LLP,2338 Manning Ave., Los Angeles, CA 90064 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☑ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of voidable transfers; 11 U.S.C. 544, 550, 551; Cal. Civ. Code 3439.04, 3439.05, 3439.07, 3439.09

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer `[3]`
☒ 14-Recovery of money/property - other `[1]`

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
        (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court
        if unrelated to bankruptcy case) `[2]`

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  1,289,442.89 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Eagan Avenatti, LLP | BANKRUPTCY CASE NO.<br>8:19-bk-13560-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ John P. Reitman | | |
| DATE<br><br>9/8/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John P. Reitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN P. REITMAN (State Bar No. 80579)<br>jreitman@landaufirm.com<br>MONICA RIEDER (State Bar No. 263250)<br>mrieder@landaufirm.com<br>LANDAU LAW LLP<br>2338 Manning Avenue<br>Los Angeles, California 90064<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br><br>*Attorney for Plaintiff*  Richard A. Marshack, Ch. 7 Trustee | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br>EAGAN AVENATTI, LLP,<br><br><br><br><br>Debtor(s). | CASE NO.: 8:19-bk-13560-SC<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br><br>Plaintiff(s)<br><br>Versus<br><br>MICHAEL Q. EAGAN,<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** _____ | **Address:**<br>☐ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☒ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**


**KATHLEEN J. CAMPBELL
CLERK OF COURT**



Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____



By: _____
                    Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                        Page 2                                **F 7004-1.SUMMONS.ADV.PROC**

## ATTACHMENT A
### Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP | MICHAEL Q. EAGAN;<br>THE LAW OFFICES OF MICHAEL Q. EAGAN |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____        _____        _____
_Date_                             _Printed Name_              _Signature_

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.