JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
2338 Manning Avenue
Los Angeles, California 90064
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re | Case No.: 8:19-bk-13560-SC |
|---|---|
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | Adv. No.: |
| | **COMPLAINT FOR AVOIDANCE AND RECOVERY OF VOIDABLE TRANSFERS** |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP, | |
| Plaintiff, | |
| v. | |
| OSBORN MACHLER PLLC, a Washington professional limited liability company, | |
| Defendant. | |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"). As the Trustee was not appointed until after EA filed bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal knowledge of the facts alleged below and therefore alleges those facts based upon the following: EA's bank records, information in the public record concerning EA, Michael J. Avenatti ("Avenatti") and his other related entities, information in the public record concerning defendant, information obtained from other proceedings in which EA, Avenatti or his other related entities were involved and information obtained from former clients of EA.

## JURISDICTION AND VENUE

1. In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB ("EA Bankruptcy Case"). The outcome of this adversary proceeding will have a significant effect on the Estate because it asserts claims for the return of property or the recovery of the value of assets fraudulently transferred by EA at the direction of its managing partner and affects the amount of money available for distribution to creditors of the Estate. The claims for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H). Regardless of whether this is a core proceeding, consent is given to the entry of final orders and judgment by the Bankruptcy Court. Defendant is notified that Fed. R. Bankr. P. 7012(b) requires defendant to state whether it does or does not consent to the entry of final orders and judgment by the Bankruptcy Court.

2. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the EA Bankruptcy Case is pending in this district and division. This Court also has personal jurisdiction over defendant.

## PARTIES

3. Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

2

4.   Defendant Osborn Machler PLLC ("Osborn Machler" or "defendant") is a law firm organized and existing under the laws of the state of Washington with a principal place of business in Seattle, Washington.

## **GENERAL ALLEGATIONS**

5.   EA was a California based litigation law firm formed in August 2007.  At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

6.   In 2011, Avenatti assumed control over the management of EA.  From at least January 1, 2012, and at all relevant times thereafter, Avenatti was the managing partner of EA and owned at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A").  As EA's managing partner, Avenatti at all relevant times was an individual who controlled EA's business and had full access to its business and financial records (including its banking records).

7.   Avenatti formerly was an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as *Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.* (involving defective surgical gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy Daniels") and the alleged victims of R&B artist R. Kelly.

8.   EA received substantial revenue from its operations but also incurred substantial liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, Stoll, Nussbaum & Polakov APC ("Stoll").  Stoll alleged that, in the case where EA and Stoll had been co-counsel, EA had received the entire settlement payment of $39 million from the defendants and had paid itself, another law firm, and the clients, but had wrongfully retained $5,465,314 to which Stoll claimed entitlement under a written client engagement agreement and an attorney fee-sharing agreement.  At all times between June 2011 and the Petition Date, Stoll was seeking payment from EA of the $5,465,314 in fees and costs allegedly owed under those agreements, plus punitive

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    damages, interest, etc. The Stoll claim was allowed by a Bankruptcy Court order entered

2    November 2, 2020.  [Main Doc 235.]

3            9.      In 2012, EA began to default on its tax obligations.  For example, EA failed to file

4    its partnership tax returns for 2011 and 2012 with the Internal Revenue Service ("IRS") until

5    March and October of 2014, respectively.  EA simply never filed partnership tax returns with the

6    IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the

7    California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

8            10.     At the same time that EA was defaulting on its tax obligations and allegedly in

9    possession of more than $5 million in stolen money, Avenatti caused EA to disburse a substantial

10   amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel

11   Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's

12   acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated

13   through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii)

14   Porsche GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB

15   Autosport, LLC and other entities which owned, maintained and operated Porsche and Mercedes

16   race cars for Avenatti's personal use in the United States and Europe;[1] (iii) a Ferrari for Avenatti's

17   personal use (at approximately $4,000 a month); (iv) Avenatti's acquisition of an indirect

