# FOR PUBLICATION

**FILED & ENTERED**

MAR 03 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Eagan Avenatti, LLP<br><br><br><br><br><br>Debtor. | Case No.: 8:19-bk-13560-SC<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION DENYING CHAPTER 7 TRUSTEE'S EMERGENCY MOTION FOR ORDER AUTHORIZING TRUSTEE TO USE PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 363 [DK. 353]**<br><br><u>Hearing held</u><br>Date:    January 26, 2022<br>Time:    11:00 AM<br>Courtroom:  5C |

Chapter 7 Trustee, Richard A. Marshack ("Mr. Marshack" or "Trustee"), filed an emergency motion for an order seeking authorization to use property of the Estate pursuant to 11 U.S.C. § 363 on January 24, 2022 [Dk. 353] ("Motion"). This Court held a hearing on the Motion on January 26, 2022 ("January 26 Hearing"). Appearances are as noted in the record.

Mr. Marshack is the recipient of two subpoenas from the United States District Court for the Southern District of New York (SDNY) arising in the criminal proceeding

of *United States v. Michael Avenatti*, Case No. 1:19-cr-00374-JMF, each commanding him to appear *"and not depart the Court without leave thereof, or of the United States Attorney"* (as to the subpoena delivered by the United States Attorney for the Southern District of New York) and *"remain at the court until the judge or a court officer allows you to leave"* (with respect to the subpoena delivered by Mr. Avenatti's counsels, the Federal Defenders of New York, Inc.). Copies of these subpoenas appear as Exhibits 1 and 3 of the Motion, together with declarations regarding waivers of attorney client privilege of Stephanie Clifford, aka Stormy Daniels, and Gary Franklin which appear at Exhibits 4 and 5 of the Motion.

Debtor, Eagan Avenatti, LLP, is a law firm presently in Chapter 7 before this Court. Mr. Marshack, in his capacity as Chapter 7 Trustee of Debtor's Estate (the "Trustee"), has in his possession at least four terabytes of Debtor's financial and other data. In connection with the aforementioned SDNY criminal matter, two subpoenas were issued and served upon the Trustee, both demanding his appearance at trial and the production of certain data held in the possession of the bankruptcy Estate.

On an emergency basis, the Trustee moved for entry of an order from this Court authorizing the Trustee "to use property of the Estate pursuant to 11 U.S.C. § 363, [to] authoriz[e] Force 10 to receive payment from the SDNY USA Office for the time and expense related to the search for responsive documents, and to produce all responsive documents to the Subpoenas." Motion, Dk. 353, Pg. 2:17-20.

Section 363(b) requires notice and hearing in order to grant the Trustee approval to use Estate property,[1] but it does not authorize another forum to order a trustee's use of Estate property.[2] Because there is insufficient evidence to find that the Trustee's request is in the best interests of the Estate, particularly where the subpoenas were

---

[1] During the January 26 Hearing this Court specifically requested that the Trustee identify the "property of the Estate" sought to be used outside of the ordinary course of business. The Trustee identified the four terabytes of data belonging to Debtor and presently in the custody of the Chapter 7 Trustee.

[2] This will be discussed below, but it certainly gives one pause to consider whether a federal district court, without withdrawing the reference of this case from this Court, could ever require property of the estate (i.e., the data belonging to the bankruptcy Estate and controlled by the Trustee) to be used in any way outside the ordinary course of business of Debtor.

issued without leave of this Court as required under *Barton v. Barbour*, 104 U.S. 126, 136-37 (1881) and its progeny (collectively, the "*Barton* Doctrine"), the Motion is DENIED.

## I.    Factual Background

On September 13, 2019, Debtor filed a Chapter 7 bankruptcy petition. Mr. Marshack was appointed trustee of the Estate. On August 27, 2020, this Court granted the Trustee's application to employ Force 10 Partners, LLC as the Estate's electronic document manager. Utilizing the services of Force 10 Partners, the Trustee is in possession and control of over four terabytes[3] of financial and other data of Debtor.

