D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 7 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor. | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>MOTION TO: (1) APPROVE TRUSTEE'S COMPROMISE WITH THE X-LAW GROUP, P.C., FILIPPO MARCHINO, ELBA HERNANDEZ, AND THE ESTATE OF ANDRES RAMIREZ PURSUANT TO FED. R. BANKR. P. 9019; (2) AUTHORIZE RELEASE OF FUNDS TO TRUSTEE FROM GAMMILL LAW GROUP; AND (3) ALLOW AND APPROVE PAYMENT OF CONTINGENCY FEE TO KELLNER LAW GROUP, P.C. AND MARSHACK HAYS WOOD LLP; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK, D. EDWARD HAYS, RICHARD L. KELLNER, AND JASON FRANK IN SUPPORT<br><br>Date: December 15, 2026<br>Time: 11:00 a.m.<br>Courtroom: 5C<br>Location: 411 West Fourth Street, Santa Ana, CA 92701-4593 |

## TABLE OF CONTENTS


1. Summary of Argument ........ 2

2. Statement of Facts ........ 3

   A. The Bankruptcy Case and the Action ........ 3

   B. Mediation and the Mediator's Binding Determination of Settlement Valuation ........ 4

   C. Summary of Key Settlement Terms ........ 5

   3.1 Settlement Payment. The Settlement Amount to be paid to TRUSTEE is One Million, Seven Hundred Fifty Thousand United States Dollars ($1,750,000) ("Settlement Payment"). ¶ 4(c) of the Procedures Agreement provides: ........ 5

   "The Settlement shall provide for the payment of the Settlement Amount by DEFENDANTS to TRUSTEE's bankruptcy estate account: the entire settlement amount shall be paid within 90 days after entry of the Order by the United States Bankruptcy Court for the Central District of California approving the compromise." ........ 5

   3.1.1 Release of Gammill Law Funds. Five Hundred Thousand United States Dollars ($500,000) were previously deposited by X-Law into the trust account of GAMMILL LAW and governed by a separate agreement. Defendants agree that GAMMILL LAW shall promptly remit, no later than 10 calendar days after entry of the 9019 Order, the entire sum of $500,000 to the TRUSTEE. Such funds shall be credited towards the Settlement Payment upon receipt by the TRUSTEE ........ 5

   3.1.2 Balance of the Settlement Payment. The balance of the Settlement Payment (the $1,750,000 settlement minus the $500,000 payment from GAMMILL LAW trust account or $1,250,000.00) must be timely paid to avoid entry of the Stipulated Judgment referenced in ¶ 3.2, below. ........ 5

   3.2 Stipulated Judgment. In connection with the Procedures Agreement, a

separate stipulated judgment was provided as a condition of enforcement. If DEFENDANTS fail to timely pay the Settlement Payment, the TRUSTEE may immediately file the stipulation for entry of judgment with the Court along with a sworn statement regarding the default, and seek entry of the stipulated judgment by the Court, including the imposition of additional attorneys' fees and interest. 5

3.3 The Stipulation for Entry of Judgment provides that the amount of the blank in the foregoing quoted provision from the Judgment will be completed by the Bankruptcy Court upon proof of the Settlement Value as determined by the Mediator less payments received, if any, prior to entry of the Judgment. 5

3.4 Dismissal of Action. Conditioned upon timely receipt of the full Settlement AMOUNT, the TRUSTEE shall prepare and DEFENDANTS shall execute a stipulation for dismissal of the ACTION, with prejudice. Such stipulation for dismissal shall be transmitted to DEFENDANTS within two business days after the TRUSTEE's receipt of timely payment. Upon receipt of such fully executed stipulation, the TRUSTEE shall promptly file it with the Court. 5

3. Legal Argument 7

A. The Agreement Should Be Approved Under Rule 9019 7

i. Probability of Success 8

ii. Difficulties in Collection 10

iii. Complexity, Expense, Inconvenience, and Delay 10

iv. Paramount Interest of Creditors 11

B. The Court Should Authorize and Direct the Release of the Gammill Law Funds 11

C. The Court Should Approve the Distribution of the Settlement Proceeds Pursuant to the Terms of the September 19, 2025, Stipulation and Order (Dk. No. 571). 11

D. JFL's Agreement to the Subject Request. 15

4. Conclusion ........ 16
Declaration of Richard A. Marshack ........ 18
Declaration Of D. Edward Hays ........ 21
Declaration Of Richard L. Kellner ........ 27
Declaration of Jason M. Frank ........ 33

# TABLE OF AUTHORITIES

**Cases**

*ATKN Co. v. Guy F. Atkinson Co. of Cal. (In re Guy F. Atkinson Co).*,
242 B.R. 497, 502 (B.A.P. 9th Cir. 1999) ........ 7

*Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*,
292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) ........ 7

*Martin v. Kane (In re A & C Properties)*,
784 F.2d 1377, 1381 (9th Cir. 1986) ........ 7

*Namba v. Jafroodi (In re Jafroodi)*,
675 B.R. 414 (Bankr. C.D. Cal. 2025) ........ 10

*Schmitt v. Ulrich (In re Schmitt)*,
215 B.R. 417, 424 (B.A.P. 9th Cir. 1997) ........ 7

*United States v. Edwards*,
595 F.3d 1004, 1012 (9th Cir. 2010) ........ 7

**Statutes**

11 US.C. § 327 ........ 3

**Rules**

Fed. R. Bankr. P. 9019(a) ........ 7

Fed. R. Bankr. Proc. 9019(c) ........ 7

Federal Rule of Bankruptcy Procedure 9019 ........ 16

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of Eagan Avenatti, LLP ("Debtor"), has entered a proposed settlement agreement ("Agreement") with Elba Hernandez ("HERNANDEZ"), The Estate of Andres Ramirez ("RAMIREZ"), The X-Law Group, P.C. ("X-LAW"), and Filippo Marchino ("MARCHINO" and, collectively with HERNANDEZ, RAMIREZ, and X-LAW, the "DEFENDANTS"). The TRUSTEE and DEFENDANTS shall be collectively referred to as the "Parties" and singularly as a "Party." The Agreement fully resolves the Estate's claims against DEFENDANTS with regard to Adversary Case No. 8:20-ap-01086-SC ("Action"). By this motion, the Trustee requests entry of an order: (1) approving the Agreement; (2) authorizing Gammill Law Group ("Gammill Law") to release to the Trustee the $500,000 deposit held in its trust account; and (3) authorizing the distribution of settlement proceeds pursuant to the terms approved by this Court on September 19, 2025 (Dk. No. 571 and Dk. No. 569), including the court-approved 60% contingency fee to Trustee's counsel, Kellner Law Group, P.C. ("Kellner Law") and Marshack Hays Wood LLP ("MHW").

Under the Agreement, Defendants will pay the Estate $1,750,000 ("Settlement Payment"), consisting of $500,000 to be remitted from the Gammill Law trust account no later than 10 calendar days after entry of an order approving the Agreement, and the $1,250,000 balance to be paid within 90 days after entry of an Order approving the Agreement. If Defendants fail to timely pay, the Trustee may file a previously executed stipulation for entry of a judgment jointly and severally against all Defendants. A true and correct copy of the executed Agreement is attached as Exhibit "1" to the Declaration of Richard A. Marshack ("Marshack Decl.").

The Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, Rules 2016-1 and 9013-1 of the Local Bankruptcy Rules, the attached Memorandum of Points and Authorities, the Marshack Decl., the Declaration of D. Edward Hays ("Hays Decl."), the Declaration of Richard L. Kellner ("Kellner Decl."), the Declaration of Jason Frank ("Frank Decl."), the record in this case and in the Action, and such other evidence and argument as may be presented at or before the hearing.

### 1. Summary of Argument

After more than six years of heated, time-consuming litigation and four rounds of mediations, the Trustee and Defendants have entered into the Agreement. The Settlement Amount of $1,750,000 was fixed after a mediator determined the trial value of the asserted claims pursuant to a previous binding agreement between the Parties. Under Rule 9019, the Court may approve a compromise on motion by the trustee. Each of the *A&C Properties* factors weighs in favor of approval: the settlement amount was fixed by a sitting bankruptcy judge acting in the capacity of a Mediator; $500,000 is already held in trust, and the balance is secured by a stipulated judgment enforceable jointly and severally against all Defendants. Approval of the proposed compromise ends costly, complex litigation and brings substantial funds into the Estate.

Procedurally, this motion is slightly unusual because most of the relief sought in this motion has been the subject of prior Orders issued by this Court. On September 19, 2025 (while the Parties were proceeding to an anticipated trial), the Trustee obtained approval from the Court on the method by which any recovery in this Action would be distributed and the new terms for the contingency attorney fee compensation for counsel representing the Estate in this action. (Dk. No. 571 and Dk. No. 569). No objections were made to the proposed Stipulation that was entered on September 19, 2025. (Kellner Decl., ¶ 7).

On March 9, 2026, prior to entering the mediation process, the Trustee also obtained approval from the Court regarding the parameters and procedures upon which the settlement amount would be determined after notice to all creditors. (Dk. No. 497). There was no objection or opposition made to the settlement parameters and procedures. (Kellner Decl., ¶ 9). Specifically, the Court's Order provided for the appointment of a mediator to: (a) make an attempt to seek a mediated resolution of the parties' disputes; and (b) if the mediation failed to resolve the parties' claim, to conduct a proceeding to determine the settlement value of the case that will be used as a settlement value. (Dk. No. 497). The provisions provided for a minimum $500,000 settlement amount and a cap of $1,750,000 – of which the Mediator was not advised during his deliberation. (Kellner Decl., ¶ 15). The Mediator's number came slightly above the $1,750,000 cap after a full evidentiary presentation. (Kellner Decl., ¶ 15).

By this Motion, the Trustee requests that the Court approve the settlement of $1,750,000, direct Gammill Law to release the $500,000 trust deposit to the Trustee as the Agreement requires, direct the distribution of the settlement proceeds pursuant to the terms of the March 9, 2026, Order – all consistent with the terms of the Court's September 19, 2025, Orders.

## 2. Statement of Facts

### A. The Bankruptcy Case and the Action

On September 13, 2019, the Debtor, through its court-appointed receiver, filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, commencing case no. 8:19-bk-13560-SC. The Trustee was appointed by the Office of the United States Trustee on September 13, 2019.

On October 23, 2019, as Dk. No. 24, the Court approved the Trustee's employment of MHW as general counsel under 11 US.C. § 327. On March 4, 2020, as Dk. No. 109, the Court approved the Trustee's employment of Kellner Law Group as special litigation counsel on a contingency fee basis. As noted, the terms of the employment of MHW and Kellner Law for their representation of the Trustee in this action were modified by Order dated September 19, 2025. (Dk. No. 571 and Dk. No. 569).

On May 19, 2020, the Trustee filed an adversary complaint for preliminary injunction, declaratory judgment, and further relief against Defendants. As evidenced by the docket, the Action was vigorously defended and thoroughly litigated. This includes motions to amend the operative pleadings, motions to dismiss, anti-SLAPP motions (which denials were appealed to the District Court), motions for protective orders, summary judgment motions, lien disputes, related litigation, three mediations (prior to the ultimate one that resolved this case), extensive discovery, multiple discovery motions, the review of tens of thousands of pages of documents, multiple depositions (including of Michael Avenatti while he was under federal incarceration), the retention of experts, third party protective order issues relating to the subject $1 million transfer, pre-trial submissions including the assembly of all exhibits and pre-trial statement, and the preparation for the final mediation that included the presentation of arguments and evidence. (Kellner Decl. ¶ 11).