18   ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman

19   Marcus and other luxury retail stores (court records document American Express charges between

20   $60,000 and $70,000 a month); (vi) an ocean front residence in Laguna Beach, California

21   purchased for $7.2 million in 2011 and sold for $12.6 million in 2015; (vii) lavish trips to Mexico,

22   Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to

23   purchase a home on Lido Isle in Newport Beach, California for $15.75 million (which purchase

24   never closed); and (ix) making substantial improvements to both the Laguna Beach house and the

25   Lido Isle house.

26           11.     Given that EA was expending exorbitant amounts, directly or indirectly, to support

27

28   [1] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

4

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is unsurprising that EA ended up in financial difficulties.  Those difficulties manifested both in nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

12.     On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL.  EA subsequently failed to pay substantial additional amounts to JFL under the same agreement, leading to JFL eventually obtaining a $10 million judgment for amounts EA failed to pay JFL from 2014 through 2016.

13.     At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti was seeking a loan for EA from The Peoples Bank ("Peoples Bank"), a bank located in Mississippi.  Avenatti stated that the loan was primarily for "working capital" for EA.  Avenatti submitted fraudulent documents to the bank in order to obtain the loan, including a balance sheet that overstated EA's bank account balance by approximately $450,000, and a fake partnership tax return that overstated EA's 2012 income by approximately $8 million.  Even with the rosier picture of EA's finances painted by the false documents, the bank required collateral pledges and a personal guaranty to make a short-term loan of $2.75 million to EA.  The first Peoples Bank loan was issued on March 14, 2014 and had a maturity date of June 15, 2014.

14.     The first Peoples Bank loan was repaid from the proceeds of a settlement achieved by EA on behalf of a client in May 2014.  Just six months later, in November 2014, Avenatti was again seeking a substantial loan from Peoples Bank for EA's "case costs and working capital."  Avenatti requested a $2.5 million line of credit, and again submitted fraudulent documents to the bank in support of the request, including a balance sheet that overstated EA's bank account balance by approximately $700,000.  However, again, even with the falsely optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan, and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of credit requested by Avenatti.

15.     The second Peoples Bank loan was issued on December 12, 2014.  The loan was secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a

specific case. EA received those fees in or around February 2015 but did not pay any portion of the fees towards the second Peoples Bank loan. Nor did EA repay the loan by its maturity date of December 12, 2015. It was only after the bank repeatedly demanded payment from Avenatti and threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan, approximately four months later.

16.    As set forth above, by the beginning of 2015, EA had already defaulted on multiple tax obligations, was subject to a more than $5 million claim asserted by Stoll, was failing to pay substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its operating costs. EA's inability to keep its "head above water" financially resulted in ever more desperate measures in 2015. In the first quarter of 2015, EA stopped paying payroll taxes to the IRS. Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll taxes – including approximately $1.3 million in trust fund taxes that EA had withheld from employees' checks but never sent to the IRS. EA also stopped paying taxes to the California Employment Development Department ("EDD") in the first quarter of 2015. At the same time, EA stopped paying multiple trade creditors (e.g., providers of professional services associated with EA's law practice).

17.    By September 13, 2015, EA was generally not paying its debts as they became due. Several of the creditors who were not being paid have held unsecured claims against EA continuously from at least September 13, 2015, through the Petition Date, including but not limited to JFL, Stoll, the IRS, the FTB, the EDD, and Baker, Keener & Nahra, LLP. These creditors hold claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502.