The Motion indicates the following facts: On March 22, 2019, the United States Attorney for the Central District of California filed a criminal complaint against Mr. Avenatti (*United States v. Avenatti*, Case No. SACR19-00061-JVS). A mistrial was declared on August 24, 2021, and a current trial date has been re-set for May 10, 2022.

Separately, Mr. Avenatti faced criminal action in the SDNY (*United States v. Michael Avenatti*, Case No. 1:19-cr-00373-PGG) (the "Nike Case") in which a verdict was entered on or about July 15, 2021.

Additionally, the subject of this particular motion arises from a then-pending second criminal case which was brought against Mr. Avenatti in SDNY (*United States v. Michael Avenatti*, Case No. 1:19-cr-00374-JMF). Trial in that case began on January 24, 2022, and concluded with a verdict on February 4, 2022. The jury found Mr. Avenatti guilty of wire fraud and aggravated identity theft. Jury Verdict Form, *United States v. Michael Avenatti*, Case No. 1:19-cr-00374-JMF, Order entered February 4, 2022, Dk. 371, Exh. 8.

---

[3] According to Caltech's Dr. Julian James Bunn, PhD, who is the Senior Scientist, Center for Advanced Computing Research (CACR), Caltech, Pasadena, 1999-current, a terabyte is equal to 1,000,000,000,000 bytes. Putting it into perspective, Dr. Bunn describes the amount as such: one terabyte equals an automated tape robot or all the X-ray films in a large technological hospital or 50,000 trees made into paper and printed, two terabytes equal an academic research library or a cabinet full of Exabyte tapes, and ten terabytes equal the printed collection of the United States Library of Congress. *See* Status Presentation, Globally Interconnected Object Databases (GOID) Project (September 1997), http://pcbunn.cithep.caltech.edu/presentations/giod_status_sep97/sld013.htm.

With respect to the second SDNY case, the Trustee received a subpoena from United States Attorneys for the SDNY on December 20, 2021. The subpoena commanded the production of "[a]ny data contained in the Quickbooks [sic] or TABS databases related to [Mr. Avenatti's client] Stephanie Clifford, a/k/a 'Stormy Daniels.'" Motion, Dk. 353, Exh. 1. The data was requested to be produced on or before January 24, 2022. *Id.*

On January 7, 2022, Federal Defenders of New York, Inc., representing Mr. Avenatti in the second SDNY criminal case, caused a subpoena to be issued upon the Trustee requesting the production of items in advance of the trial to be held on January 24, 2022. Motion, Dk. 353, Exh. 3. The requested items included "any and all communications" among Mr. Avenatti, Stephanie Clifford ("Ms. Clifford"), and Eagan Avenatti paralegal, Judy Regnier, related to Mr. Avenatti's representation of Ms. Clifford. *Id.* The subpoena also requested all documents and financial records related to such representation.

On January 24, 2022, the Trustee filed an emergency motion for entry of an order authorizing the Trustee to use property of the Estate to comply with the two subpoenas.

**II. Discussion**

    **a. The Trustee's Motion Did Not Request, Yet Necessitates, a *Barton* Determination**

Before the Court is a Motion for an order authorizing the Trustee to use property of the Estate for the purpose of responding to two subpoenas from the District Court of the Southern District of New York seeking the Trustee's appearance, as well as specific information and physical data, either in digital or hard form. The Motion does not ask for a determination of the validity of the subpoenas. However, in considering the Motion, the Court must address issues that pertain to the Motion's essence; namely, those principles that make up the *Barton* Doctrine.

//

### b. The *Barton* Doctrine Was Developed to Protect the Integrity of Bankruptcy Proceedings and Eliminate Inefficiencies

Once a bankruptcy case is filed, "[t]he district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate." *In re Crown Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005) (quoting *Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998)).

In *Barton v. Barbour*, 104 U.S. at 136-37, the Supreme Court instituted an approach, further developed by circuit courts, for protecting the jurisdictional integrity of the bankruptcy court in light of proceedings in other fora (collectively, the "*Barton* Doctrine").

The *Barton* Doctrine requires "that a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Crown Vantage, Inc.*, 421 F.3d at 970. Without such leave, the other forum lacks subject matter jurisdiction over the suit. *Barton,* 104 U.S. at 136-37. A district court other than the appointing bankruptcy court is considered "another forum" for purposes of a *Barton* analysis. *In re Kashani*, 190 B.R. 875, 884 (9th Cir. B.A.P. 1995).