Ultimately, the Trustee's theory of the case was distilled to that involving a fraudulent conveyance in June 2018 by Michael Avenatti to X-Law of $1 million and the *quantum meruit* value of Eagan Avenatti's legal services performed on a large personal injury case. The settlement represents a 100% recovery of the fraudulent conveyance claim (including pre-judgment interest) and a *quantum meruit* determination of the value of the work done by the Debtor on a litigation matter before the case was taken over by X-Law. (Kellner Decl., ¶ 13). The details of those claims and the legal obstacles for prevailing are detailed below.

While this litigation was extremely heated, it must be emphasized that the party who was determined to be the wrongdoer was the fraudulent transferor, Michael Avenatti – a felon who made the $1 million transfer to X-Law with intent to defraud the primary judgment creditor in this action – Jason Frank Law. (Kellner Decl., ¶ 14). While the Trustee alleged in his complaint that Mr. Avenatti's fraudulent intent could be imputed upon the Defendants or that the Defendants had actual or constructive knowledge of the fraud, there was no determination of fraudulent intent by any of the Defendants in this action.

### B. Mediation and the Mediator's Binding Determination of Settlement Valuation

On March 2, 2026, as Dk. No. 496 in the Action, the Parties filed a Stipulation for Assignment to Mediation ("Stipulation") pursuant to a separate agreement and addendum (collectively, "Procedures Agreement"). The Procedures Agreement and Stipulation bound the Parties to settle the Action for the amount determined by the Mediator, subject to a floor and ceiling. On March 9, 2026, as Dk. No. 497, the Court entered an order approving the Stipulation.

On April 29, 2026, the Parties attended an in-person mediation in San Diego before the Honorable J. Barrett Marum, United States Bankruptcy Judge ("Mediator"). After the matter could not be settled despite further efforts by the Mediator, the matter was submitted to the Mediator for a binding determination of the settlement value of the Action. On September 8, 2026, the Mediator determined that the settlement value of the Action was slightly over the $1,750,000 cap – following a full-day hearing that involved the presentation of evidence and argument and lengthy *in camera* discussions by the Mediator with the Parties.

### C. Summary of Key Settlement Terms

The Agreement's principal terms are summarized as follows. See Marshack Decl., Ex. 1. The summary is qualified in its entirety by the Agreement, which controls in the event of any inconsistency.

> **3.1 Settlement Payment.** The Settlement Amount to be paid to TRUSTEE is One Million, Seven Hundred Fifty Thousand United States Dollars ($1,750,000) ("Settlement Payment"). ¶ 4(c) of the Procedures Agreement provides:
>
> "The Settlement shall provide for the payment of the Settlement Amount by DEFENDANTS to TRUSTEE's bankruptcy estate account: the entire settlement amount shall be paid within 90 days after entry of the Order by the United States Bankruptcy Court for the Central District of California approving the compromise."
>
> **3.1.1 Release of Gammill Law Funds.** Five Hundred Thousand United States Dollars ($500,000) were previously deposited by X-Law into the trust account of GAMMILL LAW and governed by a separate agreement. Defendants agree that GAMMILL LAW shall promptly remit, no later than 10 calendar days after entry of the 9019 Order, the entire sum of $500,000 to the TRUSTEE. Such funds shall be credited towards the Settlement Payment upon receipt by the TRUSTEE.
>
> **3.1.2 Balance of the Settlement Payment.** The balance of the Settlement Payment (the $1,750,000 **settlement** minus the $500,000 payment from GAMMILL LAW trust account or $1,250,000.00) must be timely paid to avoid entry of the Stipulated Judgment referenced in ¶ 3.2, below.
>
> **3.2 Stipulated Judgment.** In connection with the Procedures Agreement, a separate stipulated judgment was provided as a condition of enforcement. If DEFENDANTS fail to timely pay the Settlement Payment, the TRUSTEE may immediately file the stipulation for entry of judgment with the Court along with a sworn statement regarding the default, and seek entry of the stipulated judgment by the Court, including the imposition of additional attorneys' fees and interest.
>
> "IT IS ORDERED, ADJUDGED, AND DECREED that judgment is entered in favor of Plaintiff in the principal amount of $_______, representing the amount of the settlement agreement between the parties, minus the funds already received by the Plaintiff, jointly and severally against all Defendants, Defendants [sic], THE X-LAW GROUP, PC, a professional corporation, FILIPPO MARCHINO, an individual, ELBA HERNANDEZ, an individual, and THE ESTATE OF ANDRES RAMIREZ."
>
> **3.3** The Stipulation for Entry of Judgment provides that the amount of the blank in the foregoing quoted provision from the Judgment will be completed by the Bankruptcy Court upon proof of the Settlement Value as determined by the Mediator less payments received, if any, prior to entry of the Judgment.
>
> **3.4 Dismissal of Action.** Conditioned upon timely receipt of the full Settlement AMOUNT, the TRUSTEE shall prepare and DEFENDANTS shall execute a stipulation for dismissal of the ACTION, with prejudice. Such stipulation for dismissal shall be transmitted to DEFENDANTS within two business days after the

> TRUSTEE's receipt of timely payment. Upon receipt of such fully executed stipulation, the TRUSTEE shall promptly file it with the Court.

In exchange for the consideration described in the settlement agreement, the parties will exchange broad mutual general releases as set forth in Article 5 of the agreement. The releases "apply to any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which the Parties, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or exiting through the date of this Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the ACTION, the administration of the EA Bankruptcy Case, and/or the facts pertaining to this Agreement." *See* Marshack Decl., Exh. 1, pg. 38, ¶ 5.1. Furthermore:

> This Settlement provides for a broad, general release of any and all known and unknown claims by and between all Parties, including their respective agents, representatives, attorneys, predecessors, successors, and assigns. The release by the TRUSTEE in favor of DEFENDANTS shall apply to all Defendants who now are, or at any time were, named, served, joined, or otherwise participated in the ACTION, whether formally or informally, and shall include, without limitation, each such Defendant's past, present, and future shareholders, members, partners, officers, directors, employees, agents, insurers, parents, subsidiaries, affiliates, predecessors, successors, assigns, heirs, children, and any other persons or entities reasonably related to or acting in concert with any Defendant.
>
> This release extends to any and all claims, demands, causes of action, liabilities, damages, losses, costs, or expenses of any kind whatsoever, whether known or unknown, suspected or unsuspected, accrued or unaccrued, that arise out of, relate to, or are in any way connected with the ACTION, the allegations asserted therein, or the relationship between any DEFENDANT and EA.
>
> For the avoidance of doubt, it is the express intention of the Parties that this Settlement fully and finally resolves any and all claims that existed, could have existed, or might exist in the future on behalf of the Estate of EA (on its own behalf and on behalf of any entity that it controls or owns to the maximum extent that such waiver can be given by the Trustee under applicable law, including Avenatti & Associates, APC) against any DEFENDANT, whether such Defendant remains in the ACTION at the time of Settlement or was previously dismissed, omitted, or otherwise removed from the Action, and whether or not such claims were specifically asserted.

*Id.* The releases also include a waiver under California Civil Code § 1542 and include a savings

clause: "For the avoidance of doubt, the Parties neither release Michael J. Avenatti for any reason whatsoever, nor to Avenatti & Associates, APC." *Id.*, ¶ 5.1.2.

## 3. Legal Argument

### A. The Agreement Should Be Approved Under Rule 9019

Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. P. 9019(a). As a general matter, a proposed compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Co. v. Guy F. Atkinson Co. of Cal. (In re Guy F. Atkinson Co).*, 242 B.R. 497, 502 (B.A.P. 9th Cir. 1999). In determining the fairness, reasonableness, and adequacy of any proposed compromise, the court must consider:

1) the probability of success in the litigation;
2) the difficulties, if any, to be encountered in the matter of collection;
3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010).

Although the Court generally defers to the trustee's business judgment, the trustee bears the burden of persuading the court that a proposed compromise is fair and equitable. *Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). As applied here, each factor supports approval of the Agreement.

Because the Court previously entered an Order approving the mediation process including the Mediator's binding determination of the Settlement Amount, the Agreement also is subject to approval under Rule 9019(c) which provides that "[i]f the parties so stipulate, the court may authorize a controversy affecting an estate to be submitted to final and binding arbitration." Given the previous stipulation for a binding determination, the Agreement including the Settlement Amount is also supported by Rule 9019(c). *See* Fed. R. Bankr. Proc. 9019(c) ("If the parties so

stipulate, the court may authorize a controversy affecting an estate to be submitted to final and binding arbitration.”).

**i. Probability of Success**

The litigation of this adversary proceeding involved years of comprehensive discovery and litigation. Before the Trustee entered the settlement structure, he engaged in a full evaluation of the merits of the case. (Marshack Decl., ¶¶ 7, 13). Indeed, the “cap” selected by the Trustee in the settlement structure approved by the Court represented an approximation of the maximum recovery likely to be awarded at trial. (Kellner Decl., ¶ 8).

In any litigation, there are always risks. Here, the risks were particularly acute on the *quantum meruit* claim for legal service performed by Eagan Avenatti in a catastrophic injury case involving the deceased son of Elba Hernandez. First and foremost, there were no time records that could be found in EA’s database or records regarding the attorney work performed on the case. This meant that the *quantum meruit* value of the time spent by EA attorneys had to be recreated through experts and deposition on the work done while EA had the case (largely before critical expert work, key depositions and summary judgment motion practice was undertaken). (Kellner Decl., ¶ 17).

Second, there were a bevy of other defenses – including a question regarding the Estate’s entitlement to *quantum meruit* recovery for its time – because Elba Hernandez’s son unfortunately passed away after X-Law took over the representation and there was no formal attorney-client relationship between Ms. Hernandez and EA, a purported waiver of the right to fees by Mr. Avenatti, the lack of documented disclosures to Ms. Hernandez which would be required for a referral fee or fee-sharing by X-Law and the Estate, and a fully executed copy of the retainer agreement between Ms. Hernandez (on behalf of her son) and Eagan Avenatti was never located. (Kellner Decl., ¶ 18.)

Finally, although the ultimate settlement payment from the City of Pasadena in that case was over $10 million, resulting in a contingency fee to X-Law of over $4 million, it was not subject to factual dispute that attorneys with the X-Law firm provided substantial value and benefit to Ms. Hernandez, and obtained a very good result for her on account of the tragedy that befell her son. The only dispute on the *quantum meruit* issue was, therefore, the extent to which the Estate was

entitled to an award, and the value of those services.

Nonetheless, the Mediator's settlement valuation appeared to be based upon 100% of the *quantum meruit* value of EA time proffered by Trustee's expert – without providing for any multiplier or contingency award. (Kellner Decl., ¶ 20). Therefore, the settlement obtained by the Trustee is consistent with his own expert's valuation of that portion of the case, and the Trustee has appropriately exercised his business judgment in this regard.

On the fraudulent conveyance claim, the mediator's determination of the settlement valuation represented a determination equivalent to the $1 million alleged fraudulent transfer from EA (through Avenatti) to X-Law, plus legal interest through the date of the determination (totaling $1,576,110). (Kellner Decl., ¶ 21). Consequently, this was a very good result for any settlement.

There were many legal obstacles to this claim – which Trustee's attorneys successfully advanced throughout this litigation. This included the fact that Mr. Avenatti had used *alter ego* law firms to avoid the JFL judgment – and Avenatti falsely claimed that the $1 million transfer to X-Law was *bona fide.* Needless to say, proof of fraudulent intent is generally a difficult thing to prove at trial – as evidenced by another fraudulent transfer claim that the Court dismissed after granting the defendant's motion for summary judgment. *See* USBC Case No. 8:20-ap-01049-SC (*Marshack v. Aledmi, LLC*, Adv. Dk. No. 131 – Order granting Defendants' Motion for Summary Judgment). The parties anticipated heavy factfinding and litigation at trial over the issue of fraudulent intent in the transfer, and further asserted defenses by Defendants regarding an earmarking doctrine defense, and the ownership and character of the funds received and then transferred. Consequently, the matter was set for a mediator's determination of the settlement valuation of the action, and the mediator's determination of the settlement valuation was very favorable to the Trustee's position. Nonetheless, the result was unknown at the time that the Parties participated in the mediation, and settlement remains much more favorable of a result for the Estate than continued litigation. The Trustee reiterates that the settlement valuation obtained under the mediation and the Agreement does not constitute an admission of any liability by the Defendants, nor are there any adverse findings against Defendants on any substantive matter. Notwithstanding the result of the Mediator's determination of settlement value, there is no guarantee nor expectation that the Trustee could

obtain an equivalent or better result after trial. This factor strongly supports approval of the Agreement at this time.