18.    The avoidable transfers that are alleged in this Complaint could not reasonably have been discovered by these creditors or EA's other creditors until less than one year before the Petition Date. The transfers at issue are payments of money between private parties, so there is no public record of those transfers from which a creditor could have learned of their existence. Instead, a creditor would have to acquire access to EA's bank statements and other financial records to learn of the transfers at issue and their fraudulent nature. Given Avenatti's willingness to falsify EA financial documents (as described above in connection with the Peoples Bank loans

1    and as described below in connection with the first EA bankruptcy case) and his extreme

2    resistance to producing accurate EA financial documents (as described below in connection with

3    the JFL arbitration and the receivership proceeding), the creditors holding unsecured claims had

4    no reasonable ability to obtain the accurate financial records of EA and other information relating

5    to its clients recoveries necessary to discover the transfers at issue and their fraudulent nature.

6        19.    In 2016, JFL filed an arbitration claim against EA for amounts owed under the

7    agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the

8    amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents

9    for the period from 2013 onwards.  JFL had been informally seeking those documents from

10   Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA

11   was ordered by the arbitration panel to produce financial records that EA produced any such

12   records to JFL.  Even then, EA refused to provide complete documentation (for example, although

13   redaction was not permitted, EA redacted numerous entries on the bank statements that it

14   provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the

15   arbitration panel to impose heavy sanctions on EA.

16       20.    In February 2017, the arbitration panel ordered Avenatti and two other individuals

17   knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The

18   order made clear that the panel would consider the imposition of severe sanctions (including

19   $10,000 sanctions against each individual personally) if Avenatti and the other individuals failed

20   to comply with the order.  Rather than appearing to give testimony regarding EA's finances,

21   Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle

22   District of Florida on March 1, 2017, to stay the arbitration proceedings.

23       21.    On March 10, 2017, Avenatti consented to the involuntary bankruptcy case against

24   EA and the case was to a Chapter 11 bankruptcy; the case was subsequently transferred to the

25   Honorable Catherine E. Bauer in the Central District of California on May 16, 2017 (*In re Eagan*

26   *Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy").

27       22.    EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed

28   approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  – without including any amounts owed to Stoll or JFL, or the millions of dollars that Avenatti had

2  stolen from EA clients.

3        23.     The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

4  settlement approved by the bankruptcy court.  That structured settlement required EA, following

5  the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL,

6  and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial

7  payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one

8  of its clients a settlement payment of approximately $8 million.  Rather than paying the entire

9  amount to the client, as it was obligated to do, Avenatti caused EA to transfer $2,828,423 of the

10  client funds to the law firm representing Avenatti in the 2017 Bankruptcy.  The law firm then

11  distributed these funds to (i) the IRS, as the initial payment towards its claim against EA, (ii) EA's

12  counsel in the 2017 Bankruptcy, and (iii) counsel for the Official Committee of Unsecured

13  Creditors in the 2017 Bankruptcy.

14        24.     EA did not make any of the other payments owed under the settlement, except for a

15  payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

16  bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

17  on May 22, 2018.

18        25.     JFL's judgment against EA was registered before the United States District Court

19  for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

20  A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

21        26.     As part of the district court proceeding, JFL moved for the appointment of an

22  independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

23  as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

24  entered a Receivership and Restraining Order against EA and Avenatti.

25        27.     Throughout the Receivership, Avenatti attempted to impede the Receiver in

26  recovering EA financial documents, first stating that he would turn over such documents, and then

27  later stating that he did not know where they were.  In or about April of 2019, it was discovered

28  that Avenatti had caused EA's computer servers containing EA's books and records and other

Landau Law LLP
ATTORNEYS AT LAW
Los Angeles, California

8

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  financial data to be moved to an off-site storage facility but refused to disclose this information to

2  the Receiver for months.  Eventually, when the Receiver located these servers they were turned

3  over to the U.S. Government in connection with criminal charges against Avenatti.  Once the

4  Receiver (and then later the Trustee) recovered the servers and forensic copies of the data

5  contained therein, it was not possible to access the data due to the significant cost in doing so, and

6  the fact that EA had only nominal available funds (the remainder had been "removed" by

7  Avenatti).

8      28.    On March 22, 2019, the United States Attorney for the Central District of

9  California filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v.*

10 *Avenatti*, United States District Court for the Central District of California, SACR19-00061-JVS

11 ("California Criminal Case").[2]  The complaint in the California Criminal Case charged Avenatti

12 with wire fraud for wrongfully diverting to his personal use millions of dollars belonging to EA's

13 clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS,

14 including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks,

15 causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank

16 fraud and other crimes.  On April 4, 2019, the Grand Jury in the California Criminal Case indicted

17 Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated

18 identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former

19 clients.