Specifically stated in *Crown Vantage*, "[t]he requirement of uniform application of bankruptcy law dictates that *all legal proceedings* that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court." 421 F.3d at 971 (emphasis added).

This long-standing doctrine has since been expressly expanded to include other types of court-appointed parties, such as bankruptcy trustees and counsel for trustees. *See Id*. (granting liquidating trustee *Barton* protection); *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (citing *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006)) (protecting trustee's attorneys).

In *In re Linton*, the Court of Appeals for the Seventh Circuit explained the rationale behind the *Barton* Doctrine as it relates to trustees:

> If [the Trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded ... Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive ... Furthermore, requiring that leave to sue be sought enabled bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

136 F. 3d 544, 545 (7th Cir. 1998).

By retaining exclusive control of the estate, the appointing court could better preserve assets and equitably distribute those assets to creditors. *See Barton*, 104 U.S. at 134.

### c. The *Barton* Doctrine Includes Responding to Subpoenas

The *Barton* Doctrine applies to subpoenas issued by courts that are served upon trustees and other officers and agents owing their positions to bankruptcy court orders. *See In re Circuit City Stores, Inc.*, 557 B.R. 443 (Bankr. E.D. Va. 2016) (applying the *Barton* Doctrine to subpoena where compliance directly impacted administration of the bankruptcy estate through costs of compliance). While the Ninth Circuit Court of Appeals has yet to address this precise issue, the Ninth Circuit Bankruptcy Appellate Panel (BAP) decision, *In re Media Group, Inc.*, 2006 WL 6810963 (9th Cir. B.A.P. 2006), declined to extend the application of the *Barton* Doctrine to a subpoena issued on a trustee's lawyer. Strictly adhering to the decision of *Barton* itself, which protected trust receivers against lawsuits (but not addressing subpoenas), the Panel reasoned that "expansion of the [*Barton*] [D]octrine is not supported by a plain reading of either *Barton* or *Crown Vantage*; both are limited to the commencement of legal action against a court appointee." *Id.* at *6.

*Media Group* does not control in this case for several reasons. First, it is a BAP

opinion and is therefore not binding precedent. *See In re Grant*, 423 B.R. 320 (Bankr. S.D. Cal. 2010) (observing that the Judicial Council of the Ninth Circuit has not amended the BAP authorization order to provide that BAP decisions are binding on the bankruptcy courts within the circuit). While the persuasiveness of BAP decisions is quite helpful on many occasions, sometimes they miss the mark.

Second, the BAP in *Media Group* did not correctly apply the rule of law developed either in the Supreme Court's 1881 decision in *Barton* or the Ninth Circuit's 2005 *Crown Vantage* decision. The BAP believed that the underlying bankruptcy court's application of the *Barton* Doctrine to a court-issued subpoena was an *expansion* of the doctrine.[4] It was not; it was a proper application of the *Barton* and *Crown Vantage* decisions *based on the facts* in the *Media Group* case. In deciding *Media Group*, the BAP engaged in a too narrow, textual analysis of the Supreme Court's decision in *Barton* and took an approach which, respectfully, even narrowed the Ninth Circuit's *Crown Vantage* decision.

*Crown Vantage* references *"all legal proceedings,"* and under any common-sense interpretation, a court order to a bankruptcy trustee[5] commanding her or him to appear in a court three thousand miles away and undertaking perhaps many thousands of dollars of bankruptcy estate dollars during the middle of bankruptcy administrative proceedings—to even challenge the subpoena's efficacy or otherwise face contempt from another court—involves a *legal proceeding*. 421 F.3d at 971 (emphasis added). Further, as questioned in footnote 2 above, while a federal or state court cannot violate the