The Trustee is pleased that he successfully obtained such a good recovery for the Estate based upon the structure agreed upon to determine settlement value.

**ii. Difficulties in Collection**

In addition to avoiding the need for further complex litigation, the Agreement substantially reduces collection risk. Defendants have agreed to pay the settlement value of the action, as determined by the Mediator, and $500,000 is already on deposit in the Gammill Law trust account and must be remitted within 10 calendar days after entry of the 9019 Order. The $1,250,000 balance of the settlement valuation is backstopped by an executed stipulation for entry of judgment enforceable jointly and severally against all four Defendants, which carries additional fees and interest upon default. The Agreement also contains a specific waiver of the right to appeal.

By contrast, a judgment obtained after trial would require separate enforcement proceedings against multiple defendants and the prospect of years of appeal proceedings. This factor weighs heavily in favor of approval of the Agreement.

**iii. Complexity, Expense, Inconvenience, and Delay**

The Action has been pending since May 2020 and has been extensively litigated (as this Court is aware from its experience on the case and any review of the docket on this matter). Continued litigation would require additional discovery, motion practice, trial preparation, and trial, and any judgment would be subject to appeal, all at substantial cost to the Estate (including expert witness fees) and with significant delay in any distribution to creditors. The parties anticipated a multi-week trial in this matter if it were to proceed, and prior to entering into the agreement to resolve these disputes through mediation and a determination of the settlement valuation of the case, which avoided outstanding issues of whether this matter should have been transferred to the District Court for resolution by a jury trial were not resolved. *See, e.g., Namba v. Jafroodi (In re Jafroodi)*, 675 B.R. 414 (Bankr. C.D. Cal. 2025) (absent express consent, jury trial right may complicate adversary proceedings containing state law claims). Furthermore, the Agreement provides a waiver of the right to appeal, which would have been expected in this matter, with

multiple levels of appeal up to the Ninth Circuit.

The Agreement avoids these burdens and provides a settlement value which is a significant fraction of the value of the claims asserted against Defendants. This factor favors approval of the Agreement.

#### iv. Paramount Interest of Creditors

The Agreement brings $1,750,000 into the Estate on a defined timetable, without further litigation expense, which will be divided subject to Court approval including a division of the reserved proceeds for administrative fees, a reserve for the Estate, and a division of the net proceeds between contingency counsel and the principal secured creditor in this case. The primary secured/judgment creditor (Jason Frank Law) with a $10 million judgment – fully endorses the settlement and the work done by counsel. (Frank Decl., ¶¶ 3, 8). The Trustee believes the Agreement is in the paramount interest of creditors. (Marshack Decl., ¶ 13). This factor weighs in favor of approval of the Agreement.

### B. The Court Should Authorize and Direct the Release of the Gammill Law Funds

The Agreement provides that Gammill Law shall remit the $500,000 deposited by X-Law in its trust account to the Trustee no later than 10 calendar days after entry of the 9019 Order, and that those funds be credited toward the Settlement Payment. Agreement, ¶ 3.1.1. Defendants have consented to the release. Because the funds are held under a separate agreement, the Trustee requests that the 9019 Order expressly authorize and direct Gammill Law to remit the funds to the Trustee, so that Gammill Law has clear authority to disburse from its trust account. The Court has authority to enter such an order under 11 U.S.C. § 105(a) to carry out the provisions of the Bankruptcy Code and to implement the Agreement once approved.

### C. The Court Should Approve the Distribution of the Settlement Proceeds Pursuant to the Terms of the September 19, 2025, Stipulation and Order (Dk. No. 571).

On September 19, 2025, as Dk. No. 571, the Court entered an order approving the modification of the Trustee's attorneys' contingency fee terms and the distribution of proceeds from

the resolution of this case as follows:

a. Consistent with Paragraph 1(a) of the Subordination Agreement, 3% of the X-Law Recovery shall be reserved and segregated for payment of the Trustee's compensation under 11 U.S.C. § 326.

b. All unreimbursed case costs incurred in connection with the X-Law Adversary (and not any costs incurred in connection with the main bankruptcy case) shall be paid from gross recovery in that matter ("X-Law Recovery).

c. After reservation and payment of the line items under (a)-(b) above, the net balance remaining ("X-Law Net Recovery") shall be subject to an increased 60% contingency fee in favor of Trustee's co-counsel MHW [Marshack Hays Wood] and KLG [Kellner Law Group].

d. Consistent with Paragraphs 1(d) – 1(e) of the Subordination Agreement, 10% of the X-Law Net Recovery shall be reserved and segregated for "Other Allowed Administrative Claims" and/or other unsecured creditors. Such 10% reservation for "Other Allowed Administrative Claims" may only be used to pay any administrative fees **not accounted for** by the fee applications filed to date.

e. Trustee's two counsel in the X-Law Adversary shall be entitled to a proportionate share of the 60% contingency fee based on the then-applicable hourly rate for their respective total hours billed to the X-Law Adversary. For purposes of this allocation, MHW shall only be credited one-half of the value of hours billed to the X-Law Adversary from May 2020, through November 27, 2024, and may seek full credit for any additional hours billed to the X-Law Adversary after November 27, 2024, from the 60% contingency fee obtained by the estate free of the JFL Lien. Except as otherwise provided in this Stipulation and subject to approval by the Court, MHW shall not be entitled to seek compensation for attorneys' fees billed on the X-Law Adversary except through this proportional share of the X-Law Adversary, and allowance and payment of one-half of its fees charged to the X-Law Adversary in the MHW Application.

f. JFL shall be entitled to receive the remaining 40% of the X-Law Net Recovery after payment of the contingency fee.

(Dk. No. 569 [Stipulation, ¶ 10 (a-f)]; Dk No. 571 [Order Approving Stipulation]).

The division of proceeds is therefore estimated to be allocated as set forth in the summary table below:

| Item | Amount | Remainder |
|---|---|---|
| Gross proceeds | $1,750,000 | $1,750,000 |
| ¶ 10(a): Trustee's compensation | $52,500 | $1,697,500 |
| ¶ 10(b): Unreimbursed case expenses | $426.92 | $1,697,073.08 |
| ¶ 10(d): 10% of Net Recovery after costs[1] to Estate | $169,707.31 | $1,527,365.77 |
| ¶ 10(c)-(e): 60% contingency fee after items above | $916,419.46 | $610,946.31 |
| ¶ 10(f): 40% remainder to JFL | $610,946.31 | - |

Section 328(a) permits a trustee, with court approval, to employ a professional on any reasonable terms, including on a contingent fee basis. 11 U.S.C. § 328(a). Where employment is approved under section 328, the court may allow compensation different from that provided under the approved terms only if those terms prove to have been improvident in light of developments not capable of being anticipated at the time. *Id.*; *see In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992). Compensation awarded to professionals is otherwise governed by 11 U.S.C. § 330, and Federal Rule of Bankruptcy Procedure 2016 requires an application setting forth the services rendered and the amounts requested. The Trustee requests that his counsel be compensated as provided by the September 19, 2025, Order by this Court.

In the litigation of this matter, Kellner Law's primary role was as the trial litigation counsel – working on all litigation motions, reviewing tens of thousands of pages of discovery, conducting all depositions (except that of the Trustee) and preparation for trial/mediations. (Kellner Decl., ¶ 24). MHW worked as co-trial litigation counsel and largely concentrated on bankruptcy law issues, working on all litigation motions, defending the deposition of the Trustee, preparation for

[1] There may be some ambiguity in the stipulation regarding the position of this 10% calculation. Mr. Frank has agreed that this item will be calculated on 10% of the net recoveries after deducting the Trustee's 3% compensation and the unreimbursed case expenses from the adversary.

trial/mediations. (Hays Decl., ¶ 3). While the foregoing represents a general description of the work performed by counsel, it does not convey the comprehensive and extremely time-consuming nature of the work performed. In addition to the legal services customarily provided in any complex litigation, Trial Counsel also had to litigate an anti-SLAPP motion that was appealed to the District Court, multiple summary judgment motions, three mediations, the preparation of the case for a complex fraud trial (for which the settlement procedures were effectively substituted) and extensive and highly contested discovery disputes. (Kellner Decl., ¶ 26).

Through November 19, 2026, Kellner Law worked 1,096.70 hours during the nearly six years of representation in this litigation – performed by partner Richard Kellner – under his approved hourly rate of $825.00 per hour – for a total value of $904,777.50. (Kellner Decl., ¶ 27). At the Court's request, Kellner Law's contemporaneous time records can be provided for an *in camera* review. (Kellner Decl., ¶ 29).

MHW provided $406,361 in legal work on this Action through November 27, 2024 (of which $203,180.50 is being applied to this application with the balance previously paid), and since then, an additional 331.40 hours equaling $215,089.50 in ongoing fees through November 20, 206 charged to the custom sub-matter for this Action, for a total value allocated of $418,270 in additional fee value. At the Court's request, MHW's contemporaneous time records can be provided for an *in camera* review. (Hays Decl., ¶ 25).

As a result, the split in the 60% contingency fee between Kellner Law and MHW under the aforesaid terms is approximately 68.39% percent of the contingency fee for Kellner Law and approximately 31.61% percent of the contingency fee for MHW. (Kellner Decl., ¶ 6). Thus, of the $916,419.46 in estimated proceeds allocated to the contingency fee after reservation of the Trustee's 3% compensation, unreimbursed case costs, and the 10% reserve for the Estate, Kellner Law and MHW have agreed to accept the following distribution of proceeds subject to approval by the Court: $626,701.39 (68.3859%) to Kellner Law; and $289,718.07 (31.6141%) to MHW. Upon approval by the Court, such amounts shall be paid and pro-rated as settlement funds are received from Defendants, including the first $500,000 payment from the Gammill Law trust account, with payments proposed as set forth below:

a. $426.92 to Kellner Law for reimbursement of its case expenses;

b. $178,944.93 to Kellner Law as its pro-rated portion of the 60% contingency fee;

c. $82,724.53 to Marshack Hays Wood LLP as its pro-rated portion of the contingency fee;

d. $174,446.31 to Jason Frank Law as its distribution of the net proceeds; and

e. $63,457.31 retained by the Trustee on behalf of the Estate, comprised of the Trustee's fee reserve of 3% ($15,000) and the 10% net to the Estate ($48,457.31);

Each firm will receive compensation only for services it rendered under its own employment order, and no portion of either firm's compensation will be shared with any person other than a member or regular associate of that firm. *See* 11 U.S.C. § 504. No developments occurred that were incapable of being anticipated at the time of employment, and the fee is reasonable given the result achieved, the risk of nonpayment borne by counsel, and the duration and complexity of the Action.

### D. JFL's Agreement to the Subject Request.

The primary judgment creditor in this bankruptcy is Jason Frank Law ("JFL") with a $10 million judgment. Jason Frank, a principal at JFL, has approved each of the underlying Stipulations (that were approved as Orders) regarding the settlement process, the distribution of settlement proceeds and the modified terms of compensating the litigation counsel. (Frank Decl., ¶¶ 4-5). JFL fully approves and supports this motion and the settlement – which represents perhaps the best possible outcome for this litigation. (Frank Decl., ¶¶ 6, 8). Further, JFL recognizes the highly skilled and time-consuming work done by the attorneys representing the estate to achieve this very good result (Frank Decl., ¶¶ 3, 7) that fully warrants the attorney fee terms previously agreed upon.