20     29.    On September 13, 2019 (the "Petition Date"), Brian Weiss, as the Receiver for EA,

21 filed a voluntary petition for relief for EA under Chapter 7 of Title 11 initiating this bankruptcy

22 case.

23 ***Transfers made by EA to Osborn Machler***

24     30.    From August 18, 2015, to December 11, 2016, Avenatti caused EA to make

25

26 [2]  This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases
pending against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found

27 Avenatti guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted
extortion (18 U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*,

28 No. 1:19-CR-373-PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over
$20 million.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

$2,820,754.76 in transfers to defendant Osborn Machler for Avenatti's personal benefit (the "EA Transfers"). These transfers were identified in the books and records of EA with no stated purpose, and in fact did not benefit EA or its creditors. A spreadsheet cataloging the EA Transfers is attached as **Exhibit 1**.

### FIRST CLAIM FOR RELIEF

**(Against Defendant, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

**Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.09(a), (c))**

31.     The Trustee incorporates by reference and realleges paragraphs 1-30 of this Complaint.

32.     During the seven-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendant, as listed in **Exhibit 1**. Those transfers are referred to herein as the "7-Year Transfers."

33.     The 7-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors. Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations. Among other things, EA (i) had not filed federal tax returns since 2013; (ii) had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB, and the EDD, including more than a million dollars in trust fund taxes EA collected from its

1   employees but failed to remit to the IRS.  During the seven-year period, EA also defaulted on

2   numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

3   withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

4   small portion of its accrued debts.

5          34.    Defendant did not take any of the 7-Year Transfers in good faith and/or EA did not

6   receive reasonably equivalent value in exchange for the 7-Year Transfers.  Specifically, defendant

7   (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that

8   the transfers were of property or money belonging to EA because the transfers were identified as

9   emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it

10  that strongly suggested that the value, if any, that defendant provided in exchange for those

11  payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if

12  any, conferred no or less than reasonably equivalent value upon EA or its creditors.

13         35.    At all relevant times, the 7-Year Transfers were voidable under California Civil

14  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

15  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

16  without limitation, Stoll, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had

17  wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

18         36.     For the reasons described above, the voidable transfers alleged in this claim for

19  relief could not reasonably have been discovered by these creditors sooner than one year prior to

20  the Petition Date.

21                          **SECOND CLAIM FOR RELIEF**

22       **(Against Defendant, To Avoid 4-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

23                  **Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07)**

24         37.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this

25  Complaint.

26         38.    During the four-year period immediately preceding the Petition Date, Avenatti

27  directed and caused EA to make transfers of its property, including money, to or for the benefit of

28

1  defendant, as listed in **Exhibit 1** (within the four calendar years prior to the Petition Date).  Those

2  transfers are referred to as the "4-Year Transfers."

3      39.    The 4-Year Transfers were made by EA with the actual intent to hinder, delay, or

4  defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit

5  of the defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of

6  EA, even though Avenatti knew that EA was subject to substantial creditor claims and the

7  transfers reduced the amount of funds available to pay these creditors and knew or consciously or

8  recklessly chose to ignore facts known to him that strongly suggested that EA was in default on

9  multiple obligations.  Among other things, EA (i) had not filed federal tax returns since 2013; (ii)

10  had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not

11  paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its

12  employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the

13  more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was

14  not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted

15  for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the

16  independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and

17  (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB,

18  and the EDD, including more than a million dollars in trust fund taxes EA collected from its

19  employees but failed to remit to the IRS.  During the four-year period, EA also defaulted on

20  numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

21  withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

22  small portion of its accrued debts.