---

[4] The Honorable Leslie Tchaikovsky of the United States Bankruptcy Court for the Northern District of California applied the *Barton* Doctrine to the particular facts in the underlying case, as noted in the preface to the reported *Media Group, Inc.* decision. As an interesting aside, her overturned decision on application of the *Barton* Doctrine was clearly a matter of mixed law and fact, with facts certainly more prevalent, and so the BAP should have afforded her decision the review of clear error rather than de novo review. The Supreme Court, in 2018, has now clarified the standard of review where there is a mixed question of law and fact. *U.S. Bank N.A. v. Vill. at Lakeridge, LLC,* 138 S. Ct. 960, 967 (2018). The Supreme Court explained that instead of reviewing all mixed questions de novo, courts need to weigh whether the question is more factual or legal, and if more factual, utilize a clear error standard of review.
[5] Not to mention other professionals whose employment has been approved by a bankruptcy court, including counsels for Debtors-in-Possession, Creditor Committees, Financial Advisors, Trusts Agents and Liquidators in active and on-going cases under administration.

automatic stay, the attempt of controlling assets of a bankruptcy estate raises serious issues regarding the *in rem* jurisdiction of this Court over property of the bankruptcy Estate.[6]

The Ninth Circuit has not yet directly addressed subpoenas to the *Barton* Doctrine, but this Court is persuaded that the application of the *Barton* Doctrine respecting subpoenas, as so thoughtfully discussed in the more recent (2016) *Circuit City* case, is appropriate.

### d. The Fulfillment of *Barton's* Purpose Requires Application to Subpoenas

Applying the *Barton* Doctrine where a trustee is subpoenaed follows the same principles as where the trustee becomes a party to a suit or adversary proceeding in a different forum. Along with protecting the *in rem* jurisdiction of the bankruptcy court over property of the estate, the purposes of the *Barton* Doctrine include reduction of needless costs and inefficiencies in the bankruptcy process and to allow the bankruptcy courts unimpeded supervision of the administration of estates.

That being said, and in the vernacular, what value is a subpoena if it can't be enforced? Can anyone seriously differentiate enforcement of a subpoena against a bankruptcy trustee with the "legal proceeding" described in *Crown Vantage*? A court issued subpoena targeting a bankruptcy professional or property within the bankruptcy estate without requiring leave of the bankruptcy court at the outset, is simply a waste of time and effort. For several practical reasons, a trustee cannot comply without leave of the bankruptcy court to expend estate funds to comply with a subpoena or to turn over

---

[6] The court issues a subpoena but prosecution or defense counsels, as officers of the court, fill out and serve the subpoena on behalf of the court. At that point, the property of the estate (the data and especially the funds required to service the collection of the data) is being controlled by those preparing the subpoena and receiving property of the estate. If, for instance, a restitution order is obtained in a criminal matter, might data that is property of the estate and now in the hands of public or private counsels be monetized in some fashion, i.e., listserves, customer lists, survey data, demographic data, financial analyses, etc.? What if the subpoena demand is for any bearer bond coupons in the hands of the bankruptcy trustee? The application of the *Barton* Doctrine resolves much of these sticky matters by simply having the bankruptcy court serve as a gatekeeper with respect to *all legal proceedings* outside of the bankruptcy court's wheelhouse. Like many bankruptcy court-solutions, it provides a single forum to address a multitude of issues at one time without diminishing the rights of all parties.

estate property.[7]

The Trustee's motion is the perfect example of this situation. Were the subpoena issuer to attempt to pursue a motion to compel or contempt charge against the Trustee, even under *Media Group*, the subpoena-issuing court would have no authority until the issuer came first to the Bankruptcy Court. *See, e.g.*, *In re Crown Vantage, Inc.*, 421 F.3d at 963. As all avenues to the desired discovery necessitate the Bankruptcy Court's leave, it is needlessly expensive and time-consuming not to require the approval of the Bankruptcy Court as a condition for the validity of the subpoena in the first instance.