Pursuant to the September 19, 2025, Order by the Court, JFL receives the balance of the settlement proceeds after payment of the Trustee Compensation, Unreimbursed Costs, Attorneys' Fees and the 10% for other administrative claims and unsecured creditors. To effectuate this distribution, Trustee further requests that he be authorized to immediately remit, upon receipt of such settlement payments from Defendants, JFL's portion of the settlement proceeds.

## 4. Conclusion

Based on the foregoing, the Trustee respectfully requests that the Court enter an order:

1. Granting the Motion;

2. Approving the Agreement attached as Exhibit "1" to the Marshack Declaration pursuant to Federal Rule of Bankruptcy Procedure 9019;

3. Authorizing the Trustee to take all steps and execute all documents necessary to effectuate the Agreement;

4. Authorizing and directing Gammill Law Group to remit to the Trustee the $500,000 held in its trust account no later than 10 calendar days after entry of the order;

5. Allowing the contingency fee in the total amount of $916,419.46 and authorizing the Trustee to distribute from the settlement proceeds, as funds are received, as follows:

   a. Reservation of 3% of the gross payment for the Trustee's compensation pursuant to 11 U.S.C. § 326 (paid in connection with the Trustee's final report);

   b. Payment of unreimbursed case expenses to Kellner Law in the amount of $426.92;

   c. Reservation of 10% of the remaining proceeds after reservation of the Trustee's fee under subparagraph (a) above and payment of unreimbursed case expenses above; and for the remaining net proceeds thereafter:

   d. 60% x 68.3859% of each tranche of the net settlement payments received, up to $626,701.39 to Kellner Law Group, P.C., special litigation counsel to the Trustee; and

   e. 60% x 31.6141% of each tranche of the net settlement payments received, up to $289,718.07 to Marshack Hays Wood LLP, general counsel to the Trustee; and

   f. Authorizing, after the payment of the 60% contingency fee, the immediate distribution of the remaining 40% of each tranche of the net settlement payments received, up to $610,946.31 to Jason Frank Law pursuant to Paragraph 7(f) of the September 19, 2025 Order and the amounts for administrative and unsecured claims as per Paragraph 7(d) of the September 19, 2025 Order;

6. For the avoidance of doubt, the Trustee requests authorization for the following distributions upon receipt of the $500,000 from Gammill Law:

a. $426.92 to Kellner Law for reimbursement of its case expenses;

b. $178,944.93 to Kellner Law as its pro-rated portion of the 60% contingency fee;

c. $82,724.53 to Marshack Hays Wood LLP as its pro-rated portion of the contingency fee;

d. $174,446.31 to Jason Frank Law as its distribution of the net proceeds; and

e. $63,457.31 retained by the Trustee on behalf of the Estate, comprised of the Trustee's fee reserve of 3% ($15,000) and the 10% net to the Estate ($48,457.31);

7. And, granting such other and further relief as the Court deems just and proper.

DATED: November 24, 2026

MARSHACK HAYS WOOD LLP

By: */s/ D. Edward Hays*
D. EDWARD HAYS
TINHO MANG
Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, say and declare as follows:

1. I am the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("Debtor"). I am an individual over 18 years of age and competent to make this Declaration.

2. I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts. All terms not defined herein are used as they are defined in the Motion.

3. A true and correct copy of the fully executed settlement agreement is attached as Exhibit "1."

4. On May 19, 2020, I caused to be filed an adversary complaint against Defendants, commencing adversary proceeding no. 8:20-ap-01086-SC, asserting four claims for relief.

5. On April 29, 2026, I along with my counsel attended an in-person mediation with Defendants before the Honorable J. Barrett Marum ("Mediator"). After the parties reached an impasse, the matter was submitted to the Mediator for a binding determination.

6. Under the Agreement, $500,000 deposited by X-Law in the trust account of Gammill Law Group is to be remitted to me no later than 10 calendar days after entry of the 9019 Order, and the balance of $1,250,000 must be paid within 90 days after entry of the 9019 Order. If Defendants default, I may seek entry of a stipulated judgment jointly and severally against all Defendants.

7. Although I believe the Estate's claims are meritorious, Defendants dispute liability, and continued litigation would require substantial additional expense and delay, with no assurance of a better result or of collection. The Agreement provides a certain recovery that is secured in part by funds already held in trust and in part by a stipulated judgment.

8. I am informed and believe that there are significant risks in proceeding with further litigation in this case on the *quantum meruit* claim for legal services performed by Eagan Avenatti in the catastrophic injury case involving the deceased son of Elba Hernandez. First and foremost, I am informed that there were no time records that could be found in EA's files and computers regarding the attorney work performed on the case. This meant that the *quantum meruit* value of the

time spent by EA attorneys had to be recreated through discovery including depositions on the work done while the case was being handled by EA. This evidence was then used by my experts to opine on the quantum meruit value conferred by EA.

9. Second, I am informed that there were other defenses – including a question regarding the Estate's entitlement to *quantum meruit* recovery for its time – because Elba Hernandez's son unfortunately passed away after X-Law took over the representation and there was no formal attorney-client relationship between Ms. Hernandez and EA, a purported waiver of the right to fees by Mr. Avenatti, the lack of documented disclosures to Ms. Hernandez which would be required for a referral fee or fee-sharing by X-Law and the Estate, and a fully executed copy of the retainer agreement between Ms. Hernandez (on behalf of her son) and Eagan Avenatti was never located.

10. Although I am informed that the ultimate settlement payment from the City of Pasadena in that case was over $10 million, resulting in a contingency fee to X-Law of over $4 million, it was not subject to factual dispute that attorneys with the X-Law firm provided substantial value and benefit to Ms. Hernandez, and obtained a very good result for her on account of the tragedy that befell her son. The only dispute on the *quantum meruit* issue was, therefore, the extent to which the Estate was entitled to an award, and the value of those services.

11. On the fraudulent conveyance claim, there were many legal obstacles to this claim – which my attorneys successfully advanced throughout this litigation. This included the fact that Mr. Avenatti had used *alter ego* law firms to avoid the JFL judgment – and Avenatti falsely claimed that the $1 million transfer to X-Law was *bona fide.* Needless to say, proof of fraudulent intent is generally a difficult thing to prove at trial – as evidenced by another fraudulent transfer claim that the Court dismissed after granting the defendant's motion for summary judgment. *See* USBC Case No. 8:20-ap-01049-SC (*Marshack v. Aledmi, LLC*, Adv. Dk. No. 131 – Order granting Defendants' Motion for Summary Judgment). The parties anticipated heavy factfinding and litigation at trial over the issue of fraudulent intent in the transfer, and further asserted defenses by Defendants regarding an earmarking doctrine defense, and the ownership and character of the funds received and then transferred.

12. Although my complaint against the Defendants including Mr. Marchino and his law firm The X-Law Group, P.C. contained a claim for something referred to as a "fraudulent transfer", I believe that the relevant fraudulent intent for this claim is the fraudulent intent of the *transferor*, i.e., Mr. Avenatti. In this action, there have never been any determinations by either this Court or the Mediator regarding the fraudulent intent of any of the Defendants. Throughout this case, Mr. Marchino consistently testified and stated in his declarations that he had been misled by Mr. Avenatti, and had not knowingly received any funds or transfers with fraudulent intent. I have observed that Mr. Marchino appears to be a zealous advocate for his clients, including his client in this case, Ms. Hernandez. Based on what I personally know about the case, at this time, I have no reason to believe that Ms. Hernandez ever had any fraudulent intent.

13. I believe the Agreement is fair and reasonable, is in the best interest of the Estate, and is in the paramount interest of creditors, and I request that it be approved.

14. I have reviewed the contingency fee requested by Kellner Law and MHW and the proposed allocation described in the Motion, and I believe it is consistent with the terms of their employment and is reasonable. I support allowance of the fee and its distribution as requested.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026.

RICHARD A. MARSHACK

## Declaration Of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1. I am an attorney licensed to practice in the State of California and a partner at Marshack Hays Wood LLP ("MHW"), general counsel for Richard A. Marshack, Chapter 7 Trustee of the bankruptcy estate of Eagan Avenatti, LLP. I have personal knowledge of the facts in this Declaration and, if called as a witness, could and would competently testify to them.

2. In the litigation of this matter, Kellner Law's primary role was as the trial litigation counsel – working on all litigation motions, reviewing tens of thousands of pages of discovery, conducting all depositions (except that of the Trustee) and preparation for trial/mediations.

3. MHW worked as co-trial litigation counsel and largely concentrated on bankruptcy law issues, working on all litigation motions, defending the deposition of the Trustee, preparation for trial/mediations.

4. On September 20, 2025 (while the Parties were proceeding to an anticipated trial), the Trustee obtained approval from the Court on the method by which any recovery in this Action would be distributed and the new terms for the contingency attorney fee compensation for counsel representing the Estate in this action. (Dk. No. 571 and Dk. No. 569).

5. The terms are set forth at length in Dk. No. 571 and Dk. No. 569. But, essentially, the contingency fee compensation for the attorneys in this matter was modified to provide for a 60% contingency of any net recovery – to be split based upon the hourly time charged by Kellner Law and MHW – after payment of the Trustee's 3% fee and unreimbursed costs. This modification was required at this time because we were "ramping up" for trial – and the litigation counsel required reasonable compensation to continue in the action.

6. No objections were made to the proposed Stipulation that was entered on September 20, 2025. So, we proceeded to litigate the case based upon this modified contingency fee structure.

7. About 6 months thereafter, after all of the pre-trial documents were prepared and were ready to proceed to trial, the parties agreed to a Mediation plan that effectively provided for a "high-low" amount for a settlement – that would be determined by a skilled mediator or sitting judge if the parties could not reach an amicable agreement. The amount of the "high" approximated

the maximum damages that the Trustee believed we could obtain at the trial of this adversary proceeding.

8. On March 9, 2026, the parties' proposed Stipulation and Order regarding such procedures was entered by the Court. No objections were made to the proposed Stipulation that was entered on September 20, 2025.

9. Up until this point, this case had been thoroughly and meticulously litigated by counsel for the Trustee. We endeavored to be as efficient as possible in the split of work between Kellner Law and MHW, with Kellner Law's role was that of primary litigation counsel and MHW providing litigation assistance and their bankruptcy law expertise.

10. The adversary was filed on May 19, 2020, by the Trustee's prior counsel, John Reitman. The claims in the initial complaint primarily related to the Debtor's rights to compensation for having filed and litigated a case against the City of Pasadena for a former client Elba Hernandez whose son was tragically killed in a traffic accident. In connection with these claims, the Trustee sought a preliminary injunction, declaratory judgment, and further relief against Defendants.

11. In September 2020, the Trustee substituted Kellner Law and MHW as his attorneys in this case. Counsel later identified a $1 million transfer that occurred about 15 months prior to the bankruptcy from the Debtor to X-Law which was owned by Filippo Marchino. Counsel then sought and obtained leave to file an amended complaint to include claims to avoid and recover this $1 million transfer.

12. The Action was thoroughly litigated by the Parties and vigorously defended by the Defendants. This included motions to amend the operative pleadings, motions to dismiss, anti-SLAPP motions (which denials were appealed to the District Court), motions for protective orders, summary judgment motions, lien disputes, related litigation, three mediations (prior to the ultimate one that resolved this case), extensive discovery, multiple discovery motions, the review of tens of thousands of pages of documents, multiple depositions (including of Michael Avenatti while he was under federal incarceration), the retention of experts, third party protective order issues relating to the subject $1 million transfer, pre-trial submissions including the assembly of all exhibits and pre-

trial statement, and the preparation for the final mediation that included the presentation of arguments and evidence.