23      40.    Defendant did not take any of the 4-Year Transfers in good faith and/or EA did not

24  receive reasonably equivalent value in exchange for the 4-Year Transfers.  Specifically, defendant (i)

25  knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the

26  transfers were of property or money belonging to EA because the transfers were identified as

27  emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it

28  that strongly suggested that the value, if any, that defendant provided in exchange for those

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if

2  any, conferred no or less than reasonably equivalent value upon EA or its creditors.

3      41.    At all relevant times, the 4-Year Transfers were voidable under California Civil

4  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

5  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

6  without limitation, Stoll the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had

7  wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

8  **THIRD CLAIM FOR RELIEF**

9  **(Against Defendant, To Avoid 4-Year Transfers Made While EA Was Insolvent, under**

10  **11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.05 and 3439.07)**

11      42.    The Trustee incorporates by reference and realleges paragraphs 1-30 and 38 of this

12  Complaint.

13      43.    At all times between September 13, 2015, and the Petition Date, EA was insolvent

14  as it was not paying its debts as they became due in the ordinary course of business.

15      44.    EA received less than reasonably equivalent value in exchange for the 4-Year

16  Transfers, because any goods or services provided in exchange for the 4-Year Transfers solely or

17  primarily benefited Avenatti or his other entities rather than EA.

18      45.    At all relevant times, the 4-Year Transfers were voidable under California Civil

19  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

20  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

21  without limitation, Stoll, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had

22  wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

23  **FOURTH CLAM FOR RELIEF**

24  **(Against Defendant, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

25  **Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07)**

26      46.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this

27  Complaint.

28      47.    During the eight-year period immediately preceding the Petition Date, Avenatti

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   directed and caused EA to make transfers of its property, including money, to or for the benefit of

2   defendant, as listed in **Exhibit 1**.  Those transfers are referred to as the "8-Year Transfers."

3       48.     The 8-Year Transfers were made by EA with the actual intent to hinder, delay, or

4   defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit

5   of defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA,

6   even though Avenatti knew that EA was subject to substantial creditor claims and the transfers

7   reduced the amount of funds available to pay these creditors and knew or consciously or recklessly

8   chose to ignore facts known to him that strongly suggested that EA was in default on multiple

9   obligations.  Among other things, EA (i) had not filed federal tax returns since 2013; (ii) had not

10  paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not paying

11  payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its

12  employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the

13  more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was

14  not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted

15  for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the

16  independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and

17  (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB,

18  and the EDD, including more than a million dollars in trust fund taxes EA collected from its

19  employees but failed to remit to the IRS.  During the eight-year period, EA also defaulted on

20  numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

21  withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

22  small portion of its accrued debts.

23      49.     Defendant did not take any of the 8-Year Transfers in good faith and/or EA did not

24  receive reasonably equivalent value in exchange for the 8-Year Transfers.  Specifically, defendant

25  (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that

26  the transfers were of property or money belonging to EA because the transfers were identified as

27  emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it

28  that strongly suggested that the value, if any, that defendant provided in exchange for those

14

1   payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if

2   any, conferred no or less than reasonably equivalent value upon EA or its creditors.

3       50.     At all relevant times, the 8-Year Transfers were voidable under California Civil

4   Code §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against

5   EA that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any

6   funds the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim.

7   Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil

8   Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable

9   to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore,

10  under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and

11  recover the 8-Year Transfers on behalf of the IRS and other creditors of the Estate.

## FIFTH CLAIM FOR RELIEF

### (Against Defendant, To Recover and Preserve Avoided Transfers
### under 11 U.S.C. § 550(a)(1), (a)(2), and § 551)

15      51.     The Trustee incorporates by reference and realleges paragraphs 1-30, 32-36, 38-41,

16  43-45 and 47-50 of this Complaint.