The Court finds the *Circuit City* case particularly relevant and persuasive. 557 B.R. 448.[8] In *Circuit City*, the Bankruptcy Court was faced with a subpoena requesting the trustee (of a post-confirmation trust) to attend and give deposition testimony in connection with a foreign proceeding under threat of punishment for contempt of court. *Id*. at 448. Complying with the subpoena required the trustee to hire and educate professional consultants at the expense of the bankruptcy assets. *Id*. There was no *Barton* Doctrine motion filed by the issuer of the subpoena. *Id*. The Bankruptcy Court in the Eastern District of Virginia determined that compliance with the subpoena would require an inappropriate expenditure of trust resources[9] that would interfere with the plan's administration. *Id*. 449. As such, in order to impose such a burden on the trustee, the issuer of subpoena was required under the *Barton* Doctrine to obtain leave before issuance. *Id*. at 451. The court reasoned that, "the purpose of the *Barton* [D]octrine is to prevent trustees from being subject to legal proceedings that interfere with their ability to administer the estate." *Id*. at 449.

Here, as was the case in *Circuit City*, the issuers of the subpoenas failed to ask for *Barton* approval before issuing a subpoena that threatened contempt action. The Trustee's motion sought permission to use property of the Estate without first allowing

---

[7] Consider, as an example, the reference in footnote 6 regarding the subpoena for delivery of valuable bearer bond coupons in the trustee's possession.
[8] The Honorable Kevin R. Huennekens of the Eastern District of Virginia.
[9] The trust, controlled by the post-confirmation trust trustee, had been created by the confirmed Chapter 11 plan.

this Court to engage in a *Barton* analysis to determine whether the use of the Estate property, or an imposition or burden on the professional. This was improper. The propriety of whether the Trustee may burden the Estate with the costs of complying with the subpoenas must be evaluated and authorized by this Court to decide whether it would place an undue burden on the administration of the Estate. The proponent of the subpoenas are the proper parties to seek permission to submit these subpoenas.[10]

This issue has already taken up considerable time and legal fees with appearances for the Estate. This is precisely the harm that the *Barton* Doctrine was created to prevent. In the absence of this Court's prior approval, the subpoenas commanding the Trustee to use Estate resources usurp the power and authority of this Court.

The issuers from the SDNY should have first sought leave of this Court prior to issuing subpoenas to the Trustee.[11] It would not have been difficult for the issuers to come before this Court to explain why retrieval of the data would not interfere with the administration of the Estate. Accordingly, this Court cannot grant the Trustee's motion to use Estate property without first engaging in the proper *Barton* Doctrine procedures.

### III. Conclusion

The Trustee's motion only asks this Court for an order to use Estate property; the Motion does not seek a determination under the *Barton* Doctrine or give proper

---

[10] This Court has one more concern regarding the importance of the *Barton* Doctrine as it applies to subpoenas to bankruptcy trustees and makes this observation in that regard. Private bankruptcy trustees are appointed by the United States Trustee. The United States Trustee Program is the component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq. Private bankruptcy trustees serve at the pleasure of the regional U.S. Trustee. Regional U.S. Trustees serve at the pleasure of the Department of Justice. This Court can appreciate the enormous pressure private trustees, and even regional U.S. Trustees, are under when invited into private, undisclosed, meetings with Assistant United States Attorneys and demands are made upon them to "cooperate" unofficially with civil and criminal cases unaffiliated with their bankruptcy proceeding duties. This cooperation sometimes results in the misuse of estate funds that are under the jurisdiction of the bankruptcy court unless the reference is withdrawn to a district court. This includes, in this matter's particular instance, legal fees and costs incurred by the Trustee having to file at least three motions on *ex parte* bases as a "professional courtesy" to those who might control his professional future. This is simply wrong and abusive as to the professional, the Estate, and this Court. Finally, some might assert that it might be disruptive of due process rights of civil and criminal parties who are without knowledge of these activities and are provided no opportunity to weigh in on the informal activities affecting their own interests within the bankruptcy case itself.
[11] Ironically, it was the Second Circuit that originally extended the *Barton* Doctrine to bankruptcy trustees.

consideration to the potential effects on administration of this case. These considerations should be raised in the first instance by the issuers of the proposed subpoenas. To the Trustee's credit, the *Barton* Doctrine was noted in his Motion and during the hearing the doctrine was supported by the Trustee as applicable to subpoenas. Having considered all the pleadings, arguments of counsel and for the reasons stated on the record and explained above, this Court finds cause to DENY the Motion with prejudice.

IT IS SO ORDERED.

Date: March 3, 2022

Scott C. Clarkson
United States Bankruptcy Judge