13. Ultimately, the Trustee's theory of the case was distilled to avoiding the $1 million fraudulent conveyance made in June 2018 to X-Law and the *quantum meruit* value of Eagan Avenatti's legal services performed on a large personal injury case. The proposed settlement represents a 100% recovery of the fraudulent conveyance claim (including pre-judgment interest) and a *quantum meruit* determination of the value of the work done by the Debtor on the Hernandez case before the case was taken over by X-Law.

14. With regard to the claim that the $1 million transfer was made with actual intent to hinder, delay, or defraud, it is the intent of the transferor that is dispositive. In this case, it was Michael Avenatti acting on behalf of the Debtor that allegedly made the $1 million transfer to X-Law with the actual intent to defraud the Debtor's primary judgment creditor - Jason Frank Law. While the Trustee alleged in his complaint that Mr. Avenatti's fraudulent intent was known to the Defendants (or that they had actual or constructive knowledge of such fraud), there was never any determination in the adversary that any of the Defendants committed fraud.

15. On April 29, 2026, the Parties attended an in-person mediation in San Diego before the Honorable J. Barrett Marum, United States Bankruptcy Judge ("Mediator"). The mediation involved a full-day hearing including the presentation of evidence, oral argument, and lengthy *in camera* discussions between the Mediator and the Parties. After the matter could not be settled, the Mediator conducted additional settlement negotiations after the Mediation. Despite these further efforts, the matter was not settled and instead was submitted to the Mediator for a binding determination of the settlement value of the Action. On September 8, 2026, the Mediator determined that the settlement value of the Action was slightly over the $1,750,000 cap. In my opinion, the $1,750,000 settlement represents an extremely good result for the Estate.

16. As noted in Mr. Kellner's Declaration, the risks were particularly acute on the *quantum meruit* claim for legal service performed by Eagan Avenatti in the catastrophic injury case involving the deceased son of Elba Hernandez. First and foremost, there were no time records that could be found in EA's files and computers regarding the attorney work performed on the case.

This meant that the *quantum meruit* value of the time spent by EA attorneys had to be recreated through discovery including depositions on the work done while the case was being handled by EA. This evidence was then used by the Trustee's experts to opine on the quantum meruit value conferred by EA.

17. Second, there were other defenses – including a question regarding the Estate's entitlement to *quantum meruit* recovery for its time – because Elba Hernandez's son unfortunately passed away after X-Law took over the representation and there was no formal attorney-client relationship between Ms. Hernandez and EA, a purported waiver of the right to fees by Mr. Avenatti, the lack of documented disclosures to Ms. Hernandez which would be required for a referral fee or fee-sharing by X-Law and the Estate, and a fully executed copy of the retainer agreement between Ms. Hernandez (on behalf of her son) and Eagan Avenatti was never located (the Trustee did find the version of the agreement signed by Mr. Avenatti).

18. Although the ultimate settlement payment from the City of Pasadena in that case was over $10 million, resulting in a contingency fee to X-Law of over $4 million, it was not subject to factual dispute that attorneys with the X-Law firm provided substantial value and benefit to Ms. Hernandez, and obtained a very good result for her on account of the tragedy that befell her son. The only dispute on the *quantum meruit* issue was, therefore, the extent to which the Estate was entitled to an award, and the value of those services.

19. The Mediator's settlement valuation appeared to be based upon 100% of the *quantum meruit* value of EA time proffered by Trustee's expert – without providing for any multiplier or contingency award.

20. On the fraudulent conveyance claim, the mediator's settlement valuation represented a determination equivalent to the $1 million alleged fraudulent transfer from EA (through Avenatti) to X-Law, plus legal interest through the date of the determination (totaling $1,576,110). Consequently, this was a very good result for any settlement.

21. There were many legal obstacles to this claim – which Trustee's attorneys successfully advanced throughout this litigation. This included the fact that Mr. Avenatti had used *alter ego* law firms to avoid the JFL judgment – and Avenatti falsely claimed that the $1 million

transfer to X-Law was *bona fide.* Needless to say, proof of fraudulent intent is generally a difficult thing to prove at trial – as evidenced by another fraudulent transfer claim that the Court dismissed after granting the defendant's motion for summary judgment. *See* USBC Case No. 8:20-ap-01049-SC (*Marshack v. Aledmi, LLC*, Adv. Dk. No. 131 – Order granting Defendants' Motion for Summary Judgment). The parties anticipated heavy factfinding and litigation at trial over the issue of fraudulent intent in the transfer, and further asserted defenses by Defendants regarding an earmarking doctrine defense, and the ownership and character of the funds received and then transferred. Despite these formidable obstacles, the Trustee effectively got a full recovery on this claim – including statutory pre-judgment interest.

22. Kellner Law and MHW worked efficiently and effectively in this action.

23. This amount of work done in this case was extremely time-consuming and required our highest level of legal skills. This is especially true because we were opposed by highly-skilled counsel – including an attorney in Mr. Marchino who was representing himself and did not spare any detail or motion in his defense of this case.

24. In addition to the legal services customarily provided in any complex litigation, Trial Counsel also had to litigate an anti-SLAPP motion that was appealed to the District Court, multiple summary judgment motions, three mediations, the preparation of the case for a complex fraud trial (for which the settlement procedures were effectively substituted) and extensive and highly contested discovery disputes.

25. MHW provided $406,361 in legal work on this Action through November 27, 2024 (of which $203,180.50 is being applied to this application with the balance previously paid), and since then, an additional 331.40 hours equaling $215,089.50 in ongoing fees through November 20, 206 charged to the custom sub-matter for this Action, for a total value allocated of $418,270 in additional fee value. At the Court's request, MHW's contemporaneous time records can be provided for an *in camera* review.

/ / /

/ / /

/ / /

26. I have personally reviewed the time for accuracy and non-duplication. At the Court's request, MHW's contemporaneous time records can be provided for an *in camera* review.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026, at Irvine, California.

*/s/ D. Edward Hays*
D. EDWARD HAYS

## Declaration Of Richard L. Kellner

I, RICHARD L. KELLNER, say and declare as follows:

1. I am an attorney licensed to practice in the State of California and a principal of Kellner Law Group, P.C. ("Kellner Law"), special litigation counsel to Richard A. Marshack, Chapter 7 Trustee of the bankruptcy estate of Eagan Avenatti, LLP. I have personal knowledge of the facts in this Declaration and, if called as a witness, could and would competently testify to them.

2. On March 4, 2020, Kellner Law was retained as Special Litigation Counsel in this adversary proceeding. Throughout the litigation, Kellner Law has worked closely with Marshack Hays Wood LLP ("MHW") as co-counsel in the prosecution of this Action on behalf of the Trustee. While Kellner Law had no role in the initial drafting of the Complaint – Kellner Law has been the primary litigation counsel in this action from the effective outset of the litigation. This included the substantive changes to the initial complaint and the formulation of alternative theories upon which the prosecution of this action was ultimately based.

3. As a courtesy to the Trustee, Kellner Law agreed to a reduced hourly rate of $825.00. My customary rate is over $1,000, based upon my experience and qualifications.

4. Specifically, I have been lead counsel on some of the largest class actions and business litigation cases in California for the past 20 years – in both Federal and State courts. I have tried over 25 cases and handled over 150 appeals. I was appointed as a Trustee for the Los Angeles County Bar Association, been the head of the Complex Court Litigation Section for the Los Angeles County Bar Association, and have served on numerous litigation and charitable boards. Among other awards and distinctions, I received the NAACP's Champion of Justice in Civil Rights award and have been selected by the National Trial Lawyers as one of the Top 100 Influential Trial Lawyers in the United States since 2015.

5. On September 20, 2025 (while the Parties were proceeding to an anticipated trial), the Trustee obtained approval from the Court on the method by which any recovery in this Action would be distributed and the new terms for the contingency attorney fee compensation for counsel representing the Estate in this action. (Dk. No. 571 and Dk. No. 569).

6. The terms are set forth at length in Dk. No. 571 and Dk. No. 569. But, essentially, the contingency fee compensation for the attorneys in this matter was modified to provide for a 60% contingency of any net recovery – to be split based upon the hourly time charged by Kellner Law and MHW – after payment of the Trustee's 3% fee and unreimbursed costs. This modification was required at this time because we were "ramping up" for trial – and the litigation counsel required reasonable compensation to continue in the action.

7. No objections were made to the proposed Stipulation that was entered on September 20, 2025. So, we proceeded to litigate the case based upon this modified contingency fee structure.

8. About 6 months thereafter, after all of the pre-trial documents were prepared and were ready to proceed to trial, the parties agreed to a Mediation plan that effectively provided for a "high-low" amount for a settlement – that would be determined by a skilled mediator or sitting judge if the parties could not reach an amicable agreement. The amount of the "high" approximated the maximum damages that the Trustee believed we could obtain at the trial of this adversary proceeding.

9. On March 9, 2026, the parties' proposed Stipulation and Order regarding such procedures was entered by the Court. No objections were made to the proposed Stipulation that was entered on September 20, 2025.

10. Up until this point, this case had been thoroughly and meticulously litigated by counsel for the Trustee. In particular, Kellner Law's role was that of primary litigation counsel – with MHW providing litigation assistance and their bankruptcy law expertise.

11. On May 19, 2020, the Trustee filed an adversary complaint for preliminary injunction, declaratory judgment, and further relief against Defendants. As evidenced by the docket, the Action was thoroughly litigated by the Parties and vigorously defended by Defendants. This includes motions to amend the operative pleadings, motions to dismiss, anti-SLAPP motions (which denials were appealed to the District Court), motions for protective orders, summary judgment motions, lien disputes, related litigation, three mediations (prior to the ultimate one that resolved this case), extensive discovery, multiple discovery motions, the review of tens of thousands of pages of documents, multiple depositions (including of Michael Avenatti while he was under federal

incarceration), the retention of experts, third party protective order issues relating to the subject $1 million transfer, pre-trial submissions including the assembly of all exhibits and pre-trial statement, and the preparation for the final mediation that included the presentation of arguments and evidence.

12. After Kellner Law and MHW were substituted into the case, counsel identified a $1 million transfer that occurred about 15 months prior to the bankruptcy from the Debtor to X-Law which was owned by Filippo Marchino. Counsel then sought and obtained leave to file an amended complaint to include claims to avoid and recover this $1 million transfer.

13. Ultimately, the Trustee's theory of the case was distilled to avoiding the $1 million fraudulent conveyance made in June 2018 to X-Law and the quantum meruit value of Eagan Avenatti's legal services performed on a large personal injury case. The proposed settlement represents a 100% recovery of the fraudulent conveyance claim (including pre-judgment interest) and a quantum meruit determination of the value of the work done by the Debtor on the Hernandez case before the case was taken over by X-Law.

14. With regard to the claim that the $1 million transfer was made with actual intent to hinder, delay, or defraud, it is the intent of the transferor that is dispositive. In this case, it was Michael Avenatti acting on behalf of the Debtor that allegedly made the $1 million transfer to X-Law with the actual intent to defraud the Debtor's primary judgment creditor - Jason Frank Law. While the Trustee alleged in his complaint that Mr. Avenatti's fraudulent intent was known to the Defendants (or that they had actual or constructive knowledge of such fraud), there was never any determination in the adversary that any of the Defendants committed fraud.

15. On April 29, 2026, the Parties attended an in-person mediation in San Diego before the Honorable J. Barrett Marum, United States Bankruptcy Judge ("Mediator"). The mediation involved a full-day hearing including the presentation of evidence, oral argument, and lengthy in camera discussions between the Mediator and the Parties. After the matter could not be settled, the Mediator conducted additional settlement negotiations after the Mediation. Despite these further efforts, the matter was not settled and instead was submitted to the Mediator for a binding determination of the settlement value of the Action. On September 8, 2026, the Mediator determined

that the settlement value of the Action was slightly over the $1,750,000 cap. In my opinion, the $1,750,000 settlement represents an extremely good result for the Estate.