17      52.     To the extent that defendant is an initial transferee of the transfers referred to in this

18  Complaint and such transfers are avoided, defendant is strictly liable for their return and the

19  Trustee is entitled to recover judgments in such amounts.

20      53.     To the extent that defendant is not the initial transferee of the transfers referred to

21  in this Complaint, defendant (i) is a subsequent transferee of the initial transferee of such

22  payments, and (ii) did not take such transfers for value and/or in good faith and/or without

23  knowledge of the voidability of such transfers.  Each of the transfers referred to in this claim for

24  relief is recoverable from defendant as a subsequent transferee of the transfers that Avenatti

25  directed and caused EA to make to the initial transferees.

26      54.     Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

27  benefit of the Estate.

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against defendant as follows:

1.     On the First Claim for Relief, for a judgment against defendant that avoids the 7-Year Transfers;

2.     On the Second Claim for Relief, for a judgment against defendant that avoids the 4-Year Transfers;

3.     On the Third Claim for Relief, for a judgment against defendant that avoids the 4-Year Transfers;

4.     On the Fourth Claim for Relief, for a judgment against defendant that avoids the 8-Year Transfers;

5.     On the Fifth Claim for Relief, for a judgment against defendant that awards damages in an amount equal to the value of the transfers avoided under the First through Fourth Claims for Relief and/or that preserves the avoided transfers for the benefit of the Estate;

6.     For pre- and post-judgment interest at the applicable legal rate on all damages and sums awarded to the Trustee; and

7.   For such other relief as the Court deems just and proper.

Dated: September 8, 2021                         LANDAU LAW LLP

                                                 By ___/s/ John P. Reitman_____
                                                      John P. Reitman
                                                 Special Litigation Attorneys for
                                                 Plaintiff Richard A. Marshack,
                                                 Chapter 7 Trustee for Eagan Avenatti, LLP

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1

**Eagan Avenatti LLP**
**Transfers to Osborn Machler**

| Date of Transfer | Amount of EA Transfer to Osborn Machler | EA Account |
|---|---|---|
| 8/18/2015 | $2,499,152.46 | EA CBT 8451 |
| 10/31/2017 | $301,602.30 | EA CBT 3714 |
| 12/11/2017 | $20,000.00 | EA CBT 3714 |

**Total**                    $2,820,754.76

EXHIBIT 1
1

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP | Osborn Machler PLLC, a Washington professional limited liability company, |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) John P. Reitman, Monica Rieder, Landau Law LLP,2338 Manning Ave., Los Angeles, CA 90064 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☑ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of voidable transfers; 11 U.S.C. 544, 550, 551; Cal. Civ. Code 3439.04, 3439.05, 3439.07, 3439.09

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑3 13-Recovery of money/property - §548 fraudulent transfer
☑1 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☑2 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  2,820,754.76 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Eagan Avenatti, LLP | BANKRUPTCY CASE NO.<br>8:19-bk-13560-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ John P. Reitman | | |
| DATE<br><br>9/8/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John P. Reitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>JOHN P. REITMAN (State Bar No. 80579)<br>jreitman@landaufirm.com<br>MONICA RIEDER (State Bar No. 263250)<br>mrieder@landaufirm.com<br>LANDAU LAW LLP<br>2338 Manning Avenue<br>Los Angeles, California 90064<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br><br><br>*Attorney for Plaintiff*  Richard A. Marshack, Ch. 7 Trustee | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>EAGAN AVENATTI, LLP,<br><br><br><br><br>Debtor(s). | CASE NO.: 8:19-bk-13560-SC<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br><br><br>Plaintiff(s)<br><br>Versus<br><br>OSBORN MACHLER PLLC, a Washington professional limited liability company,<br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING**<br>**[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** _____ | **Address:**<br>☐ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☒ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                                    Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____     _____
*Date*                                *Printed Name*                                   *Signature*

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.