16. In my opinion, the $1,750,000 settlement represents and extremely good result for the Estate.

17. In any litigation, there are always risks. Here, the risks were particularly acute on the quantum meruit claim for legal service performed by Eagan Avenatti in a catastrophic injury case involving the deceased son of Elba Hernandez. First and foremost, there were no time records that could be found in EA's files and computers regarding the attorney work performed on the case. This meant that the quantum meruit value of the time spent by EA attorneys had to be recreated through discovery including depositions on the work done while the case was being handled by EA. This evidence was then used by the Trustee's experts to opine on the quantum meruit value conferred by EA.

18. Second, there were other defenses – including a question regarding the Estate's entitlement to quantum meruit recovery for its time – because Elba Hernandez's son unfortunately passed away after X-Law took over the representation and there was no formal attorney-client relationship between Ms. Hernandez and EA, a purported waiver of the right to fees by Mr. Avenatti, the lack of documented disclosures to Ms. Hernandez which would be required for a referral fee or fee-sharing by X-Law and the Estate, and a fully executed copy of the retainer agreement between Ms. Hernandez (on behalf of her son) and Eagan Avenatti was never located (the Trustee did find the version of the agreement signed by Mr. Avenatti).

19. Although the ultimate settlement payment from the City of Pasadena in that case was over $10 million, resulting in a contingency fee to X-Law of over $4 million, it was not subject to factual dispute that attorneys with the X-Law firm provided substantial value and benefit to Ms. Hernandez, and obtained a very good result for her on account of the tragedy that befell her son. The only dispute on the quantum meruit issue was, therefore, the extent to which the Estate was entitled to an award, and the value of those services.

20. The Mediator's settlement valuation appeared to be based upon 100% of the quantum meruit value of EA time proffered by Trustee's expert – without providing for any multiplier or contingency award.

21. On the fraudulent conveyance claim, the mediator's settlement valuation represented a determination equivalent to the $1 million alleged fraudulent transfer from EA (through Avenatti) to X-Law, plus legal interest through the date of the determination (totaling $1,576,110). Consequently, this was a very good result for any settlement.

22. There were many legal obstacles to this claim – which Trustee's attorneys successfully advanced throughout this litigation. This included the fact that Mr. Avenatti had used alter ego law firms to avoid the JFL judgment – and Avenatti falsely claimed that the $1 million transfer to X-Law was bona fide. Needless to say, proof of fraudulent intent is generally a difficult thing to prove at trial – as evidenced by another fraudulent transfer claim that the Court dismissed after granting the defendant's motion for summary judgment. See USBC Case No. 8:20-ap-01049-SC (Marshack v. Aledmi, LLC, Adv. Dk. No. 131 – Order granting Defendants' Motion for Summary Judgment). The parties anticipated heavy factfinding and litigation at trial over the issue of fraudulent intent in the transfer, and further asserted defenses by Defendants regarding an earmarking doctrine defense, and the ownership and character of the funds received and then transferred. Despite these formidable obstacles, the Trustee effectively got a full recovery on this claim – including statutory pre-judgment interest.

23. Kellner Law and MHW worked efficiently and effectively in this action.

24. Kellner Law's primary role was as the trial litigation counsel – working on all litigation motions, reviewing tens of thousands of pages of discovery, conducting all depositions (except that of the Trustee) and preparation for trial/mediations. MHW worked as co-trial litigation counsel and largely concentrated on bankruptcy law issues, working on all litigation motions, defending the deposition of the Trustee, preparation for trial/mediations.

25. This amount of work done in this case was extremely time-consuming and required our highest level of legal skills. This is especially true because we were opposed by highly-skilled

counsel – including an attorney in Mr. Marchino who was representing himself and did not spare any detail or motion in his defense of this case.

26. In addition to the legal services customarily provided in any complex litigation, Trial Counsel also had to litigate an anti-SLAPP motion that was appealed to the District Court, multiple summary judgment motions, three mediations, the preparation of the case for a complex fraud trial (for which the settlement procedures were effectively substituted) and extensive and highly contested discovery disputes. In addition, the tens of thousands of pages of documents were not in a searchable format – resulting in time-consuming review and individual printout of documents produced from both the defendants and those retrieved from the EA servers.

27. Through November 19, 2026, Kellner Law worked 1,096.70 hours during the nearly six years of representation in this litigation – performed by partner Richard Kellner – under his approved hourly rate of $825.00 per hour – for a total value of $904,777.50. I have reviewed each time entry to determine its accuracy, as well as to be sure there is no duplication or work attributed to other matters that I worked on for the Trustee on behalf of the Estate.

28. The fee sought herein represents a substantial negative multiplier from the time spent on this case (more than 30% below the hourly work), despite the fact that we obtained a particularly good result for the estate. Indeed, Kellner Law took the risk of receiving nothing for its considerable time if a lesser (or no) recovery was obtained for the Estate.

29. At the Court's request, Kellner Law's contemporaneous time records can be provided for an in camera review.

30. In sum, it has been an honor to work on this matter with the Trustee and excellent bankruptcy law co-counsel in MHW. This is an extremely good result.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026, at Los Angeles, California.

RICHARD L. KELLNER

# Declaration of Jason M. Frank

I, JASON M. FRANK, say and declare as follows:

1. I am the owner and president of Jason Frank Law PLC ("JFL"), a professional corporation, the judgment creditor in this bankruptcy the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("Debtor"). I am an individual over 18 years of age and competent to make this Declaration.

1. I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts.

2. The Trustee and his counsel have kept me apprised of all material developments in this adversary proceeding, and I have also kept a watchful eye on all pleadings submitted in this case. That is because JFL holds that primary judgment against the Debtor in the form of a $10 million judgment.

3. In particular, I have been extremely impressed with the diligence and hard work of the primary litigation counsel (Kellner Law Group PC ["Kellner Law"]) and its co-counsel (Marshack Hays Wood LLP ["Marshack Hays"]). As an active litigation firm in both federal and state court in California, I am fully aware of the qualifications, experience of Richard Kellner – the principal of Kellner Law. Mr. Kellner is considered one of the top litigators in California, and I was extremely pleased that he agreed to handle this case at a reduced hourly rate of $825.00. Marshack Hays has also provided excellent work supporting this litigation with its bankruptcy expertise.

4. On September 20, 2025, I consented to a Stipulation and Proposed Order that modified the compensation for Kellner Law and Marshack Hays. At the time, the parties were anticipating a long trial and I agreed that highly skilled trial counsel – assisted by experienced bankruptcy counsel – was needed to effectuate a maximum recovery for the Estate (and, consequently, for JFL as judgment creditor). Accordingly, I consented to the modification of the fee compensation that effectively provided for a 60% contingency after payment of the Trustee fees, 10% to unsecured creditors and unreimbursed costs.

5. Thereafter, I was advised of the high-low mediation procedure that was the subject of the March 9, 2026 Stipulation and Order entered by this Court on March 9, 2026, and I was present

at the hearing on February 19, 2026, at which certain terms were discussed on the record.

6. I have also reviewed the settlement agreement, the Trustee's Motion to Approve Compromise, and the supporting papers. I fully agree with the request sought, including the distributions that will be made under the settlement pursuant to the terms of the September 20, 2025 Stipulation and Order.

7. In my opinion, the compensation to counsel has fair and reasonable – and actually represents a negative lodestar (an amount less than the hourly rate times hours spent) for a complex case in which an extremely good recovery was provided for the Estate.

8. I fully support this settlement and the relief requested by the Trustee.

9. Under the terms of the settlement and my agreements with the Trustee, I agree with the requested distributions set forth in the motion which includes a payment to me of 40% of the net recovery, up to $610,946.31.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026, at Irvine, California.

JASON M. FRANK

# Exhibit “1”

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Settlement Agreement") is made and entered into as of September 8, 2026, by and between (i) Richard A. Marshack, in his capacity as Chapter 7 Trustee ("TRUSTEE") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"), *In re Eagan Avenatti, LLP,* Case No. 8:19-bk-13560-SC ("EA Bankruptcy Case"), pending in the United States Bankruptcy Court, Central District of California, Santa Ana Division ("Bankruptcy Court"), and (ii) Elba Hernandez ("HERNANDEZ"), The Estate of Andres Ramirez ("RAMIREZ"), The X-Law Group, P.C. ("X-LAW"), and Filippo Marchino ("MARCHINO" and, collectively with HERNANDEZ, RAMIREZ, and X-LAW, the "DEFENDANTS"). The TRUSTEE and DEFENDANTS shall be collectively referred to as the "Parties" and singularly as a "Party." The Parties hereby stipulate, represent, and agree as follows:

## RECITALS

A. On September 13, 2019 ("Petition Date"), EA, through its court-appointed receiver, filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code commencing the EA Bankruptcy Case.

B. The TRUSTEE was appointed by the Office of the United States Trustee on September 13, 2019.

C. On May 19, 2020, the TRUSTEE filed an adversary complaint against DEFENDANTS, commencing adversary Case Number 8:20-ap-01086-SC ("ACTION"). In the ACTION, the TRUSTEE asserted four claims for relief under various theories.

D. The ACTION is presently pending before the Hon. Scott C. Clarkson, United States Bankruptcy Judge for the Central District of California.

E. On March 2, 2026, as Docket No. 496 in the ACTION, the Parties filed a Stipulation for Assignment to Mediation ("Stipulation") pursuant to a separate agreement referred to in the Stipulation as the "Settlement Agreement and Mutual General Release" and "Addendum" (collectively "Procedures Agreement"). The Procedures Agreement and Stipulation bound the parties to settle the ACTION for the amount determined by the Mediator subject to a floor and ceiling.

F. On March 9, 2026, as Dk. No. 497, the Court entered an Order approving the Stipulation ("Order").

G. On April 29, 2026, the Parties attended an in-person mediation before the Hon. J. Barrett Marum, United States Bankruptcy Judge ("Mediator"). At the conclusion of the mediation and the discussions afterwards, the Parties reached an impasse. After the mediation, the Mediator conducted additional efforts to determine if the parties could reach a settlement. When no settlement was reached, the matter was submitted to the Mediator for his binding determination of the settlement value of the ACTION pursuant to the Procedures Agreement, Stipulation, and Order.



RAM

H. On September 8, 2026, the Mediator made his determination that the settlement value of the ACTION was $1,866,719.60 plus daily interest of $191.78 from and after September 8, 2026. Pursuant to the Procedures Agreement, if timely paid, that amount is capped at $1,750,000 ("SETTLEMENT AMOUNT").

I. Pursuant to Paragraph 4(a) of the Procedures Agreement, the Parties enter into this long-form settlement agreement upon the following terms and conditions.

J. Pursuant to the Procedures Agreement, if the Trustee does not timely receive the full SETTLEMENT AMOUNT, the Trustee may file a previous Stipulation for Entry of Judgment signed by the parties and provide the Court with the previously agreed-upon form of Stipulated Judgment to be entered jointly and severally against the DEFENDANTS.

K. Subject to Court approval, and solely to avoid the further expense, inconvenience, delay, and uncertainty of future litigation, and without admission of liability in any respect, the Parties have negotiated the terms of this Agreement as set forth herein.

## AGREEMENT

**NOW THEREFORE,** pursuant to the foregoing Recitals, which are true and correct, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

## ARTICLE 1.
## Court Approval

**1.1 Court Approval.** Promptly after full execution of this Agreement, the Trustee shall file a motion seeking approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 ("9019 Motion"). The TRUSTEE shall be responsible for preparation and filing of the 9019 Motion within one week after receipt of a fully executed copy of this final Settlement Agreement. The Parties agree to cooperate in seeking Bankruptcy Court approval of this Agreement and any required extension of deadlines in the ACTION pending approval of this Agreement. The Parties hereby reaffirm their agreement to waive any objections or grounds to contest or appeal the determination of the Mediator of the SETTLEMENT AMOUNT, the terms of prior agreements and orders relating to the settlement, and any potential resulting judgment or obligation. Neither Party shall file or cause any objections to the approval of the Settlement, nor any appeals of the same. If the Bankruptcy Court denies approval of the Settlement Agreement, or in any way limits the releases contained therein, then it shall be null and void and the Parties shall resume litigation of the ACTION.

**1.2 Standstill.** Pending entry of an order by the Bankruptcy Court granting or denying the 9019 Motion, the Parties shall execute one or more stipulations to extend all deadlines in the ACTION, if necessary. After the entry of the 9019 Order and pending full performance of the requirements of this Agreement, the Parties agree that all dates and deadlines in the ACTION shall be vacated.



Ron

## ARTICLE 2.
## Effective Date

**2.1 Effective Date.** The term "Effective Date" means the date on which all of the following conditions precedent to effectiveness of this Agreement have been satisfied:

**2.1.1** Execution of this Agreement by all Parties; and

**2.1.2** Entry of an order of the Bankruptcy Court approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 and granting the 9019 Motion ("9019 Order").

## ARTICLE 3.
## Terms of Settlement

**3.1 Settlement Payment.** The Settlement Amount to be paid to TRUSTEE is One Million, Seven Hundred Fifty Thousand United States Dollars ($1,750,000) ("Settlement Payment"). ¶ 4(c) of the Procedures Agreement provides:

> "The Settlement shall provide for the payment of the Settlement Amount by DEFENDANTS to TRUSTEE's bankruptcy estate account: the entire settlement amount shall be paid within 90 days after entry of the Order by the United States Bankruptcy Court for the Central District of California approving the compromise."

**3.1.1 Release of Gammill Law Funds.** Five Hundred Thousand United States Dollars ($500,000) were previously deposited by X-Law into the trust account of GAMMILL LAW and governed by a separate agreement. Defendants agree that GAMMILL LAW shall promptly remit, no later than 10 calendar days after entry of the 9019 Order, the entire sum of $500,000 to the TRUSTEE. Such funds shall be credited towards the Settlement Payment upon receipt by the TRUSTEE.

**3.1.2 Balance of the Settlement Payment.** The balance of the Settlement Payment (the $1,750,000 settlement minus the $500,000 payment from GAMMILL LAW trust account or $1,250,000.00) must be timely paid to avoid entry of the Stipulated Judgment referenced in ¶ 3.2, below.

**3.2 Stipulated Judgment.** In connection with the Procedures Agreement, a separate stipulated judgment was provided as a condition of enforcement. If DEFENDANTS fail to timely pay the Settlement Payment, the TRUSTEE may immediately file the stipulation for entry of judgment with the Court along with a sworn statement regarding the default, and seek entry of the stipulated judgment by the Court, including the imposition of additional attorneys' fees and interest.

> "IT IS ORDERED, ADJUDGED, AND DECREED that judgment is entered in favor of Plaintiff in the principal amount of $_______, representing the amount of the settlement agreement between the parties, minus the funds already received by the Plaintiff, jointly and severally against all Defendants, Defendants [sic], THE X-



Rom

LAW GROUP, PC, a professional corporation, FILIPPO MARCHINO, an individual, ELBA HERNANDEZ, an individual, and THE ESTATE OF ANDRES RAMIREZ."

**3.3** The Stipulation for Entry of Judgment provides that the amount of the blank in the foregoing quoted provision from the Judgment will be completed by the Bankruptcy Court upon proof of the Settlement Value as determined by the Mediator less payments received, if any, prior to entry of the Judgment.

**3.4** **Dismissal of Action.** Conditioned upon timely receipt of the full Settlement AMOUNT, the TRUSTEE shall prepare and DEFENDANTS shall execute a stipulation for dismissal of the ACTION, with prejudice. Such stipulation for dismissal shall be transmitted to DEFENDANTS within two business days after the TRUSTEE's receipt of timely payment. Upon receipt of such fully executed stipulation, the TRUSTEE shall promptly file it with the Court.

## ARTICLE 4.
## Representations and Warranties

**4.1** **No Additional Representations or Admissions.** Each Party represents and warrants that it has not transferred or assigned any of its rights, claims, or defenses prior to execution of this Agreement. Except for the representations and warranties expressly set forth in this Settlement Agreement, each Party acknowledges that he/she/it has relied wholly upon his/her/its own judgment, belief and knowledge of the existence, nature and extent of each claim, demand or cause of action that it may have against the other Party, which is to be released pursuant to this Settlement Agreement and that he/she/it has not been influenced to any extent in entering into this Settlement Agreement by any representation or statement regarding any such claim, demand or cause of action made by the other Party (except as expressly set forth in this Settlement Agreement).

## ARTICLE 5.
## Releases

5.1 Mutual General Release. Except as to the obligations imposed upon the Parties as provided herein and expressly conditioned upon the receipt of the full and timely Settlement Amount, the TRUSTEE, and his successors and assigns, and each of them, on the one hand, and DEFENDANTS, and their successor and assigns, and each of them, on the other hand, do hereby forever relieve, release, acquit, and discharge the other(s). These releases extend the Parties' respective predecessors, successors, and assigns, and their respective past and present agents, attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), and apply to any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which the Parties, or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances



RAM

whatsoever occurring or existing through the date of this Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the ACTION, the administration of the EA Bankruptcy Case, and/or the facts pertaining to this Agreement.

This Settlement provides for a broad, general release of any and all known and unknown claims by and between all Parties, including their respective agents, representatives, attorneys, predecessors, successors, and assigns. The release by the TRUSTEE in favor of the DEFENDANTS shall apply to all Defendants who now are, or at any time were, named, served, joined, or otherwise participated in the ACTION, whether formally or informally, and shall include, without limitation, each such Defendant's past, present, and future shareholders, members, partners, officers, directors, employees, agents, insurers, parents, subsidiaries, affiliates, predecessors, successors, assigns, heirs, children, and any other persons or entities reasonably related to or acting in concert with any Defendant.

This release extends to any and all claims, demands, causes of action, liabilities, damages, losses, costs, or expenses of any kind whatsoever, whether known or unknown, suspected or unsuspected, accrued or unaccrued, that arise out of, relate to, or are in any way connected with the ACTION, the allegations asserted therein, or the relationship between any DEFENDANT and EA.

For the avoidance of doubt, it is the express intention of the Parties that this Settlement fully and finally resolves any and all claims that existed, could have existed, or might exist in the future on behalf of the Estate of EA (on its own behalf and on behalf of any entity that it controls or owns to the maximum extent that such waiver can be given by the Trustee under applicable law, including Avenatti & Associates, APC) against any DEFENDANT, whether such Defendant remains in the ACTION at the time of Settlement or was previously dismissed, omitted, or otherwise removed from the Action, and whether or not such claims were specifically asserted.

**5.1.1** As to the matters released herein, the Parties, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

**5.1.2** For the avoidance of doubt, the Parties neither release Michael J. Avenatti for any reason whatsoever, nor to Avenatti & Associates, APC.

## ARTICLE 6.
## <u>Miscellaneous</u>

**6.1 Successors and Assigns.** This Settlement Agreement shall be binding on and shall inure to the benefit of the Parties and as may be applicable, their respective heirs, legal representatives, successors, and assigns.



RAm

**6.2 Choice of Law.** This Settlement Agreement is entered into and shall be performed in the State of California and shall be governed by and construed and interpreted in accordance with its internal laws and without regard to otherwise applicable principles of conflicts of laws or choice of laws, whether by statute, rule or judicial determination and whether of the State of California or any other jurisdiction.

**6.3 Interpretation.** Each of the Parties is represented by counsel and has reviewed this Settlement Agreement and agrees that any question of interpretation shall not be resolved by any rule providing for interpretation against the drafting Party. Whenever possible, each provision of this Settlement Agreement shall be interpreted in such manner as to be valid under applicable substantive laws (excluding choice of laws) of California.

**6.4 No Inducement.** Each Party acknowledges and represents to the other Party that no promise, representation or inducement not expressed herein has been made in connection with this Settlement Agreement.

**6.5 No Admission of Liability.** The execution of this Settlement Agreement and the performance of its terms and conditions effectuate the settlement of claims which are contested and denied. Nothing contained in this Settlement Agreement, nor the performance of any act hereunder is or shall be construed as an admission by any Party of any wrongdoing or liability of any kind to the other Party.

**6.6 Attorneys' Fees and Costs.** The Parties shall bear their own attorneys' fees and costs in connection with (i) the ACTION; and (ii) the negotiation of the terms, preparation, and performance of this Settlement Agreement. If any legal action is necessary to interpret or enforce the terms and conditions of this Settlement Agreement, the substantially prevailing Party shall be entitled to recover all costs of suit, statutory interest, and attorneys' fees and expenses incurred as determined by the court in that action. In the event of a default, this provision does not alter the TRUSTEE's right to recovery attorneys' fees, costs, and interest pursuant to the terms of the Stipulation for Entry of Judgment.

**6.7 Jurisdiction and Venue.** Each Party hereby irrevocably consents to the exclusive personal jurisdiction of and proper venue in the Bankruptcy Court for the Central District of California in the Eagan Avenatti bankruptcy for the trial, entry of findings, entry of final orders and judgments solely for the purpose of resolving all disputes under, arising from or out of or relating to this Settlement Agreement, or the Parties' rights and obligations with respect thereto. The present is not to be construed, and will not be posited to be, a waiver of any right of the Parties was the Bankruptcy Court to refuse the Settlement Agreement.

**6.8 Additional Documents.** Each Party agrees to execute, and as appropriate cause to be acknowledged, and deliver such additional documents and instruments and perform such further acts as may be reasonably necessary or appropriate to effectuate the purposes of this Settlement Agreement.

**6.9 Notices.** Any notice, service or demand permitted under this Settlement Agreement may be given by electronic mail (with proof of receipt), postage prepaid first-class mail, Federal



RDM

Express (or other over-night delivery service) (with proof of receipt), or personal delivery as follows:

**To the Trustee**: c/o Richard Kellner (rlk@kellnerlaw.com) of Kellner Law Group P.C., 315 South Beverly Drive, Suite 504, Beverly Hills, CA 90212; copy to Ed Hays (ehays@marshackhays.com) and Tinho Mang (tmang@marshackhays.com) of Marshack Hays Wood LLP, 870 Roosevelt, Irvine, CA 92620.

**To Defendants**: c/o Filippo Marchino (FM@xlawx.com) and Carlos Colorado (cc@xlawx.com) of The X-Law Group PC, 625 Fair Oaks Ave, Suite 390, South Pasadena, CA 91030.

**6.10 Amendment.** This Agreement may not be modified, altered, or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

**6.11 Signing by Facsimile and in Counterparts.** This Settlement Agreement may be executed by facsimile or pdf signature in separate counterparts and shall become effective when such separate counterparts have been exchanged between the Parties.

**6.12 Entire Agreement.** This Settlement Agreement contains the entire understanding between the Parties and supersedes any prior negotiations, representations, understandings, and agreements, whether oral or written, between them concerning its subject except for the following:

**6.12.1** Procedures Agreement entitled Settlement Agreement and Mutual General Release dated February 16, 2026

**6.12.2** Addendum to Procedures Agreement dated March 2, 2026

**6.12.3** Trust Fund Agreement with Gammill Law dated March 2, 2026

**6.12.4** Stipulation for Entry of Judgment dated March 2, 2026

**6.12.5** Separate Judgment

**6.12.6** Stipulation for Assignment to Mediation filed November 5, 2026

**6.12.7** Orders entered by the Court in Adversary Case No. 8:20-ap-01086

///

///

///

///



Rɪom

No waiver of any of the provisions of this Settlement Agreement shall be a continuing waiver unless expressly provided in writing.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date and year set forth below.

| | |
|---|---|
| Dated: November 17, 2026 | THE BANKRUPTCY ESTATE OF EAGAN AVENATTI, LLP<br><br>By: ______________________<br>Richard A. Marshack, Chapter 7 Trustee |
| Dated: November 17, 2026 | THE X-LAW GROUP PC<br><br>By: ______________________<br>Filippo Marchino, President |
| Dated: November 17, 2026 | FILIPPO MARCHINO<br><br>By: ______________________<br>Filippo Marchino, Self |
| Dated: November 17, 2026 | ELBA HERNANDEZ<br><br>By: ______________________<br>Elba Hernandez, Self |
| Dated: November 17, 2026 | The Estate of Andres Ramirez<br><br>By: ______________________<br>Elba Hernandez, Mother |

No waiver of any of the provisions of this Settlement Agreement shall be a continuing waiver unless expressly provided in writing.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date and year set forth below.

Dated: November 17, 2026

THE BANKRUPTCY ESTATE OF EAGAN AVENATTI, LLP

By: ______________________
Richard A. Marshack, Chapter 7 Trustee

Dated: November 17, 2026

THE X-LAW GROUP PC

By: ______________________
Filippo Marchino, President

Dated: November 17, 2026

FILIPPO MARCHINO

By: ______________________
Filippo Marchino, Self

Dated: November 17, 2026

ELBA HERNANDEZ

By: ______________________
Elba Hernandez, Self

Dated: November 17, 2026

The Estate of Andres Ramirez

By: ______________________
Elba Hernandez, Mother

MARSHACK HAYS WOOD LLP

By: ______________________
D. Edward Hays
Attorneys for Plaintiff and Chapter 7 Trustee,
Richard A. Marshack

LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.

By: ______________________
David B. Golubchik
Carmela T. Pagay
Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

KELLNER LAW GROUP PC

By: ______________________
Richard L. Kellner
Special Litigation Counsel for
Chapter 7 Trustee, Richard A.
Marshack

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled **MOTION TO: (1) APPROVE COMPROMISE WITH THE X-LAW GROUP, P.C., FILIPPO MARCHINO, ELBA HERNANDEZ, AND THE ESTATE OF ANDRES RAMIREZ PURSUANT TO FED. R. BANKR. P. 9019; (2) AUTHORIZE RELEASE OF FUNDS TO TRUSTEE FROM GAMMILL LAW GROUP; AND (3) ALLOW AND APPROVE DISTRIBUTION OF CONTINGENCY FEE BETWEEN KELLNER LAW GROUP, P.C. AND MARSHACK HAYS WOOD LLP; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK AND RICHARD L. KELLNER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 24, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **November 24, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**MAIL REDIRECTED TO TRUSTEE 09/23/19**
**DEBTOR**
EAGAN AVENATTI, LLP
~~20341 SW BIRCH, SUITE 220~~
~~NEWPORT BEACH, CA 92660-1514~~

**INTERESTED PARTY**
GAMMILL LAW
3820 DEL AMO BLVD
STE 304
TORRANCE, CA 90503

**INTERESTED PARTY**
JASON FRANK LAW, A PROFESSIONAL LAW CORPORATION
JASON FRANK
1416 3RD ST
MANHATTAN BEACH, CA 90266

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 24, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY - VIA PERSONAL DELIVERY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
411 WEST FOURTH STREET, SUITE 5130
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 24, 2026 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR CREDITOR JASON FRANK LAW PLC:** Timothy C Aires tca@arlawyers.com, gperez@arlawyers.com
- **INTERESTED PARTY COURTESY NEF:** James C Bastian jbastian@shulmanbastian.com, avernon@shulmanbastian.com
- **ATTORNEY FOR DEFENDANT TRACKSIDE PERFORMANCE, LLC; DEFENDANT ANDREW S. DAVIS; and DEFENDANT ROBERT FAIETA dba COMPETITION MOTORSPORTS:** Christopher L Blank chris@chrisblanklaw.com
- **ATTORNEY FOR DEFENDANT DILLANOS COFFEE ROASTERS:** Mark S Bostick mbostick@fennemorelaw.com, ecfbankruptcy@fennemorelaw.com
- **ATTORNEY FOR DEFENDANT EISENHOWER CARLSON PLLC:** Steven Casselberry Steve.Casselberry@procopio.com, jessica.perez@procopio.com;hayden.fredrick@procopio.com;calendaringbankruptcy@procopio.com;genesis.delgado@procopio.com;lauren.hill@procopio.com
- **ATTORNEY FOR RESPONDENT UNITED STATES OF AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE:** Thomas Coker Thomas.coker@usdoj.gov, USACAC.criminal@usdoj.gov
- **[DECEASED] ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; and DEFENDANT MICHAEL WHITE:** Lei Lei Wang Ekvall - DECEASED lekvall@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR DEFENDANT SILVER STAR SOUNDS & COMMUNICATIONS, INC:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com;Risrael@go2.law
- **ATTORNEY FOR DEFENDANT THE X-LAW GORUP, PC, A PROFESSIONAL CORPORATION and DEFENDANT FILIPPO MARCHINO:** David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com
- **ATTORNEY FOR DEFENDANT GALLO BUILDERS, INC.:** Martin B Greenbaum eparker@collectionlaw.com, mgreenbaum@collectionlaw.com
- **INTERESTED PARTY COURTESY NEF:** Sarah Rose Hasselberger shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com; cbastida@marshackhays.com; alinares@ecf.courtdrive.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; alinares@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR AND DEFENDANT HONDA AIRCRAFT COMPANY, LLC:** Robert J Im rim@ghidottiberger.com, irvineECF@mcglinchey.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Richard L Kellner rlk@kellnerlaw.com, irma.c.deleon@gmail.com
- **ATTORNEY FOR INTERVENOR HRAYR SHAHINIAN:** Erick Kuylman erick.kuylman@warrenterzian.com
- **ATTORNEY FOR LANDAU LAW LLP:** Rodger M. Landau rlandau@landaufirm.com, vrichmond@landaufirm.com; amendes@landaufirm.com; hrichmond@landaufirm.com
- **ATTORNEY FOR INTERESTED PARTY UNITED STATES OF AMERICA:** Elan S Levey elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **ATTORNEY FOR OTHER PROFESSIONAL JAMS, INC.:** Jessica R MacGregor jmacgregor@longlevit.com, lmyers@longlevit.com
- **ATTORNEY FOR DEFENDANT OSBORN MACHLER, PLLC and DEFENDANT SIMEON OSBORN:** Aaron J Malo amalo@sheppardmullin.com, hudenka@sheppard.com;mlinker@sheppard.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; alinares@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR AND DEFENDANT THE X-LAW GROUP, P.C.; CREDITOR ALEXIS GARDNER; CREDITOR DAMON ROGERS; DEFENDANT YOUNG BLUE, LLC, A LIMITED LIABILITY COMPANY; DEFENDANT ELBA HERNANDEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND SUCCESSOR-IN-INTEREST TO ANDRES RAMIREZ, DECEASED; DEFENDANT FILIPPO MARCHINO; and DEFENDANT SANDY LE, INDIVIDUALLY AND ON BEHALF OF TINA NGAN LE, DECEDENT:** Filippo Marchino fm@xlawx.com, tc@xlawx.com;so@xlawx.com;tg@xlawx.com;cc@xlawx.com
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Judith E Marshack jmarshack@marshackhays.com, jmarshack@ecf.courtdrive.com

- **CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Richard A Marshack (TR) pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; and DEFENDANT MICHAEL WHITE:** Robert S Marticello rmarticello@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **ATTORNEY FOR US TRUSTEE (SA):** Kenneth Misken Kenneth.M.Misken@usdoj.gov
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Meghan C Murphey meghan@themurpheylawyers.com, lorraine@themurpheylawyers.com
- **MEDIATOR ALAN I NAHMIAS:** Alan I Nahmias anahmias@mbn.law, jdale@mbn.law
- **ATTORNEY FOR CREDITOR STOLL, NUSSBAUM & POLAKOV:** Karen S. Naylor Becky@ringstadlaw.com, Karen@ringstadlaw.com; Arlene@ringstadlaw.com
- **ATTORNEY FOR INTERESTED PARTY AVENATTI MICHAEL:** Ryan D O'Dea rodea@shulmanbastian.com, lgauthier@shulmanbastian.com;avernon@shulmanbastian.com;yrivera@shulmanbastian.com
- **ATTORNEY FOR DEFENDANT HONDA AIRCRAFT COMPANY LLC:** Brian A Paino bpaino@hinshawlaw.com, hmosothoane@hinshawlaw.com;crico@hinshawlaw.com;hometapbankruptcies@hinshawlaw.com
- **ATTORNEY FOR DEFENDANT HPPW, LLC:** Aditi Paranjpye aparanjpye@lawdbs.com, assistant@lawdbs.com;admin@lawdbs.com;paralegal@lawdbs.com;jsmith@lawdbs.com
- **ATTORNEY FOR DEFENDANT FOSTER GARVEY PC, AS SUCCESSOR-IN-INTEREST TO FOSTER PEPPER PLLC and DEFENDANT CHRISTINE AVENATTI CARLIN:** Misty A Perry Isaacson misty@mpilawfirm.com, pagterandperryisaacson@jubileebk.net;misty@ecf.courtdrive.com
- **ATTORNEY FOR DEFENDANT VINCENT BUILDERS, INC.:** Eric S Pezold epezold@swlaw.com, fcardenas@swlaw.com
- **ATTORNEY FOR CREDITOR THE X-LAW GROUP, P.C.; DEFENDANT ELBA HERNANDEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE AND SUCCESSOR-IN-INTEREST TO ANDRES RAMIREZ, DECEASED; and DEFENDANT FILIPPO MARCHINO:** Kurt Ramlo RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email
- **ATTORNEY FOR CREDITOR EDWARD M. RICCI, P.A.:** David M Reeder david@reederlaw.com, secretary@reederlaw.com
- **ATTORNEY FOR DEBTOR AND DEFENDANT EAGAN AVENATTI, LLP and PLAINTIFF AND CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Jack A. Reitman jareitman@gmail.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **ATTORNEY FOR CREDITOR HONDA AIRCRAFT COMPANY, LLC and PLAINTIFF AND CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** John P. Reitman jreitman@landaufirm.com, vrichmond@landaufirm.com;amendes@landaufirm.com;hrichmond@landaufirm.com;jlandau@landaufirm.com
- **INTERESTED PARTY COURTESY NEF:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR PLAINTIFF CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** Monica Rieder mrieder@landaufirm.com, vrichmond@landaufirm.com;amendes@landaufirm.com;hrichmond@landaufirm.com
- **INTERESTED PARTY COURTESY NEF:** Nanette D Sanders becky@ringstadlaw.com, arlene@ringstadlaw.com
- **ATTORNEY FOR RESPONDENT UNITED STATES OF AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE:** Najah J Shariff najah.shariff@usdoj.gov, caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Jessica M. Simon jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **ATTORNEY FOR DEFENDANT ALEDMI, LLC; DEFENDANT ALAN CHAFFEE; DEFENDANT EDWIN SPAUNHURST; and DEFENDANT MICHAEL WHITE:** Michael Simon msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **ATTORNEY FOR DEFENDANT VINCENT BUILDERS, INC.:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **ATTORNEY FOR CREDITOR JASON FRANK LAW PLC:** Andrew Stolper astolper@lawfss.com, mnowowiejski@lawfss.com;jfrank@lawfss.com
- **ATTORNEY FOR RESPONDENT UNITED STATES OF AMERICA ON BEHALF OF THE INTERNAL REVENUE SERVICE:** Jolene Tanner jolene.tanner@usdoj.gov, caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- **US TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CHAPTER 7 TRUSTEE RICHARD A MARSHACK:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; spineda@ecf.courtdrive.com; alinares@ecf.courtdrive.com